Bradford K. Newman (State Bar No. 178902)
    bradford.newman@bakermckenzie.com
Alexander G. Davis (State Bar No. 287840)
    alexander.davis@bakermckenzie.com
Anne Kelts Assayag (State Bar No. 298710)
    anne.assayag@bakermckenzie.com
**BAKER & McKENZIE LLP**
600 Hansen Way
Palo Alto, CA 94304
Telephone: +1 650 856 2400
Facsimile:  +1 650 856 9299

Teresa H. Michaud (State Bar No. 296329)
    teresa.michaud@bakermckenzie.com
Kirby Hsu (State Bar No. 312535)
    kirby.hsu@bakermckenzie.com
**BAKER & McKENZIE LLP**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone: +1 310 201 4728
Facsimile:  +1 310 201 4721

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN COFFEE, MEI-LING MONTANEZ, and S.M., a minor by MEI-LING MONTANEZ, S.M.'s parent and guardian, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>GOOGLE LLC,<br><br>                    Defendant. | Case No.  5:20-cv-03901-BLF<br><br>**Date Action Filed: June 12, 2020**<br><br>**GOOGLE LLC'S MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**<br><br>**Date:      November 19, 2020**<br>**Time:      9:00 a.m.**<br>**Ctrm.:     3 - 5th Floor**<br>**Judge:     Hon. Beth Labson Freeman**<br><br>**Robert F. Peckham Federal Building & United States Courthouse**<br>**280 South 1st Street**<br>**San Jose, CA 95113** |

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND RELIEF REQUESTED ................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................................... 1

RESERVATION OF RIGHT TO COMPEL ARBITRATION ...................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 3

I.     INTRODUCTION ........................................................................................................ 3

II.    ALLEGED FACTS ...................................................................................................... 4

    A.     Google Does Not Develop Video Games Or Create Loot Boxes ............................... 4

    B.     Players May Choose To Acquire Loot Boxes or Many Other In-Game Items From Developers Using Virtual Currency .......................................................................... 5

    C.     Players Cannot Exchange Virtual Currency or Loot Box Items for Real Money ........ 6

    D.     Google Play Is Only a Platform For the Third Party Games Described In the Complaint ............................................................................................................... 6

III.   REQUEST FOR JUDICIAL NOTICE .......................................................................... 7

IV.    LEGAL STANDARD ................................................................................................... 7

V.     ARGUMENT ............................................................................................................... 9

    A.     Google Is Immune from Liability Under Section 230 for the Third-Party Content It Hosts on the Google Play Platform ........................................................................... 9

        1.     *Google Play is an "interactive computer service" that provides a platform for video games created by third-party "information content providers."* ........... 9

        2.     *Plaintiffs' attempts to plead around Section 230 fail.* ................................. 11

            a.     A single disclosure requirement in its Developer Program Policies does not transform Google into a content provider. .......................... 11

            b.     Google's alleged receipt of revenue from app and in-game virtual currency purchases does not undermine its immunity. ....................... 12

    B.     Plaintiffs' Unfair Competition Law Claim Fails .................................................... 13

        1.     *Plaintiff Montanez and minor S.M. lack UCL standing.* ............................. 13

        2.     *Plaintiffs allege no facts to confer standing to state a UCL claim.* ............ 14

            a.     Plaintiffs articulate no economic injury *at all* in any alleged transactions with Google ..................................................................... 14

            b.     Plaintiffs do not and cannot sufficiently allege causation. ................. 16

        3.     *Plaintiffs allege no "unlawful" conduct because Loot Boxes do not constitute illegal gambling under California law.* ......................................................... 16

        4.     *Plaintiffs allege no "unfair" conduct by Google.* ...................................... 20

    C.     Plaintiffs' Consumer Legal Remedies Act Claim is Likewise Deficient ................. 21

        1.     *Virtual currency is neither a "good" nor a "service" under the CLRA.* ....... 21

        2.     *Google made no misrepresentation or actionable omission to Plaintiffs regarding Loot Box purchases.* ................................................................... 21

    3. *Loot Boxes  do not qualify as illegal slot machines under California law.* .... 22

  D. Plaintiffs' Unjust Enrichment Claim Fails.................................................................. 22

    1. *Plaintiffs fail to specify which state's unjust enrichment law applies.* ........... 23

    2. *Plaintiffs cannot maintain an unjust enrichment claim in California.* ........... 23

VI. CONCLUSION.......................................................................................................................... 24

GOOGLE LLC'S MOTION TO DISMISS UNDER RULE 12(B)(6)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Chevron Corp.*,
  656 F.3d 925 (9th Cir. 2011) ........................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................................8

*Balzer v. Wal-Mart Stores, Inc.*,
  No. CV 14-9779-JFW, 2015 WL 13828418 (C.D. Cal. Feb. 25, 2015).......................24

*Barnes v. Yahoo! Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ......................................................................................9

*Bass v. Facebook, Inc.*,
  394 F. Supp. 3d 1024 (N.D. Cal. 2019) .......................................................................21

*Black v. Google, Inc.*,
  457 Fed. App'x 622 (9th Cir. 2011) ............................................................................10

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ...............................................................................9, 10

*Carmona v. Cnty. of San Mateo*,
  No. 18-CV-05232-LHK, 2019 WL 4345973 (N.D. Cal. Sept. 12, 2019).......................5

*Conservation Force v. Salazar*,
  646 F.3d 1240 (9th Cir. 2011) .................................................................................7, 8

*Dang v. Samsung Elecs. Co.*,
  No. 14-CV-00532-LHK, 2018 WL 6308738 (N.D. Cal. Dec. 3, 2018) .......................14

*Dell Inc. v. Sharp Corp.*,
  781 F. Supp. 2d 955 (N.D. Cal. 2011) .........................................................................23

*Doe v. Epic Games, Inc.*,
  435 F. Supp. 3d 1024 (N.D. Cal. 2020) ..................................................................21, 22

*Evans v. Hewlett-Packard Co.*,
  No. 13-02477 WHA, 2013 WL 5594717 (N.D. Cal. Oct. 10, 2013)..................9, 11, 13

*Foreman v. Bank of Am., N.A.*,
  401 F. Supp. 3d 914 (N.D. Cal. 2019) ...........................................................................8

*Fraley v. Facebook, Inc.*,
  830 F. Supp. 2d 785 (N.D. Cal. 2011) ...........................................................................9

*Free Kick Master LLC v. Apple Inc.*,
140 F. Supp. 3d 975 (N.D. Cal. 2015) ........................................................................10, 11, 13, 18

*Fyk v. Facebook, Inc.*,
808 Fed. App'x 597 (9th Cir. 2020) ............................................................................................12

*Gavra v. Google, Inc.*,
No. 5:12-CV-06547-PSG, 2013 WL 3788241 (N.D. Cal. July 17, 2013) ...................................10

*Gentges v. Trend Micro Inc.*, No. C 11-5574 SBA, 2012 U.S. Dist. LEXIS 94714
(N.D. Cal. June 9, 2012) ......................................................................................................14, 21

*Goddard v. Google, Inc.*,
640 F. Supp.2d 1193 (N.D. Cal. 2009) ................................................................................10, 12

*Goddard v. Google, Inc.*,
No. C 08-2738 JF (PVT), 2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) .............................11, 13

*Gonzalez v. Google, Inc.*,
335 F. Supp. 3d 1156 (N.D. Cal. 2018) .....................................................................................10

*Hackleman v. Provident Funding Assocs., LP*,
No. CV 12-6064-GHK, 2012 WL 12888841 (C.D. Cal. Dec. 13, 2012) .......................................8

*I.B. v. Facebook, Inc.*,
905 F. Supp. 2d 989 (N.D. Cal. 2012) ........................................................................................21

*Jurin v. Google, Inc.*,
695 F. Supp. 2d 1117 (E.D. Cal. Feb. 26, 2010).................................................................10, 12

*Kater v. Churchill Downs Inc.*,
886 F.3d 784 (9th Cir. 2018) ........................................................................................17, 19, 20

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) .....................................................................................................8

*Konik v. Time Warner Cable*,
No. CV 07-763 SVW, 2010 WL 11549435 (C.D. Cal. July 19, 2010) ........................................16

*Letizia v. Facebook Inc.*,
267 F. Supp. 3d 1235 (N.D. Cal. 2017) .....................................................................................23

*Mason v. Mach. Zone, Inc.*,
140 F. Supp. 3d 457 (D. Md. 2015) ..................................................................................*passim*

*Matera v. Google Inc.*,
No. 15-CV-04062-LHK, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016).................................7, 14

*In re Nexus 6P Prods. Liab. Litig.*,
293 F. Supp. 3d 888 (N.D. Cal. 2018) .......................................................................................23

GOOGLE LLC'S MOTION TO DISMISS UNDER RULE 12(B)(6)

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583, 80 Cal. Rptr. 3d 316 (2008)....................................................................23

*Phillips v. Double Down Interactive LLC*,
   173 F. Supp. 3d 731 (N.D. Ill. 2016) ...............................................................................17, 20

*Reyes-Aguilar v. Bank of Am.*,
   No. 13-CV-05764-JCS, 2014 WL 2153792 (N.D. Cal. Mar. 20, 2014).........................................8

*Ristic v. Mach. Zone, Inc.*,
   No. 15-cv-8996, 2016 WL 4987943 (N.D. Ill. Sep. 19, 2016)...............................................16, 20

*Romero v. Flowers Bakeries, LLC*,
   No. 14-CV-05189-BLF, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016).........................................23

*Sams v. Yahoo! Inc.*,
   713 F.3d 1175 (9th Cir. 2013) ..........................................................................................9

*Sarmiento v. Sealy, Inc.*,
   367 F. Supp. 3d 1131 (N.D. Cal. 2019) .............................................................................7

*Score Family Fun Ctr., Inc. v. Cnty. of San Diego*,
   225 Cal. App. 3d 1217, 275 Cal. Rptr. 358 (1990)................................................................18

*Soto v. Sky Union, LLC*,
   159 F. Supp. 3d 871 (N.D. Ill. 2016) ...........................................................................17, 18

*Spy Phone Labs LLC v. Google Inc.*,
   No. 15-CV-03756-KAW, 2016 WL 6025469 (N.D. Cal. Oct. 14, 2016)..................................12

*Tidenberg v. BIDZ.com, Inc.*,
   No. CV 08-5553 PSG, 2009 U.S. Dist. LEXIS 21916, 2009 WL 605249 (C.D.
   Cal. Mar. 4, 2009) ........................................................................................................14

*Trinkle v. Stroh*,
   60 Cal. App. 4th 771, 70 Cal. Rptr. 2d 661 (1997)................................................................18

*WhatsApp Inc. v. NSO Grp. Techs., Ltd.*,
   No. 19-CV-07123-PJH, 2020 WL 4016812 (N.D. Cal. July 16, 2020).........................................7

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ..........................................................................................8

**Statutes / Other Authorities**

Communications Decency Act, 47 U.S.C. § 230 (2018) ..................................................... *passim*

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 3, 7, 8

Fed. R. Evid. 201(b)(2)........................................................................................................7

v                    Case No. 5:20-cv-03901-BLF

Cal. Civ. Code § 1761 .................................................................................................................. 1

California Unfair Competition Law, Bus. & Profs. Code §§ 17200 *et seq.* ............................. *passim*

California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ............................. *passim*

Cal. Pen. Code § 330b ............................................................................................................. *passim*

GOOGLE LLC'S MOTION TO DISMISS UNDER RULE 12(B)(6)

## NOTICE OF MOTION AND RELIEF REQUESTED

PLEASE TAKE NOTICE ON **November 19, 2020 at 9:00 a.m.**, or as soon thereafter as the matter can be heard, in Courtroom 3 - 5th Floor of the United States District Courthouse located at 280 South 1st Street, San Jose, California 95113, Defendant Google LLC ("Google") will and does move the Court for an order dismissing the First, Second and Third Causes of Action in the Complaint of Plaintiffs John Coffee, Mei-Ling Montanez, and S.M., a minor by Mei-Ling Montanez (collectively, "Plaintiffs") under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief may be granted.  Google's Motion to Dismiss is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and request for judicial notice contained therein, the Declaration of Teresa Michaud, the Proposed Order, and any oral argument as may be presented at the hearing, all other papers, records, and pleadings on file in this action, and on such additional evidence and argument as the Court may allow prior to and during the hearing on this motion.

*Relief Requested*: Google respectfully requests that the Court (i) grant its request for judicial notice, and (ii) issue an order dismissing with prejudice the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state any claim upon which relief may be granted and terminating this action.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiffs' three state law causes of action are barred based on Google's immunity under section 230 of the Communications Decency Act, 47 U.S.C. § 230 (2018).

2.      Whether Plaintiffs lack standing under California's Unfair Competition Law, Cal. Bus. & Profs. Code §§ 17200 *et seq.* ("UCL"), and Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA").

3.      Whether Plaintiffs have failed to allege unlawful or unfair conduct by Google under the UCL (Cal. Bus. & Profs. Code §§ 17200 *et seq.*).

4.      Whether Plaintiffs have failed to allege the purchase of "goods" or "services" from Google as those terms are defined under the CLRA (Cal. Civ. Code § 1761).

5.      Whether Plaintiffs have failed to allege a plausible claim for unjust enrichment.

1

**<u>RESERVATION OF RIGHT TO COMPEL ARBITRATION</u>**

2
      Google brings this Motion to Dismiss without waiver or limitation of its right to compel

3
individual arbitration of Plaintiffs' claims.  The Complaint omits the information necessary for

4
Google to determine whether Plaintiffs have agreed to arbitrate their claims, including any details

5
regarding the Plaintiffs' alleged transactions.  Accordingly, Google expressly reserves its right to

6
compel individual arbitration of Plaintiffs' claims at a later date if and when the necessary

7
information is provided.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs John Coffee and Mei-Ling Montanez, on behalf of minor S.M. (collectively, "Plaintiffs") ask the Court to decide for the first time that "Loot Boxes" in skill-based video games violate illegal gambling laws, even though all four federal courts that have had occasion to consider the issue have held otherwise.  As the logic of those precedents applies with equal force here, the Court should reach the same conclusion and dismiss this case with prejudice.

However, the Court need not even address the legality of Loot Boxes to resolve this Rule 12(b)(6) motion in Defendant Google, LLC's ("Google") favor.  This is because, under section 230 of the federal Communications Decency Act ("Section 230"), Google is immune from potential state law liability, as the Complaint concedes that Google (i) "does not itself create these [video] games [or] the Loot Box mechanism[s]" (Compl. ¶ 13) and (ii) acts as a passive host of a platform that "makes available to consumers various software applications . . . created by *other developers*."  (*Id.* ¶ 23 (emphasis added).)  Ninth Circuit courts citing Section 230 routinely reject similar efforts to hold Google liable for the content of third party developers, both on the Google Play store at issue here and on other Google platforms.  Plaintiffs allege no facts to support a different result in this case.

Finally, Plaintiffs cannot allege multiple necessary elements of their California consumer protection law claims.  First, Google is not a party to any transaction involving Loot Boxes, and Plaintiffs identify no transactions with Google *at all*.  Moreover, the Complaint acknowledges that Plaintiffs' only *conceivable* economic transaction involving Google would be the purchase of so-called "in-game virtual currency."  Even if Plaintiffs purchased virtual currency, Google has no role in what players decide to do with this in-game currency: these subsequent elective transactions, in which players may choose to obtain Loot Boxes or any other number of items on offer, take place exclusively between the game developers and players.  Under these circumstances, Plaintiffs have no standing under the California Unfair Competition Law ("UCL") or the Consumer Legal Remedies Act ("CLRA")--nor a viable claim for unjust enrichment--because they have no economic injury: they would have received exactly the amount of virtual currency they bargained for (from whatever

1   source), and the Complaint does not allege otherwise.

2   Plaintiffs' CLRA claim also fails because virtual currency does not qualify as either a "good"

3   or a "service" and therefore is not covered by the CLRA.  Nor do Plaintiffs allege any

4   misrepresentations *by Google* in connection with the purchase of virtual currency or, for that matter,

5   with respect to Loot Boxes themselves.

6   Ultimately, rather than alleging facts supporting their own claims, Plaintiffs have filled their

7   Complaint with copious references to third-party video game reviews, politicians' statements, social

8   psychology analysis, and descriptions of video games that, based on the Complaint, neither Plaintiff

9   has ever even played.  If Plaintiffs' intention is to wage a general public policy debate, they have

10  chosen the wrong forum.  Because Section 230 bars Plaintiffs' claims against Google, and because

11  Plaintiffs have not and cannot state facts giving rise to a plausible claim for relief under the UCL or

12  CLRA or for unjust enrichment, Google respectfully requests that the Court grant this motion and

13  dismiss the Complaint with prejudice.

14  **II.   ALLEGED FACTS**

15  **A.   Google Does Not Develop Video Games Or Create Loot Boxes**

16  Plaintiffs' quarrel in this lawsuit is with the practice by many video game developers--not

17  Google--of creating and featuring in their products a game play feature generally known as a "Loot

18  Box." (Compl. ¶ 4.)  Loot Boxes[1] dispense virtual gameplay items randomly according to a

19  probability algorithm set by individual video game developers.  (*See id.* ¶ 41.)  Some Loot Box items

20  may be purely cosmetic (e.g., a squire's bright colored tunic, often referred to as a "skin") while

21  others may enhance gameplay (e.g., a powerful weapon, a faster car).  (*See id*. ¶ 4.)  Google does not

22  develop any of the video games at issue, does not create or manage the in-game Loot Boxes, and

23  does not select or control the items Loot Boxes dispense in the third-party developers' video games.

24  (*See id.* ¶ 13.)  Instead, it hosts the "Google Play" store, a platform where developers offer their

25  games for download.  (*Id.* ¶ 23.)

26

27  [1] For clarity, Google uses the term "Loot Box" throughout this memorandum, although particular

28  games may use different names, such as "Pipes" (Compl. ¶ 44) or "Summonses" (*id.* ¶ 67).

**B.     Players May Choose To Acquire Loot Boxes or Many Other In-Game Items From Developers Using Virtual Currency**

Although Plaintiffs allege in passing that they have played a number of video games (*see id.* ¶¶ 14-16), the Complaint describes only two that Plaintiffs allegedly downloaded from the Google Play store: Final Fantasy Brave Exvius ("Final Fantasy") and Dragon Ball Z Dokkan Battle ("Dragon Ball Z").  (*See id.* ¶¶ 66-71 (describing Final Fantasy), ¶¶ 72-76 (describing Dragon Ball Z).)  Both games are entirely free to download and entirely free to play for as long as a player may desire.  (*See id.* ¶¶ 66, 72.)

The developers of both games offer an in-game virtual currency feature.  (*Id.*)  Players have two options for obtaining such virtual currency.  First, they can collect it *for free* through normal gameplay.  (*See* Compl. ¶¶ 68, 74.)  Alternatively, players can expedite their accrual of in-game currency by purchasing it in varying quantities.  (*See* Compl. ¶¶ 67, 74.)

Under these circumstances, then, consumers do not purchase Loot Boxes or other in-game items using real money.  (*See id.* ¶¶ 34-35, 45, 50, 59, 62, 67, 70, 73.)  Despite the Complaint's single general allegation to the contrary (Compl. ¶ 31), each and every one of the games discussed in the Complaint confirms that the Loot Boxes are acquired from the developer exclusively with *virtual* currency.  *See Carmona v. Cnty. of San Mateo*, No. 18-CV-05232-LHK, 2019 WL 4345973, at *9 (N.D. Cal. Sept. 12, 2019) ("[G]eneral, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint.").  In addition, players have *several* options for spending their virtual currency in a particular game: Loot Boxes are one choice among many options offered by the video game developers.  (*See, e.g.*, Compl. ¶ 59 (noting that Robux in-game currency can be used for "*various* products," not simply Loot Boxes), ¶ 18 (alleging that Plaintiff S.M. has spent funds on "in-game purchases *including* [but apparently not limited to] Loot Boxes") (emphasis added).)  Indeed, the Complaint does not dispute that while players may choose to collect in-game items in a *randomized* fashion by exchanging virtual currency for Loot Boxes, they may also usually acquire the same items *directly* at set rates (e.g., a battle-axe for 500 rubies, a dwarf warrior for 200 gems, etc.).

GOOGLE LLC'S MOTION TO DISMISS UNDER RULE 12(B)(6)

**C.      Players Cannot Exchange Virtual Currency or Loot Box Items for Real Money**

The only time that players ever engage in a transaction involving Google is when they decide to make optional purchases of in-game virtual currency, rather than collect such currency through normal gameplay.  (*See* Compl. ¶¶ 27-28.)  To be clear, Google does not itself offer virtual currency for sale, and does not set the prices for such virtual currency transactions; all of that remains within the exclusive province of the developer, and the Complaint does not allege to the contrary.  Instead, Plaintiffs generically allege that Google facilitates virtual currency sales for the developers and takes a percentage of the amounts paid.  (*See id.* ¶ 26.)

The Complaint also concedes that virtual currency can never be refunded or otherwise exchanged for real money within the game itself or through Google. (*See id.* ¶ 6.)  Part of the reason is that, as noted, players can acquire virtual currency both through direct purchase *and for free* during game play; these gems, rubies, Robux and other virtual commodities therefore defy any consistent real world valuation.  Although they suggest that players may buy and sell individual game items for real money, Plaintiffs concede that any such transactions take place in "gray market[s]" on the web, not within the video games themselves and certainly not through the Google Play store.  (*See id.*)  Google's Terms of Service, of which the Court may take judicial notice (as set forth below), explicitly prohibit such transactions.  (Declaration of Teresa Michaud in Support of Request for Judicial Notice ("Michaud Decl.") Ex. A (Google Play Terms of Service) § 4 (Rights and Restrictions).)  Plaintiffs do not allege that they have ever engaged in any such gray market sales, nor do they allege any intention to do so in the future.

**D.      Google Play Is Only a Platform For the Third Party Games Described In the Complaint**

Plaintiffs  allege few facts about their own gameplay activity, and even less about their interactions with Google (as opposed to various video game developers).  Plaintiff John Coffee downloaded Final Fantasy through the Google Play store.  (*Id.* ¶ 14.)  Mr. Coffee alleges that he was generally "induced" to acquire Loot Boxes "[i]n the course of playing Final Fantasy," but identifies no representations by Google that he claims were responsible for such inducement.  (*See id.*)  In fact, he does not allege having seen or read any representations by Google *at all*.  Instead, since Mr.

Coffee alleges the purported inducement occurred during gameplay itself, any images, game animations, sounds, or statements he might have encountered would have been made by Final Fantasy's developer, not by Google.  (*See id.* ¶¶ 66-67, 70.)

Plaintiff S.M. downloaded Dragon Ball Z from the Google Play store.  (*Id.* ¶ 16.)  He similarly alleges he was "induced" to buy Loot Boxes "[i]n the course of playing Dragon Ball Z" (*id.* ¶ 17), but also fails to identify any specific method of such inducement.  His admission that the alleged inducement occurred in the course of playing the game similarly confirms that any conceivable means of inducement is attributable solely to Dragon Ball Z's developer, and not to Google.

## III.   REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201(b)(2) and this Court's Standing Order re Civil Cases § IV(G), Google requests that the Court take judicial notice of the Google Play Terms of Service, which is publicly available online, and the contents of which are not subject to reasonable dispute.  A court may judicially notice "factual information from the internet as long as the facts are not subject to reasonable dispute." *WhatsApp Inc. v. NSO Grp. Techs., Ltd.*, No. 19-CV-07123-PJH, 2020 WL 4016812, at *12 n.4 (N.D. Cal. July 16, 2020) (judicially noticing online terms of service); *see also Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *5 (N.D. Cal. Aug. 12, 2016) (finding Google's publicly available terms of service were proper subjects of judicial notice).  The Complaint also references the Google Play Terms of Service.  (Compl. ¶ 22.)  Judicial notice is proper here to show that the Google Play Terms of Service exist and state that users may not "sell . . . [or] transfer . . . any Content to any third party . . . ."  (Michaud Decl. Ex. A (Google Play Terms of Service) § 4 (Rights and Restrictions).)  *See Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1143 (N.D. Cal. 2019) (judicially noticing agreement because defendant did not rely on it to establish facts, but just to show it "says what it says").

## IV.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011).  A plaintiff may fail to meet his pleading burden by (i) neglecting to allege sufficient facts to satisfy

the elements of the causes of action asserted, or (ii) asserting an inherently deficient theory of liability. *See id.* Plaintiffs' Complaint suffers from both of these afflictions.

A pleading must allege enough facts to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim is plausible when the plaintiff alleges facts allowing the court to reasonably infer liability for the alleged misconduct. *Id.* Though the allegations of material fact are taken as true and construed in the light most favorable to the plaintiff, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012), courts "disregard threadbare recitals of the elements of a cause of action" and "unsupported legal conclusions," *Alvarez v. Chevron Corp.*, 656 F.3d 925, 930 (9th Cir. 2011) (affirming dismissal with prejudice). Plaintiffs' failure to allege the basic elements of their UCL and CLRA claims--including no articulation of economic injury, no allegations of actual reliance on any representations made by Google, no presentation of any facts on causation--is a paradigmatic example of factually devoid pleading, and so the Complaint must be dismissed under Rule 12(b)(6).

But where, as here, Plaintiffs' claims are fatally defective, the Court should grant the Motion with prejudice, because it is "clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) (finding that amendment would be futile). Dismissal with prejudice follows when a complaint's core theories of liability are precluded by "question[s] of law that amendment cannot cure." *Foreman v. Bank of Am., N.A.*, 401 F. Supp. 3d 914, 924 (N.D. Cal. 2019); *see also Reyes-Aguilar v. Bank of Am.*, No. 13-CV-05764-JCS, 2014 WL 2153792, at *10 (N.D. Cal. Mar. 20, 2014) (dismissing with prejudice claim that relied on "fatally flawed" theory); *Hackleman v. Provident Funding Assocs., LP*, No. CV 12-6064-GHK (RZx), 2012 WL 12888841, at *4 (C.D. Cal. Dec. 13, 2012) (dismissing initial complaint with prejudice because claims relied on legally flawed theories).

Plaintiffs' entire case is premised on an "illegal slot machine" theory of Loot Boxes that federal courts have already carefully considered and rejected. And Plaintiffs have sued a passive platform provider that has statutory immunity for the Complaint's state law claims concerning third party content found on that platform. No amendment could cure these defects. The Court should therefore grant the Motion without leave to amend.

## V.     ARGUMENT

### A.     Google Is Immune from Liability Under Section 230 for the Third-Party Content It Hosts on the Google Play Platform

Google is immune from state law liability for the content of video games available on its Google Play platform.  Section 230(c)(1) of the Communications Decency Act ("CDA") "protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider."  *Barnes v. Yahoo! Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009).   Courts have interpreted Section 230 broadly to protect platforms like Google Play with only narrow exceptions, such as where the platform takes an active role in editing, selecting or publishing the content at issue, none of which Plaintiffs allege in the Complaint, nor could they.  *Cf. Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 802-03 (N.D. Cal. 2011) (no immunity where Facebook "re-published" user content by rearranging user-provided text and grouped content into "sponsored stories" interspersed with third-party logos).

Here, the Complaint's allegations confirm that Google satisfies the requirements for Section 230 immunity, and so the Court may make this determination at the pleadings stage.  *See, e.g.*, *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) ("The assertion of an affirmative defense may be considered properly on a motion to dismiss where the allegations in the complaint suffice to establish the defense.") (internal quotation omitted); *Evans v. Hewlett-Packard Co.*, No. 13-02477 WHA, 2013 WL 5594717, at *3 (N.D. Cal. Oct. 10, 2013) (collecting cases in this District holding that evaluating section 230 immunity is proper at the pleadings stage).

#### 1.     *Google Play is an "interactive computer service" that provides a platform for video games created by third-party "information content providers."*

The Ninth Circuit interprets "interactive computer service" "expansive[ly]" under the CDA.  *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003).  Courts in this circuit have found no fewer than six times that Google meets this statutory definition, with at least one court crediting the contention that Google's app platforms are "paradigmatic interactive computer services, as they are websites from which customers can locate and download apps developed,

written, and branded by third parties." *See Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 983 (N.D. Cal. 2015); *accord Gonzalez v. Google, Inc.*, 335 F. Supp. 3d 1156, 1179 (N.D. Cal. 2018); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1196 (N.D. Cal. 2009); *Gavra v. Google, Inc.*, No. 5:12-CV-06547-PSG, 2013 WL 3788241 at *3 (N.D. Cal. July 17, 2013); *Black v. Google, Inc.*, 457 Fed. App'x 622, 623 (9th Cir. 2011); *Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1123 (E.D. Cal. Feb. 26, 2010).

The same result follows here.  Plaintiffs concede that Google's Play store is "a virtual online 'store' . . . [that] makes available to consumers various software applications . . . created by *other developers*." (Compl. ¶ 23.)  The Play store, like Google's other platforms, therefore satisfies the definition of an "information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet . . ."  *See* 47 U.S.C. § 230(f)(2) (defining "interactive computer service").

While the third-party developers who created the video games described in the Complaint are classic "information content provider[s]" under the CDA, Google does *not* meet that definition.  In contrast to the expansive reading of "interactive computer service," the Ninth Circuit applies a "relatively restrictive definition" to "information content provider" under the CDA.  *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003).  Doing so furthers the CDA's goal of promoting the continued development of interactive computer services by providing broad immunity for platforms that do not play a role in creating the third-party content on their websites.  *See id.* at 1122-23; 47 U.S.C. §§ 230(b)(1), (c)(1).

Information content providers are therefore limited to "any person or entity that is responsible, in whole or in part, for the *creation or development of information* provided through the Internet or any other interactive computer service."  47 U.S.C. § 230(f)(3) (emphasis added).  Plaintiffs make the Court's work easy in this regard, admitting that "Google does not itself create these games and the Loot Box mechanisms used" therein.  (Compl. ¶ 13.)  The Complaint also confirms that each of the six video games described in the Complaint--including Final Fantasy and Dragon Ball Z, the only two games Plaintiffs allegedly ever downloaded--were created and

developed by third-party video game developers and subsequently offered for free download in the Google Play store.  (*See* Compl. ¶¶ 44, 48, 60, 66, 76 n.16.)  Google is not an "information content provider" of any of the video games at issue.

Accordingly, Google is immune from liability for all three of Plaintiffs' state law causes of action.  *See, e.g.*, *Free Kick Master*, 140 F. Supp. 3d at 983 (finding Google immune under Section 230 from state law trademark claims related to third-party app offered on Google Play absent allegations that Google acted as an author of the challenged content, e.g., "chose the names of the products, wrote any of the code, or provided encouragement or assistance in the allegedly infringing use of plaintiff's mark on the products, or that [it] had notice that the third-party use was unlicensed and infringing"); *Evans v. Hewlett-Packard Co.*, No. 13-02477 WHA, 2013 WL 5594717, at *4 (N.D. Cal. Oct. 10, 2013) (finding that state-law trademark claims based on an app developed by third party and offered for download on defendants' former app store were preempted by CDA).

>  **2.**   *Plaintiffs' attempts to plead around Section 230 fail.*
>
>  > **a.**   A single disclosure requirement in its Developer Program Policies does not transform Google into a content provider.

Google, like any other mature "interactive computer service," sets certain guidelines for the use of its Google Play platform, but these guidelines do not undermine its immunity under Section 230.  Acknowledging that Google's Developer Program Policies are available in full online (Compl. ¶ 12 n.1), Plaintiffs cite only a *single* provision in an unsuccessful effort to suggest that Google exerts influence over the content of video games hosted on the Play Store.  The provision cited in paragraph 12 of the Complaint is simply Google's "odds disclosure" guideline for Loot Boxes made for the benefit of consumers like Plaintiffs, not a regulation governing the substantive *content* of any particular game.  "[T]he fact that Google requires advertisers to agree to certain terms--designed to *protect* Plaintiff from the conduct of which she now complains--does not lead to the conclusion that Google is responsible for the content the advertisers ultimately created."  *Goddard v. Google, Inc.*, No. C 08-2738 JF (PVT), 2008 WL 5245490, at *5 (N.D. Cal. Dec. 17, 2008) (emphasis in original).  The same logic applies for video game developers and the Plaintiffs in this case.

Even if Plaintiffs had quoted these Developer Program Policies fully, they would fail to show

that these neutral tools, standards, and disclosures avoid application of Section 230 immunity.  *See Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1123 (E.D. Cal. 2010) (granting motion to dismiss state law claims under Section 230 where finding Google's provision of and charging for neutral keyword suggestion tool "simply allows competitors to post their [content] . . . in the cyber-marketplace"); *Spy Phone Labs LLC v. Google Inc.*, No. 15-CV-03756-KAW, 2016 WL 6025469, at *7 (N.D. Cal. Oct. 14, 2016) (rejecting argument that Google qualified as a content provider based on its provision of source code to app developers to allow them to access the Android operating system for use of Google Play store, absent allegations that Google materially contributed to alleged trademark infringement); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1196 (N.D. Cal. 2009) ("A website does not so 'contribute' [to the alleged unlawfulness of third-party content] when it merely provides third parties with neutral tools to create web content, even if the website knows that the third parties are using such tools to create illegal content.").[2]  Plaintiffs cannot avoid application of Section 230 on this basis.

> **b.**   Google's alleged receipt of revenue from app and in-game virtual currency purchases does not undermine its immunity.

Plaintiffs also suggest that Google waives all Section 230 immunity by allegedly "handling the money" for in-game virtual currency transactions and "taking a 30% cut" in the process. (Compl. ¶ 13.)  This is not the law.  Facilitating online transactions and charging for such services does not transform a platform provider into a content developer.  *See Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1120, 1123 (E.D. Cal. 2010) (finding Google immune under Section 230 notwithstanding allegation that it generated advertising revenue from service provided to facilitate third-party advertisements); *see also Fyk v. Facebook, Inc.*, 808 Fed. App'x 597, 598 (9th Cir. 2020) ("That Facebook allegedly took its actions for monetary purposes does not somehow transform Facebook into a content developer.").  Stated another way, the "fact that a website elicits online content for profit is immaterial; the only relevant inquiry is whether the interactive service provider

---

[2] Of course, as explained in detail in Section B., *infra*, Plaintiffs have failed to allege any illegal content in any of the video games described in the Complaint.

'creates' or 'develops' that content." *Goddard*, 2008 WL 5245490, at *3.  A plaintiff simply cannot plead around Section 230 immunity based on generic allegations that "defendants are partners with the third-party content providers because they have a profit-sharing agreement," just as Plaintiffs do in paragraph 13 of their Complaint.  *Evans v. Hewlett-Packard Co.*, No. 13-02477 WHA, 2013 WL 5594717, at *1, *4 (N.D. Cal. Oct. 10, 2013) (denying motion for leave to file amended complaint, finding plaintiff failed to plead around Section 230 with allegations that platform "maintained primary control" over revenues generated from sales of the app, obtained commissions from app sales, and mandated specific Application Content Criteria and technical criteria for app developers); *see also Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d at 982 (dismissing claims against Amazon and Google based on Section 230 immunity and rejecting generic allegations that defendants collaborated by promoting apps using various "marketing features" and "recommendations" to consumers).

In sum, the Complaint alleges no conduct by Google that could qualify it as an information content provider under the plain language of the CDA or any Ninth Circuit precedent.  The Complaint makes clear that Google does not play an active role in controlling the content of games offered on the Google Play store nor did it take any action that materially contributed to the alleged wrongful conduct (which is not even wrongful in the first place).  Thus, Google is entitled to immunity under Section 230, and Plaintiffs' three state law claims should be dismissed with prejudice.

## B.   Plaintiffs' Unfair Competition Law Claim Fails

Separate and apart from Section 230 immunity, Plaintiffs' claims should be dismissed on multiple independent grounds.

### 1.   *Plaintiff Montanez and minor S.M. lack UCL standing.*

As an initial matter, Plaintiff Montanez and minor S.M. reside in New York City.  (Compl. ¶¶ 15-16.)  Their claims under the UCL and CLRA therefore fail at the outset because any alleged injuries occurred outside California, and simply noting that Google has its global headquarters in the state is not enough to establish standing.  *See Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 464-65 (D. Md. 2015) ("Plaintiff is not a California resident; she does not allege that she downloaded or

played [the video game at issue] in California; and the sole connection she has drawn between Defendant and California is the fact that Defendant is headquartered there.  That is precisely the type of connection that *Tidenberg* found inadequate.") (citing *Tidenberg v. BIDZ.com, Inc.*, No. CV 08-5553 PSG (FMOx), 2009 U.S. Dist. LEXIS 21916, 2009 WL 605249 (C.D. Cal. Mar. 4, 2009)); *Gentges v. Trend Micro Inc.*, No. C 11-5574 SBA, 2012 U.S. Dist. LEXIS 94714, at *16 (N.D. Cal. June 9, 2012) ("[S]tate and federal courts have concluded that the UCL and CLRA do not reach claims of non-California residents arising from conduct occurring entirely outside of California.").

### 2.   *Plaintiffs allege no facts to confer standing to state a UCL claim.*

In order for consumers (like Plaintiffs) to have standing to bring a UCL claim, they must allege facts demonstrating an economic injury that was caused by the allegedly unlawful or unfair business practice.  *See Dang v. Samsung Elecs. Co.*, No. 14-CV-00532-LHK, 2018 WL 6308738, at *9 (N.D. Cal. Dec. 3, 2018).  Plaintiffs have not adequately pled either the "economic injury" or "causation" requirements of their UCL cause of action.

### a.   Plaintiffs articulate no economic injury *at all* in any alleged transactions with Google.

Neither Plaintiff directly alleges that he ever entered into any transactions with *Google*.  Mr. Coffee alleges only that he spent "in excess of $500 on in-game Loot Boxes," while minor S.M. estimates spending "more than $100 on in-game purchases including Loot Boxes."  (Compl. ¶¶ 14, 18.)  The Complaint acknowledges that in the two games purportedly downloaded by Plaintiffs, Loot Boxes cannot be purchased *directly* with real money.  (*Id.* ¶¶ 67, 74-75.)  Instead, as explained in Section II.B.-C., a player may *choose* to purchase in-game virtual currency first (rather than collect it for free through normal gameplay), and then use that virtual currency to acquire items in the game, such as Loot Boxes.  (*See id.*)  **Both Plaintiffs fail to allege that they ever used the Google Play store to purchase in-game currency**.  This failure to allege *any* transaction with Google forecloses Plaintiffs from demonstrating any economic injury.

Plaintiffs' hazy purchase allegations in fact elide *two* distinct "transactions" clarified by the Complaint's more specific pleadings: (1) the purchase of virtual currency using real money ("Type (1)"); and (2) the acquisition of a Loot Box using virtual currency ("Type (2)").  A Type (2)

transaction takes place exclusively between the consumer and the *video game developer*, not Google, and thus may be disregarded entirely.  (*See id.* ¶ 67 (noting that Loot Boxes in Final Fantasy are acquired *in the game* using virtual "Lapis Crystals"), ¶ 74 (noting that Loot Boxes in Dragon Ball Z are acquired *in the game* using virtual "dragon stones").)  Even if Plaintiffs had alleged they transacted with Google in Type (2) transactions, which they do not and could not allege, this exchange cannot give rise to a cognizable economic injury at all.  *See Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 465 (D. Md. 2015) ("*Mason I*"), *aff'd*, 851 F.3d 315 (4th Cir. 2017) ("*Mason II*").  As the *Mason I* court correctly observed under nearly identical circumstances:

> Plaintiff argues that there is "no question that [she] suffered an economic injury by wagering in the Casino [Loot Box mechanism]" because she "lost $100 between early 2014 and January 2015," typically "$0.60 per spin." [citation omitted]  *But of course Plaintiff was not wagering with dollars*; she was playing with virtual gold.  Plaintiff acquired that "gold" in the "gold store," where she exchanged her *real-world currency for a nontransferable, revocable license to use virtual currency for entertainment purposes.* [citation omitted].  At the moment of that antecedent transaction, Plaintiff's "loss," if any, was complete: then and there she had swapped something of value (real money) for something of whimsy (pretend "gold").

*Id.* at 465 (concluding that Plaintiff had not alleged "an economic injury under the UCL attributable to [the video game developer] Defendant's purported misconduct").

To the extent Plaintiffs could have alleged that Type (1) transactions involve Google, they do not explain how such transactions caused any injury.  "A plaintiff who has received the benefit of his bargain has 'no standing under the UCL.'"  *Mason I*, 140 F. Supp. 3d at 464 (D. Md. 2015) (citing *Johnson v. Mitsubishi Dig. Elecs. Am., Inc.*, 365 F. App'x 830, 832 (9th Cir. 2010)).  The Complaint explains that in Dragon Ball Z, for example, "1 dragon stone costs 99 cents, 6 dragons stones costs [sic] $3.99 and 90 dragon stones costs [sic] $44.99."  (*Id.* ¶ 74.)  In addition, dragon stones can be exchanged for a *variety* of in-game items that Plaintiffs may choose to acquire in Type (2) transactions with developers; Loot Boxes are simply one of many options.  (*See id.* ¶ 18 (noting that S.M. estimates spending more than $100 on "in-game purchases *including* [but apparently not limited to] Loot Boxes" while playing Dragon Ball Z.").)

Neither Plaintiff alleges any specifics of any supposed in-game virtual currency purchases.  However, even assuming for purposes of this motion that such purchases occurred, Plaintiffs have not explained how they were ever denied the benefit of their bargain in their Type (1) purchases

allegedly involving Google.  Instead it appears that they would have received exactly what was promised (e.g., 6 dragon stones for $3.99).  The Complaint does not contend otherwise.  The result is that Plaintiffs lack standing for want of an economic injury.

Moreover, Plaintiffs cannot amend their Complaint to cure this fundamental defect: as described in detail below, they do not allege that their only conceivable transaction involving Google--Type (1) purchases of virtual currency for real dollars--constitutes illegal gambling, unfair business practice, or any other type of wrongdoing.  Thus, any potential amendment would be futile.

### b. Plaintiffs do not and cannot sufficiently allege causation.

Unable to allege an economic injury, Plaintiffs naturally cannot establish causation.  The UCL requires Plaintiffs to demonstrate "actual reliance" on the allegedly unlawful practices challenged in the Complaint, and to show that such practices were "an immediate cause of [their] injury-producing conduct."  *Konik v. Time Warner Cable*, No. CV 07-763 SVW (RZx), 2010 WL 11549435, at *5 (C.D. Cal. July 19, 2010).

Plaintiffs' decision to sue Google for the content of third-party games defies any articulable theory of UCL causation.  The unlawful practice alleged here is offering Loot Boxes to consumers.  (Compl. ¶¶ 98-100; 114.)  Google does not create or offer these items (*id.* ¶ 13); the video game developers do.  Plaintiffs do not allege any "actual reliance" on statements or representations regarding Loot Boxes made by Google.  To the extent they would point to the Complaint's allegations about "animations" (*id.* ¶¶ 39, 47) or "triumphant music" (*id.* ¶ 37)--which neither Plaintiff alleges he ever actually relied upon--those game "representations" are solely within the province of the developer, not Google.  The result is that this claim must be dismissed without leave to amend.

### 3. *Plaintiffs allege no "unlawful" conduct because Loot Boxes do not constitute illegal gambling under California law.*

The Complaint likewise fails to allege any facts to warrant revisiting the uniform determination by previous federal courts that Loot Boxes featured within the class of skill-based games allegedly played by Plaintiffs do not give rise to liability under state illegal gambling laws.  *See Mason II*, 851 F.3d 315 (4th Cir. 2017); *Ristic v. Mach. Zone, Inc.*, No. 15-cv-8996, 2016 WL

4987943, at *3 (N.D. Ill. Sep. 19, 2016); *Soto v. Sky Union, LLC*, 159 F. Supp. 3d 871 (N.D. Ill. 2016); *Mason I*, 140 F. Supp. 3d 457 (D. Md. 2015).  The Complaint alleges nothing about the content of the video games at issue that would add anything new to the analysis, or that would contradict or undermine the persuasive logic of this precedent.

Plaintiffs here allege that Loot Boxes in general violate section 330b of the California Penal Code.  (*Compl*. ¶¶ 98-100.)  Two of the four courts cited above have rejected this exact argument. *See Soto*, 159 F. Supp. 3d at 880; *Mason I*, 140 F. Supp. 3d at 464.  Loot Boxes do not satisfy the Complaint's own summary of the statutory requirements for an illegal gambling device under section 330b because they neither accept nor dispense "something of value" in order to function. (*See id*. ¶ 99(B)-(C) (acknowledging that illegal gambling devices must both (i) require "something of value . . . to play the device" and (ii) provide the "opportunity to receive something of value").)

In summary:  **Loot box items have no direct exchange or redemption value**.  Plaintiffs fail to allege that any individual Loot Box items they acquired (if any, since they have specifically identified *none*) have been or can be traded or sold to other players within the game or the Google Play store, sold back to the video game developer, sold back to Google, or otherwise ever be redeemed for real money.  *See, e.g., Soto v. Sky Union, LLC*, 159 F. Supp. 3d 871, 879 (N.D. Ill. 2016) (noting that plaintiffs did not dispute that Loot Box items could not "be redeemed for real money or sold to either [the developer] or other players"); *Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731, 735 (N.D. Ill. 2016) ("Double Down does not offer any cash for the virtual chips, meaning players are not able to 'cash out' their chips with Double Down for real world money, goods, or other items of monetary value.") (internal quotations omitted).  And courts have already considered and rejected the Complaint's reference to a "gray market" for online video game accounts (Compl. ¶ 101) as a basis for ascribing value where, as here, Google's Terms of Service specifically forbid such transactions.  (*See* Michaud Decl. Ex. A (Google Play Terms of Service) § 4 (Rights and Restrictions) ("You may not . . . sell, rent, lease, . . . sublicense, transfer, assign any Content to any third party . . . except as specifically permitted and only in the exact manner provided.")  Virtual items cannot constitute a "thing of value" based on an expressly prohibited sales channel.  *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 788 n.2 (9th Cir. 2018); *accord Soto*, 159 F.

Supp. at 879-880 (refusing to find that Loot Box items have value despite alleged opportunity to sell game accounts "on the open market").  In addition, neither Plaintiff alleges that he has or intends to sell Loot Box items on any such proscribed market.  *See Mason I*, 140 F. Supp. 3d at 460 (noting plaintiff's allegation regarding the existence of secondary markets to buy and sell game accounts but observing that "Plaintiff does not allege that Defendant hosts or sanctions these secondary markets, nor does she allege that she has ever sold or attempted to sell an account—nor even that she intends to do so in the future").

**Loot Box items do not provide "extended" plays since the video games at issue are entirely free to play in the first place.**  Plaintiffs cannot rely on previous California "illegal gambling" cases involving paid arcades and pinball machines that allowed players to wager for the chance to win additional plays.  *Cf. Trinkle v. Stroh*, 60 Cal. App. 4th 771, 70 Cal. Rptr. 2d 661 (1997) (flipperless pinball machines that awarded credits for free games, with better odds depending on how much money the player paid in, constituted illegal slot machines); *Score Family Fun Ctr., Inc. v. Cnty. of San Diego*, 225 Cal. App. 3d 1217, 275 Cal. Rptr. 358 (1990) (arcade systems that rewarded gamers with points for extended play were illegal slot machines).  The difference is that those games cost something to play in the first place (e.g., 25 cents), and so winning a free play on that same machine was a reward with a distinct value (i.e., 25 cents).  *See Soto*, 159 F. Supp. 3d at 880.  But here, the Complaint concedes that each of the video games at issue are entirely *free* to download and *free* to play for as long as Plaintiffs desire.  (Compl. ¶¶ 44, 48, 56, 66, 72.)  Loot Box items exchanged for *virtual* currency therefore cannot provide "additional" or "extended" gameplay because the games are free to play in perpetuity.  The most Plaintiffs could argue is that certain Loot Box items *enhance* game play, but that entirely subjective concept of value has already been considered and rejected for purposes of section 330b.  *See Soto*, 159 F. Supp. 3d at 880 ("Added enjoyment simply does not have measurable worth, and it cannot be a 'thing of value' under section 330b(d).").

**Loot Boxes do not require anything of value to access because they are purchased with virtual currency, which players can acquire for free**.  As noted above, Loot Boxes are purchased using virtual currency, not real money.  (Compl. ¶¶ 34-35, 45, 50, 59, 62, 67, 70, 73.)  And Plaintiffs

concede that they can obtain virtual currency for free through normal gameplay.  (*See id.* ¶¶ 45, 50,
62, 70, 74.)  Expediting this process by buying virtual currency is entirely optional.  (*See, e.g.*,
Compl. ¶ 47 (quoting video game critic's review as follows: "I haven't spent any money on Mario
Kart Tour yet, *and I don't plan on doing so*.") (emphasis added).)  As a result, the virtual currency
used to access a Loot Box does not have any ascertainable value sufficient to satisfy the second
requirement of section 330b.  (*See* Compl. ¶ 99(B) (illegal gambling devices must require
"[s]omething of value . . . to play the device").)

      **The Loot Boxes at issue here fall within section 330b's exception for "games of skill."**
California exempts from the definition of illegal gambling devices "amusement machines or devices,
which are *predominately games of skill* . . . ."  *Mason I*, 140 F.Supp.3d at 463 (citing Cal. Pen. Code
§ 330b(f)) (emphasis in original) (finding that the virtual casino in the multiplayer strategy game
"Game of War" fell within section 330b(f)'s exception to illegal gambling device).  The Complaint
concedes that for all of the video games at issue, Loot Boxes constitute an entirely optional and
ancillary component: Mario Kart Tour is an "animated kart-racing game" (Compl. ¶ 44); FIFA
Soccer allows "players to complete drills, contests, play online against other players, and compete in
online tournaments and leagues" (*id.* ¶ 48); Roblox is a game design platform (*id.* ¶ 56); Brawl Stars
is an "online battle arena game" of a "competitive nature" (*id.* ¶¶ 60-61); Final Fantasy is a "turn-
based role-playing game where players command their characters to attack and move through a
series of stages until they encounter and defeat the boss" (*id.* ¶ 66); Dragon Ball Z works similarly to
a "board game[]" and involves fights between characters (*id.* ¶ 73).  The Loot Boxes featured in the
games allegedly downloaded by Plaintiffs are part of video games that are statutorily exempt from
California's illegal gambling device law.

      Finally, the Ninth Circuit's decision in *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir.
2018), emphasizes why Loot Boxes do not constitute illegal gambling in California.  First, unlike
here, the game at issue in *Kater* was *literally* an online casino (not a strategy or other skill-based
game featuring Loot Boxes), created and managed by Churchill Downs, Inc., an owner of racetracks,
brick and mortar casinos, and online betting websites.  *See id.* at 785 (describing the Big Fish Casino
game as offering "various electronic casino games, such as blackjack, poker, and slots").  Second,

the *Kater* panel specifically limited its holding to "Washington [state] statutory law['s] . . . particularly broad definition of 'thing of value'"--which it noted was materially different from comparable definitions in other states' gambling statutes, including California's. *See id.* at 788. Third, the Big Fish Casino game involved *for-pay* games: players had to spend real money to buy chips in order to play, and the games offered players the opportunity to obtain free or extended plays on these paid games depending on the outcome of a pull on a virtual slot machine dice or a spin on a virtual roulette wheel. *Id.* at 785-86. Finally, and in contrast to the allegations here, Big Fish Casino provided an *in-game* "internal mechanism" for players to transfer their chips to each other, allowing them effectively "to cash" out their winnings. *Id.* at 786. *Kater*'s sharp contrasts with the facts alleged in the Complaint supports the conclusion that video games like Dragon Ball Z and Final Fantasy are not illegal gambling devices under California Penal Code section 330b.

### 4.   *Plaintiffs allege no "unfair" conduct by Google.*

Although the Complaint only generally alleges the "unfair" prong of the UCL (Compl. ¶ 116), this theory of liability finds no support in the context of a platform provider for online video games. For all the reasons stated above, Plaintiffs have not identified any relevant conduct by Google, other than its passive hosting of content on the Google Play store.

Courts have likewise rejected "unfair conduct" UCL claims when asserted against developers of video games featuring Loot Boxes: consumers like Plaintiffs are free to play these games at their discretion; Plaintiffs were never forced to purchase Loot Boxes in order to play any of these games; and they could have opted for other forms of entertainment. *See Phillips*, 173 F. Supp. 3d at 743 (rejecting argument that virtual casino constituted "immoral, . . . unethical, oppressive, [and] unscrupulous conduct" or exploited "psychological triggers associated with gambling and addiction" because plaintiff "could have picked other forms of entertainment"); *see also Ristic*, 2016 WL 4987943, at *4 ("[W]hile any type of addiction is unfortunate, this Court. . . . does not read the [Illinois version of the California UCL] to protect [plaintiff] from his own decision to play the Casino" loot box feature within the Game of War video game). Plaintiffs have therefore failed to allege any "unfair" conduct by Google.

### C.    Plaintiffs' Consumer Legal Remedies Act Claim is Likewise Deficient

As with the UCL, Plaintiffs also must allege an economic injury and causation in order to have standing to bring a claim under California Consumer Legal Remedies Act ("CLRA").  *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019).  And out-of-state plaintiffs like Ms. Montanez and S.M. cannot assert CLRA claims as non-California residents based on alleged conduct occurring outside California.  *See Gentges*, 2012 U.S. Dist. LEXIS 94714, at *16.  Thus, for all the reasons described in Sections V.B.1-2., *supra*, the Court should dismiss this claim as well.  However, Plaintiffs' CLRA cause of action fails for the following additional reasons.

#### 1.    *Virtual currency is neither a "good" nor a "service" under the CLRA.*

Plaintiffs' CLRA claim is a non-starter because they have failed to allege a consumer transaction for "goods or services."  *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1045 (N.D. Cal. 2020).  Specifically, Plaintiffs' allege two "sales."  The first is the "sale of Google Play store game Apps containing Loot Boxes."  (Compl. ¶ 126.)  But the video games Plaintiffs allegedly downloaded--Dragon Ball Z and Final Fantasy--are both *free downloads*.  (*Id.* ¶¶ 66, 72.)  Thus there is no "sale" at all and therefore no basis for a CLRA claim.

The second alleged sale involves acquisition of "Loot Boxes or similar gambling mechanisms."  (*Id.* ¶ 126.)  As described above, the only transaction potentially involving Plaintiffs and Google is the Type (1) purchase of virtual currency.  **But virtual currency sales do not qualify as either "goods" or "services" under the CLRA.**  *Doe*, 435 F. Supp. 3d at 1046 ("Plaintiff's CLRA claim therefore fails because the virtual currency at issue is not a good or service."); *I.B. v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012) (holding that virtual currency known as "Facebook Credits . . . are not covered by the CLRA" and dismissing CLRA claim without leave to amend).  Thus, Plaintiffs' CLRA claim must be dismissed.

#### 2.    *Google made no misrepresentation or actionable omission to Plaintiffs regarding Loot Box purchases.*

Plaintiffs likewise identify zero misrepresentations *by Google* in connection with their gaming activities.  "To state a claim under the CLRA, a plaintiff generally must allege a misrepresentation, reliance, and damages. [citation omitted].  A plaintiff can state a claim under the

1  CLRA by alleging either an affirmative misrepresentation or a failure to disclose." *Doe*, 435 at 1046

2  (N.D. Cal. 2020).

3       The Complaint makes a conclusory allegation that Google represented to Plaintiffs that

4  "transactions involving Loot Boxes confer or involve rights to potentially valuable prizes, when in

5  fact these transactions constitute unlawful gambling transactions that are prohibited by law."

6  (Compl. ¶ 128.)  How?  When?  Where?  The Complaint identifies no specific representation to this

7  effect.  Plaintiffs' generic descriptions about how Loot Boxes function are based on representations

8  made by the *developers* in the games themselves, not by Google.  (Compl. ¶¶ 67-68, 70, 73, 75-76

9  (describing Loot Box features of Final Fantasy and Dragon Ball Z).)

10      Finally, Plaintiffs fail to allege actual reliance on any statements or omissions allegedly made

11 by Google.  They allege only that they "transacted with [Google] on the belief that the transaction

12 was lawful."  (Compl. ¶ 130.)  Again, Plaintiffs' only conceivable business with Google was a Type

13 (1) transaction for in-game virtual currency using real dollars.  They do not and cannot allege that

14 this purchase was in any way unlawful, misrepresented, or otherwise problematic.

15       **3.**     *Loot Boxes do not qualify as illegal slot machines under California law.*

16      For all the reasons described in section B.2, *supra*, Plaintiffs have not alleged facts giving

17 rise to a plausible claim that Loot Boxes in the games at issue violate California's illegal gambling

18 device statute.  So the core of their CLRA claim fails as a result.  (*See* Compl. ¶¶ 127 (alleging that

19 Google violated the CLRA's proscriptions concerning transactions "that are prohibited by law").)

20      **D.     Plaintiffs' Unjust Enrichment Claim Fails.**

21      Plaintiffs' Type (1) transactions with Google do not support a claim for unjust enrichment

22 because Plaintiffs received exactly what they bargained for: a set amount of in-game virtual currency

23 to enhance their gameplay experience, in exchange for real dollars.  At least one court has reasoned

24 that under such circumstances, the unjust result would be to require the *return* of those funds to

25 consumers after they have "benefited from the enhanced gaming experience that [virtual currency]

26 evidently delivers."  *Mason I*, 140 F. Supp. 3d at 467 (citing *Comet Theatre Enters., Inc. v.*

27 *Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952) ("There is no equitable reason for invoking restitution

28 *when the plaintiff gets the exchange which he expected*.") (emphasis added)).  The same logic

applies here, and so, again, Plaintiffs have failed to adequately allege a plausible claim for relief.

**1.**     *Plaintiffs fail to specify which state's unjust enrichment law applies.*

"[A] plaintiff must specify the state under which it brings an unjust enrichment claim" because the potential variances in state law affects the availability of defenses and the requirements to plead the claim adequately. *Dell Inc. v. Sharp Corp.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011). Plaintiffs purport to represent a nationwide class but fail to allege the state law that governs this common law claim.  Courts regularly dismiss unjust enrichment claims when, as here, the complaint does not identify which state's law is invoked.  *See, e.g.*, *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018); *Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016).

**2.**     *Plaintiffs cannot maintain an unjust enrichment claim in California.*

If Plaintiffs contend that their unjust enrichment claim arises under California law, it must be dismissed under Rule 12(b)(6).  First, Plaintiffs cannot establish the required elements: (1) the receipt of a benefit by Google, and (2) the unjust retention of the benefit at Plaintiffs' expense.  *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593, 80 Cal. Rptr. 3d 316, 323 (2008).  Under a Type (1) transaction for virtual currency, Plaintiffs would have received exactly the amount of virtual currency promised, so there is no "unjust retention."  The alleged Type (2) transactions involving Loot Boxes, on the other hand, are exclusively with the video game developers: Google *receives no benefit at all* from such exchanges of virtual currency for in-game items, and Plaintiffs do not contend to the contrary.

Second, Plaintiffs' unjust enrichment claim arises from their interactions with the Google Play platform.  Plaintiffs' use of this platform is governed by the Google Play Terms Of Service, an enforceable contract that precludes them from asserting a quasi-contract claim such as unjust enrichment.  (*See* Michaud Decl. Ex. A (Google Play Terms of Service)); *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1253 (N.D. Cal. 2017) (dismissing quasi-contract claim with prejudice because Facebook's judicially-noticed advertising terms were contracts covering the same subject matter).  Plaintiffs do not allege that the Google Play Terms Of Service are unenforceable or invalid. In fact, they expressly recognize that this agreement applies to the subject matter of this lawsuit.

1   (*See* Compl. ¶ 22 (selecting the San Jose Division of the Northern District of California because

2   "Google's Terms of Service contain a provision in favor of this Division").)

3      Third, the Court should dismiss Plaintiffs' unjust enrichment claim because it is entirely

4   duplicative with the gravamen of their UCL and CLRA claims. *Balzer v. Wal-Mart Stores, Inc.*, No.

5   CV 14-9779-JFW (PJWx), 2015 WL 13828418, at *4-5 (C.D. Cal. Feb. 25, 2015) (collecting cases

6   and dismissing with prejudice quasi-contract claim because it "allege[d] no facts not already covered

7   by the UCL, FAL, and CLRA claims, which already provide for restitution as a remedy").

8   **VI.  CONCLUSION**

9      For each and every one of the forgoing reasons, the Court should grant the Motion and

10  dismiss Plaintiffs' Complaint without leave to amend.

11

12

13  Dated:  August 7, 2020             Respectfully submitted,

14                     **BAKER & McKENZIE LLP**
                   Teresa H. Michaud

15                     Bradford K. Newman
                   Alexander G. Davis

16                     Anne K. Assayag
                   Kirby Hsu

17

18                     By:  /s/ *Teresa H. Michaud*

19                     Teresa H. Michaud
                   Attorneys for Defendant

20                     GOOGLE LLC.

21

22

23

24

25

26

27

28