BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

THE LAW OFFICES OF ANDREW J. BROWN
ANDREW J. BROWN (160562)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/501-6550
andrewb@thebrownlawfirm.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| JOHN COFFEE, MEI-LING MONTANEZ, and S.M., a minor by MEI-LING MONTANEZ, S.M.'s parent and guardian, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-cv-03901-BLF<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)**<br><br>Date: November 19, 2020<br>Time: 9:00 a.m.<br><br>District Judge Beth Labson Freeman<br>Courtroom 3, 5th Floor, San Jose<br>Magistrate Judge Susan van Keulen<br>Courtroom 6, 4th Floor, San Jose<br><br>Complaint Filed: June 12, 2020<br>Trial Date: Not Set<br><br>**JURY TRIAL DEMANDED** |

BLOOD HURST & O' REARDON, LLP

00168203

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................................1

II.     STATEMENT OF FACTS ..................................................................................................2

III.    STANDARDS ON A MOTION TO DISMISS .................................................................3

IV.     PLAINTIFFS' RESPONSE TO DEFENDANT'S REQUEST FOR JUDICIAL
        NOTICE AND REQUEST FOR JUDICIAL NOTICE ....................................................4

V.      ARGUMENT .......................................................................................................................5

        A.      Plaintiffs Challenge Google's Illegal Activity, Not A Developer's Content,
                So Google Is Not Immune Under 47 U.S.C. § 230(c) ..............................................5

                1.      Plaintiffs Challenge Google's Conduct, Not Any Published Content ..........5

                2.      Google Is A "Content Provider" Under 47 U.S.C. § 230(f)(3) .....................7

        B.      Plaintiffs' UCL Claims are Adequately Pleaded.....................................................8

                1.      California Law Applies ................................................................................8

                2.      Plaintiffs Readily Meet UCL Standing Requirements .................................9

                        a.      Plaintiffs Adequately Allege UCL "Loss of Money" ......................9

                        b.      Plaintiffs Adequately Allege UCL Causation ...............................11

                3.      Google Violates the UCL Unlawful Prong Because it Violates
                        California's Gambling Prohibitions .............................................................13

                        a.      Loot Boxes Award Randomized "Things of Value".......................14

                        b.      Virtual Currency Equates to Real Money ......................................18

                        c.      The Loot Boxes Are Not "Games of Skill"....................................18

                4.      Plaintiffs' UCL Unfair Prong Claims.........................................................19

        C.      Plaintiffs' CLRA Claims are Adequately Plead.......................................................21

        D.      Plaintiffs' Adequately Allege Unjust Enrichment ...................................................24

VI.     CONCLUSION .................................................................................................................25

00168203

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................4

*Backhaut v. Apple, Inc.*,
   74 F. Supp. 3d 1033 (N.D. Cal. 2014) ....................................................................12

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ..................................................................................5

*Bolger v. Amazon.com, LLC*,
   53 Cal. App. 5th 431 (2020) .....................................................................................6

*Cappello v. Walmart Inc.*,
   394 F. Supp. 3d 1015 (N.D. Cal. 2019) ..................................................................12

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ......................................................................................13, 19

*Clayworth v. Pfizer, Inc.*,
   49 Cal. 4th 758 (2010) ..............................................................................................9

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*,
   4 Cal. App. 4th 963 (1992) ........................................................................................8

*Daugherty v. Am. Honda Motor Co., Inc.*,
   144 Cal. App. 4th 824 (2006) ..................................................................................24

*Doe v. Epics Games, Inc.*,
   435 F. Supp. 3d 1024 (N.D. Cal. 2020) ..................................................................23

*Fair Housing Council v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) .......................................................................5, 6, 7, 8

*Fife v. Sci. Games Corp.*,
   No. 2:18-cv-00565-RBL, 2018 U.S. Dist. LEXIS 212908
   (W.D. Wash. Dec. 18, 2018) ..............................................................................15, 18

*Franz v. Beiersdorf, Inc.*,
   745 Fed. Appx. 47 (9th Cir. 2018) ..........................................................................12

*Free Kick Master LLC v. Apple Inc.*,
   140 F. Supp. 3d 975 (N.D. Cal. 2015) ......................................................................6

00168203

*Friedman v. AARP, Inc.*,
  855 F.3d 1047 (9th Cir. 2017) ...................................................................12

*People ex rel. Green v. Grewal*,
  61 Cal. 4th 544 (2015) ........................................................................18, 19

*Hansen v. Newegg.com Americas, Inc.*,
  25 Cal. App. 5th 714 (2018) ...................................................................10

*People ex rel. Harris v. Pac. Anchor Transp., Inc.*,
  59 Cal. 4th 772 (2014) ............................................................................10

*HomeAway.com v. City of Santa Monica*,
  918 F.3d 676 (9th Cir. 2018) .....................................................................6

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................................................21

*Kater v. Churchill Downs Inc.*,
  886 F.3d 784 (9th Cir. 2018) ............................................................ *passim*

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ..............................................................................9

*People ex rel. Lockyer v. Fremont Life Ins. Co.*,
  104 Cal. App. 4th 508 (2002) ..................................................................13

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ..................................................................25

*Maiman v. Talbott*,
  No. SACV 09-0012 AG (ANx), 2010 U.S. Dist. LEXIS 142712
  (C.D. Cal. Aug. 9, 2010) ............................................................................4

*Mason v. Mach. Zone, Inc.*,
  140 F. Supp. 3d 457 (D. Md. 2015) ...........................................11, 17, 19

*Mason v. Mach. Zone, Inc.*,
  851 F.3d 315 (4th Cir. 2017) ...................................................................11

*McAdams v. Monier, Inc.*,
  182 Cal. App. 4th 174 (2010) ..................................................................24

*McKell v. Wash. Mutual, Inc.*,
  142 Cal. App. 4th 1457 (2006) ..............................................................8, 19

*Medrazo v. Honda of N. Hollywood*,
  205 Cal. App. 4th 1 (2012) ......................................................................12

Case No. 5:20-cv-03901-BLF

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

00168203

*Merandette v. City & Cty. of S.F.*,
   88 Cal. App. 3d 105 (1979) ........................................................................................14

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ........................................................................................3

*Nelson v. Pearson Ford Co.*,
   186 Cal. App. 4th 983 (2010) ......................................................................................23

*In re Nexus 6P Prods. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) ..........................................................................9

*Opperman v. Path*,
   87 F. Supp. 3d 1018 (N.D. Cal 2014) ........................................................................6, 7

*Philpott v. Super. Ct.*,
   1 Cal. 2d 512 (1934) ...................................................................................................25

*Pirozzi v. Apple, Inc.*,
   966 F. Supp. 2d 909 (N.D. Cal. 2013) ........................................................................20

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
   223 Cal. App. 4th 1105 (2014) ...................................................................................24

*Process Specialties, Inc. v. Sematech, Inc.*,
   No. S-00-414 FCD PAN, 2001 U.S. Dist. LEXIS 26261
   (E.D. Cal. Nov. 8, 2001) .............................................................................................25

*Progressive West Ins. Co. v. Super. Ct.*,
   135 Cal. App. 4th 263 (2005) .....................................................................................20

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*,
   768 F.3d 938 (9th Cir. 2014) ........................................................................................3

*Ristic v. Mach. Zone, Inc.*,
   No. 15-cv-8996, 2016 U.S. Dist. LEXIS 127056 (N.D. Ill. Sept. 19, 2016) ...........17

*Safeway, Inc. v. Super. Ct.*,
   238 Cal. App. 4th 1138 (2015) ...................................................................................19

*Schnall v. Hertz Corp.*,
   78 Cal. App. 4th 1144 (2000) .....................................................................................19

*In re Seizure of Any & All Funds Held in Rep. Bank of Ariz. Accounts*,
   No. 2:18-cv-6742, 2019 U.S. Dist. LEXIS 231307 (C.D. Cal. Dec. 20, 2019) ....6, 13

*Soto v. Sky Union, LLC*,
   159 F. Supp. 3d 871 (N.D. Ill. 2016) ....................................................................17, 18

00168203

*Steroid Hormone Prod. Cases*,
   181 Cal. App. 4th 145 (2010).................................................................................24

*Svenson v. Google Inc.*,
   No. 13-cv-04080-BLF, 2015 U.S. Dist. LEXIS 43902 (N.D. Cal. Apr. 1, 2015).....................12

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009)...................................................................................12

*Trinkle v. Stroh*,
   60 Cal. App. 4th 771 (1997)...........................................................................14

*Williams v. Gerber Prods. Co.*,
   523 F.3d 934 (9th Cir. 2008)..........................................................................20

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008)............................................................................4

*Wilson v. Playtika, Ltd.*,
   349 F. Supp. 3d 1028 (W.D. Wash. 2018) ................................................16, 18

*In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   313 F. Supp. 3d 1113 (N.D. Cal. 2018) ..........................................................23

*Zaragoza v. Apple Inc.*,
   No. 18-cv-06139-PJH, 2019 U.S. Dist. LEXIS 40916 (N.D. Cal. Mar. 13, 2019)...................23

**Statutes**

Bus. & Prof. Code
   § 17204.........................................................................................................9
   § 19801(c)....................................................................................................20
   § 19801(d)....................................................................................................20
   § 19801(i).....................................................................................................20

Civ. Code § 1761(b)............................................................................................21

Cal. Penal Code
   § 330a(a).......................................................................................................22
   § 330a....................................................................................................13, 14
   § 330b, 330.1..........................................................................................13, 14
   § 330b....................................................................................................13, 14
   § 330b(a).......................................................................................................22
   §330b(d)............................................................................................7, 14, 16

47 U.S.C. § 230(c)...........................................................................................5, 7

**Other Authorities**

RCW 9.46.0285................................................................................................16

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

00168203

Plaintiffs John Coffee, Mei-Ling Montanez, and S.M., a minor by Mei-Ling Montanez, S.M.'s parent and guardian, on behalf of themselves and all others similarly situated ("Plaintiffs"), submit their opposition to Defendant Google LLC's ("Google") Motion to Dismiss.

## I.   INTRODUCTION

A casino engages in gambling activity. If not licensed, doing so is illegal under California law. A casino does not manufacture the slot machines or other devices needed for a game of chance; these are made by third parties. But a casino comes within California law because it provides the infrastructure that houses the gambling devices and the place for people to gamble. It also provides the services that permit them to do so, such as exchanging money for poker chips.

When it comes to playing "Loot Boxes," Google performs the same functions as a casino. A Loot Box is a game much like a slot machine. A player must pay to play a Loot Box. It requires no skill whatsoever, while offering a randomized chance of winning prizes the player desires. Google does not make Loot Boxes, but it does operate the Google Play store, which Google calls a "platform." Just like a physical casino, Google Play is where Plaintiffs and the other Class members must go to play a Loot Box. Also like a physical casino exchanging poker chips for cash, in Google Play the player purchases virtual currency directly from Google, which he or she uses to purchase a chance on a Loot Box. In return for the services Google provides, it takes a rake on every sale of every Loot Box – a full 30%.

It is against California law for anyone, including a casino, to sell chances on gambling devices of any kind unless licensed. It is always against the law to empower minors to gamble. The public policy behind this law is well established. Gambling causes compulsive and addictive behaviors among a whole host of other psychological and financial problems. In recent years a significant amount of independent, peer-reviewed, high-quality research has been performed on the effects of Loot Boxes on the adolescents and adults Google targets. All of this science finds that Loot Boxes cause the same problems as other forms of gambling and are especially pronounced in adolescents.

This lawsuit is brought to eliminate those aspects of Loot Boxes that make it a gambling device and lead to the problems gambling causes. Contrary to Google's motion, Plaintiffs do not

00168203

challenge the appearance, names, or other content of any Loot Boxes, which, like slot machines, come in a wide variety of enticing packages with exciting names, bells and whistles. Instead, Plaintiffs bring this lawsuit to stop an illegal activity. There is no immunity for Google's conduct, and California's sweeping consumer protection laws were made to redress a defendant's illegal activity. Google's motion should be denied.

## II.    STATEMENT OF FACTS

Many video games available in Google Play contain "Loot Boxes." A Loot Box is a game offered within another video game. It is very similar to a slot machine. A player uses real money to buy virtual currency from Google, and then uses that virtual currency to purchase a chance on a Loot Box, just as one buys chips to then use to gamble. ¶¶ 4, 30-31, 34-35.[1] Just like a slot machine, when the player clicks on the Loot Box, bells and whistles sound, lights flash and anticipation grows in the hope that the player will receive something rare and highly desirable. ¶¶ 7, 37-40, 47. Unfortunately, the chance of winning any of the desirable prizes is low, and often lower than permitted with legal slot machines. ¶¶ 41-42, 64, 69, 76.

As an extensive body of science published in recent years now shows, Loot Boxes are a predatory form of in-game gambling designed to take advantage of children, adolescents, and adults. Playing them leads to the same problems caused by other forms of gambling, including depression and gambling addiction. ¶¶ 11, 77-88. The prevalence of Loot Boxes has grown rapidly and now generates huge sums for Google and the videogame developers it works with. ¶¶ 3, 13, 55-56, 96. Referring to Loot Boxes, the Co-Founder of prominent game developer Epic Games asked, "Do we want to be like Las Vegas, with slot machines or do we want to be widely respected as creators of products that customers can trust?" *See* Complaint, Page 2.

It is no coincidence Loot Boxes squarely fit the definition of a gambling device. They are designed with sensory appeal – bright lights, vibrant colors, triumphant sounds – while offering the randomized chance at prizes highly valued by players. Governments and regulators around the world have taken notice and are acting. ¶¶ 89-92. Loot Boxes are banned outright in Belgium and

---

[1]     "¶_" references are to the Class Action Complaint. ECF No. 1.

the Netherlands. ¶¶ 9, 90. England currently is considering a ban. ¶ 10. Other countries are eyeing regulations such as age restrictions. ¶ 91. Here in the U.S., the FTC recently held a workshop on the problems caused by Loot Boxes, while a bipartisan bill is pending in the Senate to ban Loot Boxes in games made for children and adolescents. ¶ 92. In California, legislation already exists that prohibits games such as Loot Boxes. It is these California laws that form the predicates for this case.

Superficially, Loot Boxes come in a variety of forms with differing names. Hundreds of games offered in Google Play have them. ¶¶ 3, 25. These games are downloaded from Google Play onto a Google-enabled device such as an Android smartphone or tablet. ¶ 25.

Google actively controls gambling in the games offered in Google Play, adding content in several ways. For example, Google requires developers to publish the odds of winning the prizes offered in a Loot Box. ¶¶ 12, 41. Google also publishes the age-rating system for each game, purporting to include relevant content disclosures so a player or his or her parents can determine the games suitability. ¶¶ 93-94. Yet Google only vaguely discloses that a game with Loot Boxes permits "in-app purchases," never discloses that the in-app purchases include Loot Boxes, and never discloses Loot Boxes are gambling devices. ¶¶ 94-95.

Google also controls all aspects of the Loot Box purchase. Loot Boxes must be purchased with the virtual currency Google alone exchanges for cash. ¶¶ 26-28, 31-35. The gamer must set up an account with Google to buy virtual currency from Google in Google Play. *Id.* Google maintains the purchase transactions. ¶¶ 27-28. Google keeps 30% for itself. *Id.* Google also sells Google gift cards that can be used to purchase a try on a Loot Box. Google sells the gift cards directly to consumers for use only through Google and its devices. ¶ 31.

## III.    STANDARDS ON A MOTION TO DISMISS

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint, not to decide its factual merits. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the Court must take as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir.

00168203

2014). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Only under "extraordinary" circumstances is Rule 12(b)(6) dismissal proper. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (reversing dismissal of UCL, CLRA and express warranty claims).[2] Defendant does not meet this burden.

## IV. PLAINTIFFS' RESPONSE TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE AND REQUEST FOR JUDICIAL NOTICE

Defendant asks the Court to take Judicial Notice of the proffered "Google Play Terms of Service" to prove that gamers playing games through the Google Play store cannot "sell ... [or] transfer ... any Content to any third party ..." because that is what the Google Play Terms of Service says.  MTD at 7.  As such, they are relying on the document to prove the truth of the matters asserted therein.  The Google Play Terms of Service cannot be judicially noticed for this purpose. *Maiman v. Talbott,* No. SACV 09-0012 AG (ANx), 2010 U.S. Dist. LEXIS 142712, at *21 (C.D. Cal. Aug. 9, 2010) ("judicial notice should not be taken of the *truth* of their contents") (emphasis in original).  Defendant also claims the Court can take judicial notice of the document because "The Complaint also references the Google Play Terms of Service.  (Compl. ¶ 22)."  But this too is wrong.  That paragraph references the Google Terms of Service, not the Google Play Terms of Service.

Instead, Plaintiffs respectfully request the Court take judicial notice of the Google Terms of Service pursuant to Fed. R. Evid. 201(b).  First, it is incorporated into the Complaint, and Defendant cannot (and does not) reasonably question its authenticity.  ¶ 22.  Moreover, it is not offered for the truth of its contents, but rather to show Google has conceded (indeed, required) that California law applies to Plaintiffs' claims in this case.  *See* Section V.B.1., *infra*; Blood Decl., Ex. A at 12.[3]

---

[2]     Unless otherwise stated, emphasis is added and citations and internal quotations are omitted.

[3]     "Blood Decl." references are to the concurrently filed Declaration of Timothy G. Blood in

00168203

## V.     ARGUMENT

### A.     Plaintiffs Challenge Google's Illegal Activity, Not A Developer's Content, So Google Is Not Immune Under 47 U.S.C. § 230(c)

Ignoring the Ninth Circuit's leading cases, Defendant first claims "immunity" under 47 U.S.C. § 230(c) of the Communications Decency Act ("CDA") by falsely asserting Plaintiffs only challenge the "content" provided by developers that is merely re-published by Google. But the Ninth Circuit in *Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) (*en banc*) and *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009), holds otherwise.

#### 1.     Plaintiffs Challenge Google's Conduct, Not Any Published Content

47 U.S.C. § 230(c) "only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes*, 570 F.3d at 1100-01. "The Communications Decency Act was not meant to create a lawless no-man's-land on the Internet," *Fair Housing*, 521 F.3d at 1164. Plaintiffs do not seek to treat Google as a publisher or speaker of another's information. Instead, Plaintiffs seek to hold Google accountable for permitting and facilitating illegal gambling. Loot Boxes are "gambling devices" under California law and Google acts like a casino to facilitate gambling.

Plaintiffs do not challenge the name, color, sounds or images of any Loot Boxes. Instead, it is the fact that Google actively permits and facilitates the use of a gambling device that is at issue. As the Ninth Circuit instructs, something that is unlawful outside of the internet does not "magically become lawful" when conducted online. *Fair Housing*, 521 F.3d at 1164.

Section 230(c) protections are not available to interactive computer services such as Google when their conduct is illegal. For example, when Yahoo! promised to remove offending personal material from its website, and then did not do it, it was liable on a theory of promissory estoppel. *Barnes*, 570 F.3d at 1109. Likewise, where a website engages in discriminatory conduct and helps its users do the same, it is liable even if third parties provide the discriminatory

Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss.

information. *Fair Housing,* 521 F.3d at 1171. Airbnb was not immune under § 230 for allowing its website to facilitate unlicensed booking transactions. *HomeAway.com v. City of Santa Monica*, 918 F.3d 676, 684 (9th Cir. 2018). *See also, e.g.*, *In re Seizure of Any & All Funds Held in Rep. Bank of Ariz. Accounts*, No. 2:18-cv-6742, 2019 U.S. Dist. LEXIS 231307, at *15 (C.D. Cal. Dec. 20, 2019) ("The CDA does not provide immunity for participation in illegal activity."); *Opperman v. Path*, *Inc.,* 87 F. Supp. 3d 1018, 1044 (N.D. Cal 2014) (No CDA immunity where "allegations target conduct that goes beyond the traditional editorial functions of a publisher, and beyond providing 'neutral tools to carry out what may be unlawful or illicit' conduct."); *Bolger v. Amazon.com, LLC*, 53 Cal. App. 5th 431, 464-66 (2020) (CDA does not provide Amazon immunity for selling defective third-party goods on its website where claims are "based on Amazon's own conduct … not the content of Lenoge's product listing").

Here, Google actively participates in and facilitates illegal gambling by acting as the virtual casino. It operates Google Play, which: (1) houses the Loot Boxes; (2) tightly controls the type of activity performed on the platform; (3) makes representations concerning the content of each game in its ratings while omitting other key facts; and (4) controls every aspect of the exchange of cash for virtual currency exclusively through Google Play accounts it requires players to create or through Google gift cards it alone sells. The virtual currency is the equivalent of poker chips, which are required to pay for and play Loot Boxes. None of these activities are those of a publisher of third-party content. Playing a Loot Box is not reading content – it is an activity which Google permits and facilitates.

For these reasons, the case law Google cites is distinguishable. In *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 983 (N.D. Cal. 2015) (MTD at 11) the court held § 230(c) protected defendants from trademark claims because there was no allegation defendants "provided encouragement or assistance in the allegedly infringing use of plaintiff's mark on the products, or that [it] had notice that the third-party use was unlicensed and infringing." Here, Google not only "has notice" (its developer guidelines require developers to publish the Loot Box prize odds (¶¶ 12, 52)), but it encourages consumers to download the games with Loot Boxes using deceptive ratings, creates the exclusive mechanism for consumers to purchase Loot Boxes, and handles the

1    financial transactions. In fact, Google knows the use of "intermediate" currencies, whether

2    physical poker chips or virtual currency, contributes to player manipulation because it separates

3    the use of actual cash from spending money on Loot Boxes, "causing players to lose contact with

4    the real value" of the cash spent on Loot Boxes. ¶ 36.

5          Unlike the cases Defendant relies on (*see* MTD at 12-13), Google does not passively profit

6    from Loot Boxes sales.  Rather, among other things, Google created and controls the method for

7    purchasing them. Loot Box purchases happen through a credit card linked to a Google account or

8    through a Google gift card only Google sells, all without developer involvement. ¶¶ 31-33.

9          These allegations go to the heart of Google's conduct in facilitating illegal gambling.

10   Gambling involves the wager of "money or coin or any other object, or by any other means ..."

11   Cal. Penal Code §330b(d). Google sells the poker chip currency used to make the wager. By

12   Google's design, game developers play no role in this.

13             **2.      Google Is A "Content Provider" Under 47 U.S.C. § 230(f)(3)**

14         Under § 230(c):

15         A website operator can be both a service provider and a content provider: If it
           passively displays content that is created entirely by third parties, then it is only a
16         service provider with respect to that content. But as to content that it creates itself,
           or is "responsible, in whole or in part" for creating or developing, the website is
17         also a content provider.

18   *Fair Housing*, 521 F.3d at 1162 (quoting 47 U.S.C. § 230(c)). Google is a "content provider."

19         Advising parents that a game is appropriate for all ages when Google knows it contains a

20   harmful, predatory gambling device falls outside the "traditional editorial functions of a

21   publisher." *Opperman*, 87 F. Supp. 3d at 1044. "[A] website helps to develop unlawful content,

22   and thus falls within the exception to section 230, if it contributes materially to the alleged

23   illegality of the conduct." *Fair Housing*, 521 F.3d at 1168. Because Google also is an "information

24   content provider" for Loot Boxes, it is liable. *Id.*

25         First, Google requires Loot Box game developers to display in-game the odds of winning

26   Loot Box prizes. ¶¶ 12, 52. This is content Google is "responsible, in whole or in part, for creating

27   or developing." *Fair Housing*, 521 F.3d at 1162. Google argues this content is not really content,

28

00168203

but a "tool" to create web content. MTD at 11-12. Google is not providing developer tools or instructions about how to do something. Instead, it is requiring content specifically about Loot Boxes. "By requiring subscribers to provide the information as a condition of accessing its service, … [Defendant] becomes much more than a passive transmitter of information provided by others; it becomes the developer, at least in part, of that information." *Fair Housing*, 521 F.3d at 1166.

Second, Google displays age-rating and content descriptions for every game in Google Play. *See, e.g.*, ¶ 44 ("Google gave [Mario Kart Tour] an 'E' rating for 'Everyone' age rating."); ¶ 66 ("Final Fantasy Brave Exvius is age-rated in the Google Play store as 'T' for 'Teen.'"). These ratings include content that Google determines. The ratings state whether a game has "in-app purchases" so parents and players can consider if it is age appropriate. But Google omits that Loot Boxes are gambling devices that carry with them the harms of gambling. ¶¶ 93-95. "Thus, there is no notice – and no requirement of any notice by Google – to the parent or the child that a game contains Loot Boxes or other gambling mechanisms." ¶ 95. Google ignores these allegations.

Google is not acting as a good Samaritan engaged in blocking and screening offensive material, as allowed under § 230(c). Instead, Google is the active business partner in an illegal gambling venture.

### B.    Plaintiffs' UCL Claims are Adequately Pleaded

"[T]he primary purpose of the unfair competition law ... is to protect the public from unscrupulous business practices." *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy,* 4 Cal. App. 4th 963, 975 (1992). The UCL imposes strict liability on anyone who violates its prohibitions. The "scope of the UCL is quite broad." *McKell v. Wash. Mutual, Inc*., 142 Cal. App. 4th 1457, 1471 (2006). A business practice need only meet one of the statute's three criteria ("unlawful," "unfair" or "fraudulent") to violate the UCL. *Id.*  Here, Plaintiffs allege violations of the unlawful and unfair prongs.

### 1.    California Law Applies

First, Google disingenuously contends Plaintiffs Montanez and S.M. cannot bring California state law claims because they reside in New York. MTD at 13-14, 21, 23. In doing so, Google omits the portion of its contract that provides California law applies to all claims.

Google submits for judicial notice only one portion of the operative terms of service, those limited to Google Play, but not the Google Terms of Service. The Google Play terms expressly incorporate by reference the Google Terms of Service. The Google Play terms state:

> Your use of Google Play and the apps (including Android Instant Apps), games, music, movies, books, magazines, or other digital content or services (referred to as "Content") available through it is subject to These Google Play Terms of Service and the Google Terms of Service ("Google ToS") (together referred to as The "Terms"). Google Play is a "Service" as described in the Google ToS.

*See* ECF 17-2 at 2.

Meanwhile, the Google Terms of Service plainly provide California law applies:

> California law will govern all disputes arising out of or relating to these terms, service-specific additional terms, or any related services, regardless of conflict of laws rules.

*See* Blood Decl., Ex. A at 12. *See also In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 934-35 (N.D. Cal. 2018) (enforcing Google's California choice-of-law provision). California law applies.

## 2.      Plaintiffs Readily Meet UCL Standing Requirements

A UCL claim may be brought "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Bus. & Prof. Code § 17204. Google argues Plaintiffs do not meet this requirement for two reasons. First, it asserts the "lost money or property" requirement is not met because "[n]either Plaintiff directly alleges that he ever entered into any transactions with Google." MTD at 14. Second, it asserts Plaintiffs must allege "actual reliance" to meet the "as a result of" requirement, but they did not do so. *Id.* at 16. Both arguments fail.

### a.      Plaintiffs Adequately Allege UCL "Loss of Money"

As to Google's first argument, there is no requirement that the lost money be tied to a transaction with defendant. A plaintiff must merely allege "an identifiable monetary or property injury." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 325 (2011). Payment of money is a "classic" form of injury in fact which satisfies the lost money or property requirement. *Id.* at 323-24; *see also Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 788-89 (2010) (requirement unrelated to obtaining

restitution from defendant). No "benefit of the bargain" exception exists for UCL standing. *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 731 (2018); *see also People ex rel. Harris v. Pac. Anchor Transp., Inc.*, 59 Cal. 4th 772, 783 (2014).

Here, Plaintiffs allege that "as a result of Defendant's conduct" they "were induced to spend money" on "the random-chance possibility of winning valuable items" by playing Loot Boxes. ¶¶ 14, 15, 17-18, 130. Mr. Coffee "spent in excess of $500 on in-game Loot Boxes in exchange for the random-chance possibility of winning valuable items." ¶ 14. Ms. Montanez' "son S.M. has been induced to spend his parents' money and perhaps his own money to purchase 'Loot Boxes' in-game." ¶ 15. These amounts were charged by and paid to Google. ¶¶ 31-33. These allegations are sufficient. Nothing more is needed.

Google makes the ironic argument that no money was spent with Google (a requirement that does not exist) because Plaintiffs first were required to buy virtual currency, which had to be used to purchase a chance on a Loot Box. Lost in its own convoluted Type 1 and Type 2 transaction argument, Google misses the point. This two-step transaction is precisely how a casino works and a part of the problem. The casino requires the gambler to buy chips and then use those chips to place bets. This helps distance in the gambler's mind the use of money from the use of chips. ¶¶ 34-36. In the words of gambler Julius "Big Julie" Weintraub, "the guy who invented poker was bright, but the guy who invented the chip was a genius." This is part of what makes this an unfair business practice, not a basis for dismissal.

Google also falsely argues Plaintiffs "fail to allege that they ever used the Google Play store to purchase in-game currency," and therefore they did not lose money to Google. MTD at 14. Again, although the UCL does not require the loss be to the defendant, Google's factual assertion is wrong. Plaintiffs expressly allege that the only way to buy a chance on a Loot Boxes is to purchase virtual currency directly from Google:

- "Payment for...all in-game purchases … (e.g., Loot Boxes), is controlled entirely by Google. Using Google Play's payment system, the payments go directly to Google and, after Google takes its 30% of the total, the remainder is distributed to the App developer." ¶ 31

- "Loot Boxes can only be purchased by the consumer through the Google Play-

00168203

linked Android device." ¶¶ 32, 33

- "Upon pressing the 'Purchase' button, the amount of the purchase is immediately charged by Google to the credit card number on file with the Google Play store." ¶ 33.

Google relies on an opinion from Maryland, *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457 (D. Md. 2015), to argue that a plaintiff who receives what was promised suffered no economic injury. MTD at 15. Google fails to tell the whole story about that case and ignores the controlling law. First, calling it "*Mason II*," Google cites *Mason v. Mach. Zone, Inc.*, 851 F.3d 315 (4th Cir. 2017) to suggest that this point of law was affirmed on appeal. It was not. *Mason II* did not analyze any California law because plaintiff only appealed her Maryland statutory claim. *Id.* at 317. In *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 788-89 (9th Cir. 2018), the Ninth Circuit distinguished *Mason* for this reason.

*Mason*, which does not control, concerned a complaint containing a "hodgepodge of hollow claims" that lacked the facts Plaintiffs allege here. Without the benefit of the peer-reviewed research and regulatory study conducted in the last four years, the *Mason* court wrote the case was about "entertainment choices" involving "modest payments" for "play money" in a "pretend" world. Lacking the evidence of real-world harm, it stated: "In closing, the Court expresses its disapproval of lawsuits—like this one—that strain and strain but in the end never credibly allege an injury." *Mason*, 140 F. Supp. 3d at 469 n.20. As regulators around the world have concluded based on the peer-reviewed science, the psychological and financial harms caused by Loot Boxes are real. Here, the Complaint details study after study reaffirming the predatory nature of Loot Boxes and that they are gambling that create and encourage addictive behavior. ¶¶ 77-92. This research and governmental action post-date *Mason*. *Mason's* holding and rationale were colored by an incorrect perception of the case.

Here, the allegation of an expenditure of money "as a result of the unfair competition" is sufficient.

### b.   Plaintiffs Adequately Allege UCL Causation

Google's contention that Plaintiffs must allege "actual reliance" is equally meritless. MTD

00168203

at 16. The type of causation needed to meet the "as a result of" requirement depends on the UCL violation alleged. Where fraud involving misrepresentations is alleged, actual reliance is required because "reliance is the causal mechanism of fraud." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). But where, as here, the basis of the UCL violation is not grounded in fraud, transactional causation suffices. *Id.* at 325 n.17 ("There are doubtless many types of unfair business practices in which the concept of reliance … has no application."); *Medrazo v. Honda of N. Hollywood*, 205 Cal. App. 4th 1, 12 (2012) ("an actual reliance requirement does not apply to UCL actions that are not based upon a fraud theory"); *Franz v. Beiersdorf, Inc.*, 745 Fed. Appx. 47, 48 (9th Cir. 2018) (Plaintiff "spent money on a product that should not have been on the market. Those allegations are sufficient to establish standing under the UCL. Plaintiff need not plead reliance because neither the alleged FDCA violation nor the alleged Sherman Law violation requires allegations of fraud or deception."); *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017) (violation of California Insurance Code provisions was sufficient to state UCL unlawful prong claim).

This Court's decision in *Svenson v. Google Inc.*, No. 13-cv-04080-BLF, 2015 U.S. Dist. LEXIS 43902 (N.D. Cal. Apr. 1, 2015) is analogous. Svenson's UCL claim was based on a statutory violation that did not require reliance or implicate the fraudulent prong. As Plaintiffs do here, Svenson "specifically confine[d] her allegations to the unlawful and unfair prongs." *Id.* at *32. Google asserted that "the thrust of the UCL claim is that Google misrepresented its practices with respect to disclosure of user information" and thus, "Svenson must allege reliance upon those misrepresentations in order to state a claim." *Id.* at *32-33. The Court was "not persuaded." Svenson's "unlawful prong claim alleges in a straightforward manner that Google violated … California Business and Professions Code § 22576," for which "[n]o reliance is required." *Id.* at *33. *See also Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1021 (N.D. Cal. 2019) (no reliance required for UCL statutory-based claims for violating website privacy policy: "this constitutes a non-misrepresentation-based argument that does not require a showing of reliance"); *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1048-49 (N.D. Cal. 2014) (no reliance required for UCL claims based on violations of the Stored Communications Act and the Wiretap Act). Plaintiffs satisfy the causation requirement.

### 3.     Google Violates the UCL Unlawful Prong Because it Violates California's Gambling Prohibitions

Sixteen pages into its brief, Google finally arrives at the heart of the issue – whether Loot Boxes are prohibited under California anti-gambling laws. It relies solely on trial court decisions that lacked the benefit of the facts and knowledge that now exist and are alleged in the Complaint. These include the high-quality, independent clinical research finding Loot Boxes carry all the evils of any other type of gambling, including addiction, and that these evils are particularly pronounced in the largest target of videogames, teenagers. The Complaint details how Loot Boxes offer a chance to win something of value to the player, which is why so much money is spent in the pursuit of a chance to win the prizes offered. Finding that Loot Boxes meet California's definition of gambling fulfills the Legislature's goal of broadly capturing gambling schemes to prevent the problems associated with gambling under Penal Code § 330b. This is why regulators around the world have banned or are in the process of banning Loot Boxes. Google urges the Court to ignore the gaming statutes and the facts alleged, and instead blindly follow a handful of ill-informed out-of-circuit district court opinions.

The UCL's unlawful prong is essentially an incorporate-by-reference provision. "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  "With respect to the unlawful prong, '[v]irtually any state, federal or local law can serve as the predicate for an action' under section 17200." *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002) (emphasis omitted).

Penal Code sections 330b and 330.1 define gambling devices and their prohibition. California's Bureau of Gambling Control explains these sections as follows:

California's gambling device statutes are broad in their coverage and prohibit any person from owning, renting, or possessing illegal gambling devices. (Penal Code §§ 330a, 330b, 330.1.) An illegal gambling device has three features:

1.  It is a machine, apparatus, or device (coin operation is not required);

2.  Something of value is given to play the device; and

3.  The player has the opportunity to receive something of value by ***any***

element of hazard or chance ("something of value" is not limited to coins, bills, or tokens—it also includes free replays, additional playing time, redemption tickets, gift cards, game credits, or anything else with a value, monetary or otherwise.) (Penal Code, §§ 330a, 330b & 330.1.)

¶¶ 98-99 (quoting Cal. Bureau of Gambling Control, Law Enforcement Advisory No. 10 "Illegal Gambling Devices," Nov. 1, 2010) (emphasis in original).

Google does not challenge the first element. Instead, it argues nothing of value is given to play a Loot Box because money is used to purchase virtual currency, and that currency is used to play a Loot Box. It then argues Loot Boxes do not offer the chance to win something of value. Google's arguments fail.

### a.    Loot Boxes Award Randomized "Things of Value"

Google argues Loot Boxes do not provide the "opportunity to receive something of value." MTD at 17-18. In support, Google states Loot Boxes "have no direct exchange or redemption value" and "do not provide 'extended' plays since the video games at issue are entirely free to play in the first instance." It argues that to establish a "thing of value," the thing must be capable of trade or sale, otherwise redeemable for "real money," or provide chances to win additional plays. MTD at 17-18. Penal Code § 330b(d) defines an unlawful gambling device as anything offering random chances to "receive any piece of money, credit, allowance, or thing of value, or additional chance or right to use the slot machine or device..." in return for the payment of a wager. The definition is open-ended, in the disjunctive, and very broad.

Under California's gambling laws, a "thing of value" includes a wide variety of tangibles and intangibles. "[I]t is clear from the statutes themselves that 'gambling' is not limited to the opportunity to win money." *Trinkle v. Stroh*, 60 Cal. App. 4th 771, 785 (1997). Amusement is a thing of value under these statutes. *Merandette v. City & Cty. of S.F.*, 88 Cal. App. 3d 105, 114 (1979) (the reward of free games constituted a thing of value within the meaning of Cal. Penal Code § 330b).

In *Kater*, issued after the out-of-circuit district court cases upon which Google relies, the Ninth Circuit rejected the argument that prizes must be redeemable for money or merchandise or otherwise have pecuniary value on their own to be a thing of value. There, defendant's free-to-

download gaming app awarded new players with an initial allotment of free virtual chips that could be replenished through in-app purchases or by winning games. *Kater*, 886 F.3d at 785-86. To play the game, defendant required users to accept terms of use "stat[ing] that virtual chips have no monetary value and cannot be exchanged 'for cash or any other tangible value.'" *Id.* at 786. Nevertheless, defendant's virtual chips were a "thing of value" under Washington's similar gambling law because they allow a player to "place another wager or re-spin a slot machine," making them a "'credit ... involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge.'" *Id.* at 787 (quoting RCW § 9.46.0285). Cash redemption, pecuniary value, whether the game was free-to-download, and an option to earn the gambling currency were all not required. The virtual nature of the purchased coins did not make it any less purchased. *Id.* at 787-88.

Google makes four arguments to attempt to distinguish *Kater*. None are persuasive. First, according to Google, "the game at issue in *Kater* was literally an online casino (not a strategy or other skill-based game featuring Loot Boxes), created and managed by Churchill Downs, Inc., an owner of racetracks, brick and mortar casinos, and online betting websites." MTD at 19. But none of that matters. Loot Boxes are not strategic or skill-based and the name of the defendant makes no difference. Whether Loot Boxes are found in some games that require skill do not transform Loot Boxes into games of skill. They are purely randomized games of chance. That Google, unlike the *Kater* defendant, hides the fact that Loot Boxes constitute gambling does not make it any less so.

Second, Google argues the games in *Kater* required players to spend money to buy virtual chips to play, but sometimes with Loot Boxes virtual currency can be earned in some games through gameplay. *Kater* held no such thing. In *Kater*, players received an initial free allotment of virtual currency to play with. *Id.* at 785. However, the panel refused to consider defendant's argument that "users receive free chips throughout gameplay, such that extending gameplay costs them nothing." *Id.* at 787. Subsequent decisions have rejected Google's reading of *Kater*. *See Fife v. Sci. Games Corp.*, No. 2:18-cv-00565-RBL, 2018 U.S. Dist. LEXIS 212908, at *2, 11-12 (W.D. Wash. Dec. 18, 2018) ("Virtual coins" constituted "gambling" because they randomly awarded free game play. It was irrelevant that the coins cannot be redeemed for actual money and players

00168203

also received free coins at various points.); *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1040-41 (W.D. Wash. 2018) (same). Plaintiffs allege, and Google does not dispute, that real money is used to buy the virtual currency used to play Loot Boxes. That virtual currency sometimes can be obtained in other ways changes nothing.

Third, Google argues the game in *Kater* provided an "internal mechanism" for "players to transfer their chips to each other, allowing them effectively 'to cash' out their winnings." MTD at 20. Whatever "effectively cash out" means, *Kater* specifically noted players had to acknowledge "that virtual chips have no monetary value and cannot be exchanged 'for cash or any tangible value.'" *Kater*, 886 F.3d at 786. *Kater's* holding does not turn on an "effectively cash out" feature – and Google does not contend otherwise. If anything, *Kater's* holding means a cash out feature is not necessary for virtual prizes to constitute a thing of value.

Last, Google argues the Ninth Circuit specifically limited its holding to Washington's "particularly broad definition of 'thing of value'" and mentioned that three out-of-state cases, including one applying California law, were "unpersuasive" to the analysis of Washington's gambling laws. MTD at 20. Google's analysis deceptively stopped there, for good reason.

The definition of "thing of value" under Washington law is narrower than under California law. Under Washington law, "thing of value" is defined as (1) money, (2) property, (3) things exchangeable for money or property, or (4) free game play:

> [A]ny money or property, any token, object or article exchangeable for money or property, or any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge.

RCW 9.46.0285.

In contrast, for California, "thing of value" is not defined by these other measures. Under California law, illegal gambling devices are those that randomly entitle users to (1) "money," (2) "credit," (3) "allowance," (4) "thing[s] of value," (5) "additional chance or right to use the slot machine or device," (6) "or any [item], which may be exchanged for any money, credit, allowance, or thing of value." Cal. Penal Code § 330b(d). "Thing of value" under California law is in addition to an award of free game play, money, *et cetera*. The statute does not define "thing of

value" as money, credit, allowance, additional chances for play or something that can be sold or bartered. Instead, the broad definition adds "thing of value" to this list.

With California law it does not matter whether the random Loot Box prizes include free or extended gameplay or if gamers may redeem the Loot Box prizes for money or merchandise (which they can—¶ 6). They need merely be something of value to the player. As alleged, the Loot Boxes randomly award prizes that are of value to the player. ¶¶ 5-6, 51-54, 101. Loot Box prizes have real entertainment, hedonic and social value. The bipartisan Senate bill, "The Protecting Children From Abusive Games Act," defines Loot Boxes as "an add-on transaction to an interactive digital entertainment product that in a randomized or partially randomized fashion unlocks a feature of the product or adds to or enhances *the entertainment value* of the product." ¶ 92. One prominent value proposition of Loot Box prizes is they afford players to differentiate themselves from other players by personalizing their avatar or other belonging in-game. ¶ 69 (describing a gamer who spent $700 on Loot Boxes before winning a particular character he wanted). In games such as the games at issue where the items contained in Loot Boxes are categorized by frequency and rarity, value is inherently assigned to the items. ¶¶ 5, 41-42, 46, 67, 73. Moreover, the collection of rare items is seen as a sign of status within the gaming community, thus ascribing a form of social value to the items. *Id.* Loot Boxes offer a chance at things of value, which is why they are so sought-after.

Google asks that the Court follow three out-of-circuit district court opinions that predate *Kater* and were decided without the factual and scientific findings detailed in the Complaint. *Kater* discusses three of the cases, casting them aside as "unpersuasive." *Kater*, 886 F.3d at 788. The first, *Mason*, was discussed above. The second, *Ristic v. Mach. Zone, Inc.*, No. 15-cv-8996, 2016 U.S. Dist. LEXIS 127056 (N.D. Ill. Sept. 19, 2016) involved claims under the Illinois Loss Recovery Act ("ILRA") and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). *Id.* at *1. Plaintiff's claims failed under the Illinois statutes because defendant was not the "winner" of plaintiff's gambling loss – a requirement absent from California's statute. *Id.* at *7-9, 11-12. The complaint was dismissed under Illinois law, not California.

*Kater* also rejected the third opinion, *Soto v. Sky Union, LLC*, 159 F. Supp. 3d 871 (N.D.

1    Ill. 2016). There, the game was found not to be gambling "because players use virtual, valueless

2    currency to participate in Rolls and events with virtual, valueless prizes." *Id.* at 877. *Kater* rejected

3    these facts as irrelevant to the analysis under Washington's gambling laws. California's gambling

4    laws are equivalent to Washington's in this respect. Further, even *Soto* agreed the use of virtual

5    currency could constitute gambling because, as here, real money was used to purchase the virtual

6    currency. *Id.* at 878-79. The court dismissed plaintiff's claims because the prizes did "not have

7    measurable worth, and [] cannot be a 'thing of value.'" *Id.* at 880. *Kater* rejected this assertion.

8    California sweepingly includes any "thing of value." "Measurability" appears nowhere in the

9    statute. Nonetheless, hundreds of millions of dollars are spent on Loot Boxes.

10                           **b.       Virtual Currency Equates to Real Money**

11           Google next argues § 330b's second requirement, paying something of value, is not

12   satisfied because the gambling chips are "virtual," sometimes may be obtained "for free through

13   normal gameplay," and the use of money to buy virtual currency to then purchase a Loot Box play

14   is "entirely optional." MTD at 18-19. Plaintiffs paid Google real money to obtain the virtual

15   currency used to play Loot Boxes. ¶¶ 14-18, 31-34. The California Supreme Court rejected the

16   argument that gambling devices require direct use of coins or money. *People ex rel. Green v.*

17   *Grewal*, 61 Cal. 4th 544, 559, 563-64 (2015) (use of a purchased PIN number to operate a

18   sweepstakes computer game "plainly came within the broad scope" of section 330b(d)'s "catchcall

19   phrase 'by any other means'"). Further, citing *Kater*, courts have held it is irrelevant if purchasing

20   gambling currency is optional and may at times be obtained for free. *Fife*, 2018 U.S. Dist. LEXIS

21   212908, at *11-12 ("free coin allotments []do not remove Scientific's app from the 'thing of value'

22   definition"); *Wilson*, 349 F. Supp. at 1040-41 ("that a player may obtain more free coins at some

23   future time" does not "remove [defendant's] virtual coins from the statutory 'thing of value'

24   definition"). Section 330b's second requirement is satisfied.

25                           **c.       The Loot Boxes Are Not "Games of Skill"**

26           Google next asserts Loot Boxes fall within § 330b's exception for "[p]inball and other

27

28

1    amusement machines or devices, which are predominantly games of skill."[4] MTD at 19 (citing

2    Cal. Penal Code § 330b(f)). Google argues that because the videogames in which Loot Boxes are

3    found require skill, Loot Boxes, which require no skill, should nonetheless be considered skilled

4    games. Like pressing the button on a slot machine, the player simply clicks on the Loot Box to see

5    what randomized prize comes up. ¶¶ 12, 29-30. Loot Boxes are the issue here, not the video games

6    in which they are found. *Cf. People ex rel. Green*, 61 Cal. 4th at 564 (That users could use a

7    machine without playing its gambling aspect "does not make the system any less of a slot machine

8    when they do [] play the casino-style game.").  Google again relies on *Mason*. MTD at 19. But in

9    *Mason*, the court erroneously refused to distinguish between the "integrated strategy" video game

10   and the gambling aspects within it. *Id.* ("The game at issue here is not 'Casino'; the game is

11   [Game of War].").

12                        **4.       Plaintiffs' UCL Unfair Prong Claims**

13            Google dismissively mentions the Complaint's "copious references to third-party video

14   game reviews, politicians' statements, [and] social psychology analysis." Google argues "[i]f

15   Plaintiffs' intention is to wage a general public policy debate, they have chosen the wrong forum."

16   MTD at 4. Actually, under the UCL's unfair prong, this is the right forum. "A business practice is

17   unfair within the meaning of the UCL if it violates established public policy or if it is immoral,

18   unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its

19   benefits." *McKell*, 142 Cal. App. 4th at 1473. The unfair prong is "intentionally broad, thus

20   allowing courts maximum discretion ...." *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1166

21   (2000). "In permitting the restraining of all 'unfair' business practices," the UCL "undeniably

22   establishes only a wide standard to guide courts of equity ... given the creative nature of the

23   scheming mind, the Legislature evidently concluded that a less inclusive standard would not be

24   adequate." *Cel-Tech.*, 20 Cal. 4th at 181. The unfair prong does not require a statutory violation;

25   "on the contrary… the UCL is independent of other statutes, and prohibits unfair practices not

26   otherwise unlawful." *Safeway, Inc. v. Super. Ct.*, 238 Cal. App. 4th 1138, 1157 (2015) (Labor

27   _____

28   [4]       Google offers no definition or authority for what constitutes a "game of skill" under the statute.

Code violations not required for employment practices to be considered unfair). Thus, Google's conduct may violate the UCL's unfair prong even if selling Loot Boxes does not constitute a technical violation of California's gambling laws because the practice violates a well-establish public policy to protect people, including minors, from the dangers of gambling. The determination of whether a challenged practice is "unfair" is a question of fact not usually made at the pleading stage. *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 939 (9th Cir. 2008); *Progressive West Ins. Co. v. Super. Ct.*, 135 Cal. App. 4th 263, 287 (2005) (the unfair prong is "fact intensive and is not conducive to resolution at the demurrer stage").

Google repeats the same arguments it makes earlier in its brief: that Google is just a "platform provider" that provides "passive hosting of content on the Google Play store." MTD at 20. But Plaintiffs do not challenge any content. Instead, they challenge the selling of games of chance – an activity, not content – in violation of California law and policy. Google is the casino. It does not make the slot machine, but it makes playing the slot machine possible and facilitates it by selling the virtual currency. And Google sells the poker chips, keeping 30% of the proceeds for itself. ¶¶ 25-28, 31-33.

Google violates the unfair prong because it facilitates an activity that is against public policy and prohibited by law. In the Gambling Control Act, the California legislature declared "[g]ambling can become addictive and is not an activity to be promoted or legitimized as entertainment for children and families. Bus. & Prof. Code § 19801(c). "Unregulated gambling enterprises are inimical to the public health, safety, welfare, and good order." Bus. & Prof. Code § 19801(d). Thus, "[a]ll gambling operations, all persons having a significant involvement in gambling operations, all establishments where gambling is conducted, and all manufacturers, sellers, and distributors of gambling equipment must be licensed and regulated to protect the public health, safety, and general welfare of the residents of this state as an exercise of the police powers of the state." Bus. & Prof. Code § 19801(i).

As detailed in the Complaint, Loot Boxes have proven detrimental impacts on children and adults just like other gambling devices because Loot Boxes are a form of gambling. ¶¶ 11, 77-88. Google has no legitimate business reason for facilitating this illegal and unscrupulous activity (and

offers none) because promoting illegal activity never constitutes a legitimate business activity. It merely asserts this is "the wrong forum" for examining Loot Boxes. *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 922 (N.D. Cal. 2013) (refusing to dismiss UCL unfair claims where "Apple offers nothing in the way of 'reasons, justifications, or motives,' or 'utility of its conduct,' to weight against the alleged harm"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1073 (N.D. Cal. 2012) ("at this [motion to dismiss] juncture the court cannot say that Apple's practices are not injurious to consumers, or that any benefit to consumers outweighs the harm"). Plaintiffs sufficiently allege violations of the unfair prong.

### C.  Plaintiffs' CLRA Claims are Adequately Plead

In arguing Plaintiffs do not allege a claim under the Consumers Legal Remedies Act, Google makes three arguments: the nonsensical "Type I / Type II" virtual currency argument; that it does not make any representation about Loot Boxes (but it overlooks that it facilitates transactions prohibited by law and omits telling consumers about Loot Boxes, including that they are gambling devices); and that Loot Boxes are not gambling devices under California law.

As Google's own Terms of Service state, Google provides services to consumers. Just like a casino filled with gambling devices, Google provides the space in which one gambles and sells consumers the currency required to engage in gambling. Google calls its casino "Google Play," which it describes as a "platform" because it is not a physical building. It calls its poker chips "virtual currency." Consumers use the payment and platform services Google provides to play Loot Boxes, which are prohibited by law. Google thereby violates the CLRA.

The CLRA broadly defines "services" to include any "services for other than a commercial or business use." Civ. Code § 1761(b). In the Google Play Terms of Service, on which Google relies for this motion, Google admits "Google Play is a service provided by Google LLC," "Your use of Google Play and the apps (including Android Instant Apps) … or other digital content or services (referred to as 'Content') available through it is subject to these Google Play Terms of Service and the Google Terms of Service," "Google Play is a 'Service' as described in the Google ToS." ECF No. 17-2 at 2. In the Google Terms of Service, Google again concedes it is a "service provider" that "give[s] [consumers] permission to use [its] services" including "platforms (like

Google Play).” Blood Decl., Ex. A at 2-3.

The services Google provides include “marketing, selling, and/or distributing the games to kids on Google products and through its Google Play store platform” (¶ 13), and “plac[ing] the developers’ Apps on the virtual shelves of its Google Play store, sell[ing] them directly to Android smartphone and tablet customers, charg[ing] and collect[ing] the full price [] from customers, keep[ing] its 30% of the customer payment from every sale or license, and then remit[ting] the balance of the purchase price to the developer” (¶ 27). The “[p]ayment for the Apps, including all in-game purchases after the game is downloaded by the consumer (e.g., Loot Boxes), is controlled entirely by Google. Using Google Play’s payment system, the payments go directly to Google and, after Google takes its 30% of the total, the remainder is distributed to the App developer.” ¶ 28. Google also provides quality control services to consumers by “control[ling] which Apps are allowed in Google Play and maintain[ing] strict requirements and guidelines for App developers who want to distribute an App via Google Play.” ¶ 25.

Google Play is the casino. Without it, no one could pay for or play Loot Boxes. Just like a casino does not make slot machines, but provides the infrastructure and services needed to play them, Google provides Google Play and the attendant services to permit Loot Box play. Penal Code § 330a(a) includes in its prohibitions “[e]very person, who has in his or her possession or under his or her control, either as owner, lessee, agent, employee, mortgagee, or otherwise ... any [gambling] contrivance.” Penal Code § 330b(a) likewise makes it “unlawful for any person to make or to permit the making of an agreement with another person regarding any [gambling] device.” Google falls squarely within these prohibitions when it provides its services through Google Play. At a minimum, it permits and facilitates the making of an agreement to gamble.

As alleged, Google exercises complete control over all the services it provides in Google Play. ¶¶ 25-28. Its control is absolute. In fact, Google recently removed “Fortnite,” one of the world’s most popular games, from Google Play when the game’s developer implemented a direct-payment option to bypass the 30% fee Google collects through Google Play. *See, e.g., Epic Games, Inc. v. Google LLC*, No. 3:20-cv-05671-JD (N.D. Cal.), ECF No. 1 (Complaint for Injunctive Relief), ¶ 5 (“[U]sing myriad contractual and technical barriers” Google “force[s] app

developers and consumers into Google's own monopolized 'app store' – the Google Play Store."), ¶ 23 (Google "ties distribution through its Google Play Store with developers' exclusive use of Google's own payment processing tool, called Google Play Billing, to purchase in-app purchases of digital content").

In *In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1141-42 (N.D. Cal. 2018), Judge Koh rejected the very arguments Google makes here in holding the CLRA applies. The court explained:

> Plaintiffs have signed up for accounts on a web-based platform, maintained by Yahoo, where they can engage in activities ranging from private email communication to bank and stock trading to photo storage. *Id.* That Yahoo continually upkeeps and updates the system further solidifies that Yahoo is providing a "service," i.e., "work, labor, and services for other than a commercial or business use." Cal. Civ. Code § 1761(b). Moreover, as noted above, the FAC's repeated labeling of Yahoo's offerings as "services" is supported by the fact that Yahoo itself has Terms of Service and defines "Yahoo! Services" as including "communications tools, forums, shopping services, search services, personalized content and branded programming." FAC ¶¶ 24-28, 30, 32, 173; Ex. 1, at 1 (emphases added). Thus, Plaintiffs have adequately pled that Yahoo provides a "service" that is subject to the CLRA.

*Id.* at 1142; *see also Zaragoza v. Apple Inc.*, No. 18-cv-06139-PJH, 2019 U.S. Dist. LEXIS 40916 at *15 (N.D. Cal. Mar. 13, 2019) (plaintiffs challenged purchases of digital television content through Apple TV and the court found a factual question existed whether "the alleged iTunes purchases on Apple TV constitute a service under the CLRA").

Google relies on two district court opinions for its argument that it does not provide a service. MTD at 21 (citing *I.B. v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012) and *Doe v. Epics Games, Inc.*, 435 F. Supp. 3d 1024 (N.D. Cal. 2020)). The cases both involved whether minors could disaffirm purchases of in-App virtual currency, reasoning that these constituted an "extension of credit" that was not a "tangible chattel," and therefore not a good under the CLRA. Neither case addressed whether CLRA services were at issue or any of the type of facts alleged here. Although Google disingenuously asserts otherwise, the *Doe* court found "Plaintiff does not argue that, as currently alleged, his CLRA claim is based on purchase of a 'service.'" *Doe*, 435 F. Supp. 3d at 1046 n.16.

Google's conduct constitutes a straightforward CLRA violation. Google violates section

1770(a)(14) of the CLRA because it facilitates "a transaction that is prohibited by law." Further, businesses passing off illegal transactions as legal or claiming a right to charge an amount that it cannot charge because the activity is unlawful constitutes a CLRA violation. *See Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983, 1022 (2010) (Ford violated section 1770(a)(14) of the CLRA because its sales contract "represented it had a legal right to collect finance charges … an obligation prohibited by Regulation Z").

Google argues the Complaint "identifies no specific representation" it made that the transactions were lawful. MTD at 22. A "representation" is not required under the CLRA. Google failed to disclose its transactions were prohibited by law, and Plaintiffs transacted with Google "on the belief that the transaction was lawful." ¶ 130. An omission is sufficient. *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006) (actionable CLRA claims include "an omission of a fact the defendant was obliged to disclose"). "It requires no stretch to conclude that" a "reasonable person would find it important when determining whether to purchase a product that it is unlawful to sell [] that product." *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010) (materiality inferred and CLRA causation established where class members purchased defendant's illegal products); *see also McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 184 (2010) ("purchases pursuant to [the] alleged failure to disclose … would be sufficient to permit an inference of common reliance among the class on the material misrepresentation comprising the alleged failure to disclose").

Google argues Plaintiffs failed to allege reliance or that the purchases were "in any way unlawful, misrepresented, or otherwise problematic." MTD at 22. Google is wrong. Plaintiffs allege they paid Google hundreds of dollars "on the belief that the transaction[s] w[ere] lawful." ¶ 130; *see also* ¶¶ 14-18, 120. Google has charge consumers many millions of dollars to play Loot Boxes, which are transactions prohibited by law. Plaintiffs state a CLRA claim.

**D.      Plaintiffs' Adequately Allege Unjust Enrichment**

"The elements for a claim of unjust enrichment are receipt of a benefit and unjust retention of the benefit at the expense of another." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1132 (2014). Plaintiffs allege Google received money directly from them

1  personally, as well as class members, for the purpose of gambling. These allegations adequately

2  support an unjust enrichment claim. ¶¶ 136-139.

3       Google claims it "receives no benefit at all." MTD at 23. Plaintiffs allege Google takes a

4  30% cut of every Loot Box purchase, earning billions of dollars. ¶ 96. Google's point seems to be

5  that the Loot Box purchase and opening occurs "in-game" and Google is therefore not in privity

6  with the gamer. But privity is not a requirement for unjust enrichment. *See, e.g., Philpott v. Super.*

7  *Ct.*, 1 Cal. 2d 512, 521-22 (1934) (privity not required "to prevent A's unjust enrichment at B's

8  expense"); *Process Specialties, Inc. v. Sematech, Inc.*, No. S-00-414 FCD PAN, 2001 U.S. Dist.

9  LEXIS 26261, at *63 (E.D. Cal. Nov. 8, 2001) ("[T]here is no [privity] requirement under

10  California law.").

11       Apparently without irony, Google argues in the very next paragraph that the parties are in

12  privity – that the Terms of Service are a binding contract. This too is wrong. It may be that the

13  Google Play Terms of Service can be construed as a contract, but that contract says nothing about

14  gambling in the games downloaded from Google Play. As Defendant's own authority makes clear,

15  the contract must cover the same subject matter of the quasi-contract claim. *See* MTD at 23 (citing

16  *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1253 (N.D. Cal. 2017)). The only provision of the

17  Google Terms of Service (not Google Play Terms of Service) cited by Defendant to support this

18  argument is the choice of venue provision identified in Paragraph 22 of the Complaint. But venue

19  has nothing to do with the basis for unjust enrichment in this case.

## VI.   CONCLUSION

21       For the foregoing reasons, Plaintiffs respectfully request the Court deny Defendant's

22  motion to dismiss in its entirety. If the Court grants any aspect of Defendant's motion, Plaintiffs

23  request leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

24                  Respectfully submitted,

25  Dated: September 8, 2020        BLOOD HURST & O'REARDON, LLP
                         TIMOTHY G. BLOOD (149343)

26                           THOMAS J. O'REARDON II (247952)

27

28                  By:      *s/ Timothy G. Blood*
                         TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

THE LAW OFFICES OF ANDREW J. BROWN
ANDREW J. BROWN (160562)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/501-6550
andrewb@thebrownlawfirm.com

*Attorneys for Plaintiff*

Case No. 5:20-cv-03901-BLF
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

00168203

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 8, 2020.

*s/  Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON LLP
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
tblood@bholaw.com

27

Case No. 5:20-cv-03901-BLF

00168203