Bradford K. Newman (State Bar No. 178902)
bradford.newman@bakermckenzie.com
Alexander G. Davis (State Bar No. 287840)
alexander.davis@bakermckenzie.com
Anne Kelts Assayag (State Bar No. 298710)
anne.assayag@bakermckenzie.com
**BAKER & McKENZIE LLP**
600 Hansen Way
Palo Alto, CA 94304
Telephone: +1 650 856 2400
Facsimile: +1 650 856 9299

Teresa H. Michaud (State Bar No. 296329)
teresa.michaud@bakermckenzie.com
Kirby Hsu (State Bar No. 312535)
kirby.hsu@bakermckenzie.com
**BAKER & McKENZIE LLP**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone: +1 310 201 4728
Facsimile: +1 310 201 4721

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN COFFEE, MEI-LING MONTANEZ, and S.M., a minor by MEI-LING MONTANEZ, S.M.'s parent and guardian, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-cv-03901-BLF<br><br>Date Action Filed: June 12, 2020<br><br>**REPLY IN SUPPORT OF GOOGLE LLC'S MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**<br><br>Date:  November 19, 2020<br>Time:  9:00 a.m.<br>Ctrm.:  3 - 5th Floor<br>Judge:  Hon. Beth Labson Freeman<br><br>**Robert F. Peckham Federal Building & United States Courthouse<br>280 South 1st Street<br>San Jose, CA 95113** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. REQUEST FOR JUDICIAL NOTICE ................................................................................. 2

III. ARGUMENT ......................................................................................................................... 2

    A. Section 230 Mandates Dismissal of Plaintiffs' Claims.............................................. 2

        1. *Plaintiffs offer no basis to depart from the default rule that Section 230 protects a platform for the content of third-party game developers.* ................ 4

        2. *Google has not created or developed content that "contributes materially" to any illegal conduct alleged by Plaintiffs.* ............................................................. 5

        3. *Plaintiffs cannot avoid Section 230 based on the language of California's slot machine statute.* ............................................................................................... 7

        4. *Plaintiffs cannot fit their claims within any other recognized exceptions to Section 230.* ...................................................................................................... 9

    B. Video Game Developers' Loot Boxes Do Not Violate Section 330b ....................... 12

    C. Plaintiffs Lack Standing Under the UCL and Their Two Remaining Claims Are Fundamentally Deficient ........................................................................................... 14

IV. CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barnes v. Yahoo!, Inc.*,
 570 F.3d 1096 (9th Cir. 2009) ..................................................................................................7

*Carafano v. Metrosplash.com, Inc.*,
 339 F.3d 1119 (9th Cir. 2003) ..................................................................................................4

*Duncan v. Walker*,
 533 U.S. 167 (2001)................................................................................................................13

*Fair Hous. Council v. Roommates.com, LLC*,
 521 F.3d 1157 (9th Cir. 2008) ........................................................................................ passim

*Hansen v. Newegg.com Americas, Inc.*,
 25 Cal. App. 5th 714, 731 (2018) ...........................................................................................14

*Hinojos v. Kohl's Corp.*,
 718 F.3d 1098 (9th Cir. 2013) ................................................................................................14

*HomeAway.com v. City of Santa Monica*,
 918 F.3d 676 (9th Cir. 2018) ......................................................................................10, 11, 12

*I.B. v. Facebook, Inc.*,
 905 F. Supp. 2d 989 (N.D. Cal. 2012) ....................................................................................15

*Kater v. Churchill Downs Inc.*,
 886 F.3d 784 (9th Cir. 2018) ..................................................................................................12

*Levitt v. Yelp! Inc.*,
 No. C 10-1321 MHP, 2011 U.S. Dist. LEXIS 99372 (N.D. Cal. Mar. 22, 2011) ....................4

*Merandette v. City & Cty. of S.F.*,
 88 Cal. App. 3d 105 (1979) ....................................................................................................13

*Opperman v. Path, Inc.*,
 87 F. Supp. 3d 1018 (N.D. Cal. 2014) ..................................................................................9, 10

*Rizo v. Yovino*,
 950 F.3d 1217 (9th Cir. 2020) ................................................................................................13

*Soto v. Sky Union, LLC*,
 159 F. Supp. 3d 871 (N.D. Ill. 2016) ......................................................................................13

*Stevo Design, Inc. v. SBR Mktg.*,
 919 F. Supp. 2d 1112 (D. Nev. 2013)...................................................................................8, 9

*Turo Inc. v. City of L.A.*,
   2020 U.S. Dist. LEXIS 108884 (C.D. Cal. June 19, 2020) ...............................................10, 11, 12

**Statutes**

47 U.S.C. § 230(e)(3).................................................................................................................7

Cal. Pen. Code § 330.2.............................................................................................................13

Cal. Pen. Code § 330b(d).........................................................................................................12

Communications Decency Act ("Section 230") ..................................................................... *passim*

Consumer Legal Remedies Act .........................................................................................2, 8, 15

Unfair Competition Law ....................................................................................................2, 8, 14

## I. INTRODUCTION

Plaintiffs' Opposition confirms that this case is indeed an attempt to hold a passive internet platform provider responsible for third-party content that is neither unlawful, unfair, nor unjust in the first place. The result is that the Court should dismiss the Complaint with prejudice.

Section 230 of the Communications Decency Act ("Section 230") mandates dismissal of the Complaint's three causes of action. Plaintiffs' Opposition presents facts and arguments that contradict their own pleadings to claim that Section 230 is somehow inapplicable because Google "actively participates in and facilitates illegal gambling." (Opp. at 6:12.) Plaintiffs' brief repeats—more than a dozen times—words to the effect that "Google performs the same functions as a casino." (Opp. at 1:10-11.) But rather than deprive Google of its Section 230 protections, Plaintiffs' casino analogy actually proves why the statute applies. The mechanisms by which Google supposedly "participates in and facilitates" alleged wrongdoing are core protected conduct, namely (i) providing a passive platform to allow consumers to download third-party video games, and (ii) supplying a content-neutral payment tool for processing in-App purchases offered by the video game developers. Moreover, the purchases allegedly involving Google are only for virtual currency—not Loot Boxes—which Plaintiffs do not (and cannot) claim violate any law. Therefore, however Plaintiffs may wish to characterize these basic facts, the result is the same: Section 230 bars all of Plaintiffs' claims because they all "boil[] down" to holding Google liable for its "deci[sion] whether to exclude material that third parties seek to post online[, which] is perforce immune under section 230." *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008).

Plaintiffs also effectively concede that their theory of substantive liability in this case requires the Court to afford an unprecedented and unrestricted interpretation to California's criminal law against unlicensed slot machines ("Section 330b"). Plaintiffs ask the Court to conclude that Section 330b regulates Loot Box awards that provide nothing but subjective "amusement value." (Opp. at 14:22-23.) No court has embraced this interpretation. Indeed, the only district court to decide the issue explicitly rejected it, and for good reason: literally *anything* has the potential to register *some* subjective amusement value, so Plaintiffs' interpretation would effectively read a required element for liability out of Section 330b entirely. Plaintiffs implicitly acknowledge their

error by conceding that California is currently considering legislation to "prohibit games such as Loot Boxes." (Opp. at 3:4-5.) But Plaintiffs fail to explain why the legislature would seek to prohibit content that Plaintiffs disingenuously assert is supposedly already proscribed by existing law. Judicial deference to the current legislative process urges the opposite inference.

Finally, Plaintiffs cannot satisfy the requirements for standing under the Unfair Competition Law ("UCL") or Consumer Legal Remedies Act ("CLRA"), nor articulate a valid basis for an unjust enrichment claim. As Plaintiffs must concede, their transactions involving Google are limited to the purchase of virtual currency, not Loot Boxes. Plaintiffs do not allege that purchases of such currency are themselves illegal, nor do they claim they received less than the amount of virtual currency promised. Having now conceded on Opposition that their UCL and unjust enrichment claims are not based on fraud or other misrepresentations by Google, Plaintiffs are left with the fact that they received the benefit of their bargain, and therefore suffered no economic loss. And virtual currency does not constitute either a good or a service for purposes of the CLRA.

For each and every one of these reasons, as well as those set forth below and in the opening brief (ECF No. 17), the Court should grant Google's Motion to Dismiss.

## II. REQUEST FOR JUDICIAL NOTICE

Plaintiffs misunderstand the purpose for which Google asks the Court to take judicial notice of certain provisions in the Google Play terms of service ("Terms"). (Opp. at 4:8-18.) The language, "Users are prohibited from selling their accounts," is merely a proscription against certain activity. Google asks the Court to take notice only of the fact that the Terms contain such restriction. Whether individuals choose to violate the Terms of by attempting to sell their game accounts is not at issue and not attributable to Google. The Court should therefore grant Google's request.

## III. ARGUMENT

### A. Section 230 Mandates Dismissal of Plaintiffs' Claims

Plaintiffs argue they are not suing Google for allegedly publishing illegal content of third-party video game developers, but instead for "permitting and facilitating" access to this content. (Opp. at 5:14-15.) But this is a distinction without a difference for purposes of Section 230: where, as here, Google passively provides a platform for downloading video games and offers a content-

neutral tool to process in-App purchases of virtual currency (which may or may not be used to acquire Loot Boxes), the statute applies.  "Insofar . . . as a plaintiff would bring a claim under state or federal law based on a website operator's passive acquiescence in the misconduct of its users, the website operator would likely be entitled to [Communications Decency Act] immunity. This is true even if the users committed their misconduct using electronic tools of general applicability provided by the website operator."  *Fair Housing*, 521 F.3d at 1169 n.24.  The Court should reject Plaintiffs' various attempts to distract from the *Fair Housing* panel's straightforward and commonsense analysis that neatly describes the core allegations in this case.

Plaintiffs begin this exercise in obfuscation by spinning a casino analogy supported by "facts" that contradict their Complaint's own allegations.  For example:

*"A player must pay to play a Loot Box."*  (Opp. at 1:11.)  **False**: as Plaintiffs concede, video game developers (not Google) offer players the "in-game" option to acquire Loot Boxes in exchange for virtual currency. (*See* Compl. ¶¶ 13, 67, 73.)  Moreover, players may acquire virtual currency for free during normal game play, and so need not pay for Loot Boxes at all.  (*See id.* ¶¶ 68, 74.)

*"Google Play is where Plaintiffs and the other Class members must go to play a Loot Box."* (Opp. at 1:14-15.)  **False**: Google Play allows Plaintiffs to download video game Apps.  (Compl. ¶ 23.)  Players then access Loot Boxes and other gameplay features within those third-party Apps exclusively, not the Google Play platform.  (*See, e.g.*, *id.* ¶ 67 ("Summons are the in-game Loot Boxes that offer random rewards and characters"), ¶ 73 (same).)  The video game App, not Google, is where players must go to play a Loot Box.  (*Id.*)

*"The virtual currency is the equivalent of Poker chips."*  (Opp. at 6:17-18.)  **False**: In a casino, a person may freely exchange real money for Poker chips and vice versa, without limitation. Virtual currency, in stark contrast, presents a one-way proposition: players buy virtual currency to enhance their enjoyment of a video game; once purchased, such virtual currency may never be exchanged or otherwise redeemed for money within the game itself or through Google.  (*See* Compl. ¶ 6.)  Nor is virtual currency used solely to acquire Loot Boxes, which is the only activity which Plaintiffs claim amounts to illegal gambling.  (*See, e.g.*, *id.* ¶¶ 18, 59.)  The comparison therefore falls apart in critical respects.

Shorn of these and other fabrications, then, Plaintiffs' casino comparison confirms that Google's conduct is limited to activity squarely protected by Section 230: providing consumers a platform for accessing third-party video games and in-App content. Plaintiffs seek to hold Google liable for its choice to publish this third-party content on its platform and to enable access to it using payment processing tools available to all developers that post content to Google Play. (*See, e.g.*, Opp. at 20:13-14 ("[Google] makes playing [a Loot Box] possible and facilitates it by selling the virtual currency.").) This is the paradigm for applying Section 230, because the statute provides "broad immunity for publishing content provided primarily by third parties." *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003).

  **1.** *Plaintiffs offer no basis to depart from the default rule that Section 230 protects a platform for the content of third-party game developers.*

On Opposition, Plaintiffs do not seriously dispute that Google Play is an "interactive computer service" and that the developers of the video games at issue are "information content providers," as those terms are defined under Section 230. Nor can they disagree that the gravamen of their Complaint seeks to impose liability on the basis of Loot Boxes, which is undisputedly third-party content that Google "does not itself create." (*See* Compl. ¶ 13.) Under these circumstances, Section 230 applies: "Section 230(c)(1) of the CDA establishes immunity for providers of an online platform . . . where liability hinges on content independently created or developed by third-party users. So long as the service provider has no part in the creation of the third-party content, it is irrelevant for purposes of Section 230(c)(1) how incendiary or blatantly harassing that content may be, whether the provider has knowledge of the complained-of content, or whether it has a 'general monitoring policy' for such content." *Levitt v. Yelp! Inc.*, No. C 10-1321 MHP, 2011 U.S. Dist. LEXIS 99372, at *30-31 (N.D. Cal. Mar. 22, 2011) (citing *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103, 1108 (9th Cir. 2009)). "[R]eviewing courts have treated § 230(c) immunity as quite robust." *Carafano*, 339 F.3d at 1123. Even close cases "must be resolved in favor of immunity, lest [courts] cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged--or at least tacitly assented to--the illegality of third parties." *Fair Housing*, 521 F.3d at 1174.

Plaintiffs' task on Opposition, therefore, was to explain why the allegations in this case fall within one of the previously-identified, discrete gaps in Section 230's otherwise broad statutory protections. Neither Plaintiffs' casino analogy, nor their characterizations of Google's "conduct" versus game developers' "content," nor their generic citations to inapposite authority, accomplishes this tall order, because the core facts alleged all lead back to the same place. That is, Google simply provides the platform for downloading third-party content, and offers video game developers the exact same transaction tools available to everyone that posts content to Google Play (regardless of whether they offer Loot Boxes). As Plaintiffs ultimately seek to hold Google liable for its decision to allow certain video games to be made available on Google Play, this is exactly the conduct that Section 230 protects, and the entire Complaint must be dismissed as a result.

**2. *Google has not created or developed content that "contributes materially" to any illegal conduct alleged by Plaintiffs.***

Plaintiffs next attempt to avoid Section 230 by casting Google as a "developer" of Loot Box content. (Opp. at 7:13-24.) This argument not only contradicts the Complaint's allegations that third-party developers create this content exclusively (*see* Compl. ¶ 13), but also proceeds from a fundamental misunderstanding of the applicable law. Content "development" does not include "merely . . . augmenting [third-party] content generally," but instead requires "*materially contributing* to its alleged unlawfulness." *Fair Housing*, 521 F.3d at 1167-68 (emphasis added). The *Fair Housing* majority found this requirement met where a website platform both created and mandated content that contributed directly to the alleged violations of state and federal housing discrimination laws. *See id.* at 1169 (citing the platform's action as "direct and palpable").

Here, Plaintiffs' three allegations against Google come nowhere close to the line drawn in *Fair Housing* between mere augmentation of content and material contributions to unlawfulness. First, Plaintiffs allege that Google requires game developers to "display in-game the odds of winning Loot Box prizes." (Opp. at 7:25-26.) Plaintiffs reason that because this content is "specifically about Loot Boxes," Section 230 does not apply. This logic ignores the applicable legal standard: the question is not whether Google has encouraged the posting of information merely having to do with the same subject matter as that targeted by Plaintiffs, but instead whether this odds requirement

actually contributes at all to any of the illegal content alleged. *See Fair Housing*, 521 F.3d at 1167-68. Plaintiffs do not even attempt to explain how this disclosure—which only benefits consumers by providing them accurate information about developers' video games—could possibly "materially contribut[e]" to any of the illegal content alleged in the Complaint.

Second, Plaintiffs note that Google Play includes Entertainment Software Rating Board ("ESRB") age-ratings for video games. (Opp. at 8:6-8 (citing Compl. ¶¶ 44, 66, 94).) This is paradigmatic third-party content—not content generated by Google—which Google publishes without modification on its platform; it is therefore squarely covered by Section 230. Moreover, Plaintiffs cannot explain how Google's choice to include these industry-standard ratings would contribute to their theory of wrongdoing. Plaintiffs do not allege, for example, that Google included the wrong ESRB rating for any of the games at issue. *Cf. Fair Housing*, 521 F.3d at 1169 (opining that a "website operator who edits in a manner that contributes to the alleged illegality--such as by removing the word 'not' from a user's message reading '[Name] did not steal the artwork' in order to transform an innocent message into a libelous one--is directly involved in the alleged illegality and thus not immune"). Nor have Plaintiffs cited any authority suggesting that an entity faces liability for accurately conveying information created by an independent regulator to help "parents and consumers . . . make information choices about which games are right for their family." (Compl. ¶ 93.) Because this ESRB third-party content published by Google does not contribute materially to any illegality alleged in the Complaint, it does not trigger any exception to Section 230.

Third, Plaintiffs emphasize that while Google discloses that certain Apps contain "in-app purchase[]" opportunities, it does not include a disclosure that a particular subset of this content contains "Loot Boxes or other gambling mechanisms." (Compl. ¶ 95.) This argument is about an omission, or *lack*, of content; it therefore does not factor into the *Fair Housing* analysis at all regarding the "creation" or "development" of content necessary to create an exception to Section 230 liability. Moreover, Plaintiffs allege no misrepresentation by Google in disclosing that video games contain "in-App purchases," because the statement is factually accurate. Nor can Plaintiffs identify any affirmative obligation requiring Google to make a disclosure that a game contains "Loot Boxes or other gambling mechanisms," because no such obligation exists. Indeed, Google could face risk

if it did make such a disclosure, given that no U.S. court, legislature, or regulator has determined that Loot Boxes in skill-based video games constitute illegal gambling under any U.S. law.

Under these circumstances, Plaintiffs come nowhere near to satisfying the "materially contributes" exception to Section 230 described in *Fair Housing*.

### 3. *Plaintiffs cannot avoid Section 230 based on the language of California's slot machine statute.*

Plaintiffs continue that because Google is supposedly independently liable under Section 330b for "participat[ing] in and facilitat[ing] illegal gambling," as opposed to actually creating the Loot Boxes at issue, they are not attempting to treat Google as the "publisher" or "speaker" of the video game developer's content, and so Section 230 does not apply. (Opp. at 6:12-17; 7:9-12.) Again, Plaintiffs misapprehend the scope of Section 230.

Setting aside for a moment Plaintiff's untenable interpretation of California's slot machine statute (*see* Section III.B., *infra*), the CDA is clear that no liability may be imposed under any State or local law that is inconsistent with Section 230. 47 U.S.C. § 230(e)(3). This means that even those state laws that purport to place direct liability on platforms for encouraging, or distributing—or, to use Plaintiffs' own formulation, "participat[ing] in and facilitat[ing]" (Opp. at 6:12)—the alleged illegal content of a third-party, cannot trump Section 230.

Indeed, the Ninth Circuit requires courts assessing a Section 230 defense to eschew a complaint's formal labels and focus instead on the core wrongdoing alleged and the relief sought: "[W]hat matters is not the name of the cause of action . . . . [W]hat matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another. To put it another way, courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, section 230(c)(1) precludes liability." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009).

Applying the *Barnes* test to Plaintiffs' Complaint confirms that Section 230 indeed "precludes liability" for Google. Plaintiffs challenge the legality of Loot Boxes, which they admit Google does not itself create. (Compl. ¶ 13.) Much as they try to muddy the waters with generic

argument and legal conclusions—e.g., Google "houses the Loot Boxes"; Google "tightly controls the type of activity performed on the platform" (Opp. at 6:13-14)—Plaintiffs' allegations against Google ultimately "derive" from nothing else than (i) Google's making the third-party video games available for download, and (ii) Google's providing these game developers, like every other entity that posts an App to Google Play, an entirely content-neutral service for facilitating the in-App purchase of virtual currency (regardless of whether the virtual currency is used on a Loot Box).

Plaintiffs also demand the exact relief precluded by Section 230, asking the Court to "enjoin[] Google from continuing the unlawful practices" alleged in the Complaint, which in practice means to review, monitor, and remove certain third-party Loot Box content from Google Play. (*See* Compl., Prayer for Relief, (c).)  As "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230," the Court should dismiss Plaintiffs' claims.  *See Fair Housing*, 521 F.3d at 1170-71.

Finally, Plaintiffs cite no case on Opposition to support the notion that they can avoid Section 230 simply by alleging that Google generally encourages supposedly illegal Loot Box content.  And they fail to distinguish the contrary authority.  For example, in *Stevo Design, Inc. v. SBR Mktg.*, 919 F. Supp. 2d 1112 (D. Nev. 2013), a company that licensed sports betting reports sued a website operator for allegedly encouraging third-party users to post the company's protected betting reports on the website.  One of the plaintiffs' claims was for "contributory misappropriation of licensable commercial property," premised on the same argument here: that the plaintiffs did not technically seek to treat the platform as the publisher of illegal third party content, but rather as a facilitator of such content.  The district court correctly rejected this attempt to avoid Section 230, recognizing that "[s]uch a theory threatens to swallow CDA immunity. As outlined above, SBR generally encouraged users to post on its message board, but it did not tell users 'what kind of information they should or must include' and it did not 'encourage or enhance' any infringing content. [*Fair Housing*], 521 F.3d at 1174. *'Such weak encouragement cannot strip a website of its section 230 immunity, lest that immunity be rendered meaningless as a practical matter*.' *Id.*" *Id.* at 1127-28 (emphasis added). The *Stevo Design* court's analysis applies here: Plaintiffs may try to concoct a theory of liability under the UCL or CLRA's broad sweep that could conceivably support liability solely for Google's

facilitation of allegedly unlawful third-party content.  But just as in *Stevo Design*, Plaintiffs cannot allege anything to satisfy the "material contribution" standard required by *Fair Housing*, and so Section 230 applies.  Nowhere do Plaintiffs allege that Google has ever told video game developers, for instance, what kind of game mechanics "they should or must include" within the games offered on the Google Play platform.  *See id.* at 1127.  Plaintiffs likewise identify no activity by Google specific to Loot Box gaming that encourages Loot Box content.  All the Court is left with are the same two circumstances of, at best, "weak encouragement," which *Fair Housing* makes clear is never enough: (i) the games are available for download on Google Play, and (ii) the in-App purchases of virtual currency (which, once purchased by gamers, *may or may not* be used to acquire Loot Boxes) offered by developers are facilitated through Google's content-neutral payment processing platform.  As a result, despite Plaintiffs' general allegations of "permitting and facilitating illegal gambling" in order to suggest direct liability under Section 330b, the actual mechanisms described for doing so inherently derive from Google's status as a publisher of that content.  Section 230 therefore bars all of Plaintiffs' claims.

### 4. *Plaintiffs cannot fit their claims within any other recognized exceptions to Section 230.*

Plaintiffs' final effort to undermine Google's Section 230 protections appears to involve string-citing a spate of Section 230 cases and hoping that by doing so, the Court may discern some sort of penumbral limitation on Section 230 that might extend over the allegations in their Complaint.  The Court should reject this last gasp tactic, as each of the cases cited is easily distinguishable.  *First*, Plaintiffs do not accuse Google of promising to remove video content from Google Play and then failing to do so; therefore, the promissory estoppel exception to Section 230 described in *Barnes v. Yahoo* does not apply.  (Opp. at 5:23-25.)

*Second*, Plaintiffs do not suggest that Google provided game developers with any specific tools for creating supposedly illegal content.  Instead, the Complaint is clear that the video-game developers alone created the Loot Box gaming mechanisms at the heart of Plaintiffs' case, without any involvement by or support from Google.  (*See* Compl. ¶ 13.)  Plaintiffs' reliance on *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018 (N.D. Cal. 2014), is therefore unavailing, because the plaintiffs in

that case alleged that "Apple's [content-specific] Program tutorials and developer sites [] teach Program registrants how to code and build apps that non-consensually access, manipulate, alter, use and upload the mobile address books maintained on Apple iDevices." *Id.* at 1032.

*Third*, Plaintiffs' claims do not sound in strict product liability, so *Bolger v. Amazon.com, LLC* is inapposite. *See* 53 Cal. App. 5th 431 (2020). Nor do Plaintiffs allege that Google "actively worked to facilitate [illegal gambling] by concealing it from law enforcement through [a underhanded] 'moderation' policy," so the facts of *In re Seizure of Any & All Funds Held in Rep. Bank of Ariz. Accounts* also do not support Plaintiffs' arguments here against applying Section 230. *See* No. 2:18-cv-6742, 2019 U.S. Dist. LEXIS 231307, at *15 (C.D. Cal. Dec. 20, 2019).

Plaintiffs' last resort, then, is to suggest that the Ninth Circuit's decision in *HomeAway.com v. City of Santa Monica* generally denies Section 230 liability to platforms that "facilitate unlicensed . . . transactions." (*See* Opp. at 6:1-3 (citing *HomeAway.com v. City of Santa Monica*, 918 F.3d 676, 684 (9th Cir. 2018).) This is once again incorrect.

Both *HomeAway* and its progeny *Turo Inc. v. City of L.A.*, 2020 U.S. Dist. LEXIS 108884 (C.D. Cal. June 19, 2020), are fundamentally distinguishable because the local ordinances at issue in those cases did not by their plain terms "proscribe, mandate, or even discuss the content of the listings that the Platforms display on their websites." *See HomeAway.com*, 918 F.3d at 683; *accord Turo*, 2020 U.S. Dist. LEXIS 108884 at *20. Instead, the laws required the platforms to monitor a single activity: "*incoming requests* to complete a booking transaction—content that, while *resulting from* the third-party listings, is distinct, internal, and nonpublic." *See HomeAway.com*, 918 F.3d at 682 (second emphasis in original). This meant that HomeAway could likewise comply with the ordinance by simply *refusing to process transactions* for short-term housing within the city limits of Santa Monica. *See id.* Turo could similarly avoid liability by *declining customers' attempts to book peer-to-peer car rental* for pickup at Los Angeles International Airport. *See Turo*, 2020 U.S. Dist. LEXIS 108884 at *20. In both cases, the laws at issue did not directly require the platform providers to display or remove *any third party content* from their websites; instead, they simply prohibited the platforms from processing all of a certain type of transaction meeting certain objective criteria. Both the Ninth Circuit panel and the district court correctly reasoned that this latter class of activity did

not implicate any public-facing content but instead involved entirely "internal" matters.  *See HomeAway.com*, 918 F.3d at 682; *Turo*, 2020 U.S. Dist. LEXIS 108884 at *20.

        Plaintiffs' "transaction facilitation" allegations against Google, by contrast, fall far outside the narrow Section 230 exception described in *HomeAway* and *Turo*.  For one, the only transactions identified in the Complaint involving Google are the purchase of *virtual currency*, which is not even the activity that Plaintiffs can claim is covered by California's illegal slot machine law.  Virtual currency can be used for multiple purposes within any particular video game; Loot Boxes are by no means the only option.  (*See, e.g.*, Compl. ¶¶ 18, 59.)  Thus, were Google required simply to decline all transactions for virtual currency, such a measure would eliminate untold amounts of video gameplay that are not the subject of Plaintiffs' illegal gambling theory.  Instead, it appears that Plaintiffs would have Google allow the virtual currency transaction to close, and then either monitor in real time every player's subsequent in-game activity, or retroactively trace every user's use of that virtual currency within the game, to determine whether the user intended to or did use some of her currency to acquire a Loot Box, as opposed to another in-App purchase item.  The only other alternative would be to require Google to review the content of every game on the Google Platform and then outlaw those deemed to include "illegal" Loot Boxes.  Such a structure would fundamentally alter Google Play (for the worse), and in the process transform Google from a neutral platform to an active content regulator.  This unwieldy system for regulating video game content and tracking users' in-game behavior is precisely the sort of scenario which would "necessarily require an internet company to monitor third-party content," and therefore contradicts Section 230's protections.  *See HomeAway*, 918 F.3d at 682.

        To the extent Plaintiffs would argue that Google should simply prohibit *all* video games containing Loot Boxes from the Google Play platform, this is again an explicit content restriction placed on a platform provider, and thus squarely protected under Section 230.  But even this extreme measure would be over-inclusive, since the Complaint concedes that players can acquire virtual currency for free during normal gameplay and use that virtual currency to acquire Loot Boxes.  Plaintiffs do not appear to challenge that activity as a violation of Section 330b, but instead limit their proposed class to persons who "*paid* to receive randomized virtual items from a purchase . . .

within an App downloaded from the Google Play store." (Compl. ¶ 102.) Because Plaintiffs' theory of facilitating transactions under Section 330b would inherently require Google to police and/or remove third-party content made available through its Google Play platform, *HomeAway* and *Turo* do not apply and the Court should dismiss the Complaint in its entirety on Section 230 grounds.

Finally, it bears note that *HomeAway* and *Turo* involved a local ordinance that specifically targeted the online platforms at issue and created specific duties through deliberate legislative efforts. *See HomeAway*, 918 F.3d at 680; *accord Turo*, 2020 U.S. Dist. LEXIS 108884 at *5 (noting that regulations at issue applied directly to "peer-to-peer car rental businesses and car sharing businesses"). The *HomeAway* panel recognized that these circumstances called for it to balance Congress's intent in passing Section 230 with "allowing state and local governments breathing room to address the pressing issues faced by their communities." *HomeAway*, 918 F.3d at 684. Here, by contrast, no such specific legislative duty has been imposed on Google; indeed, Plaintiff's Opposition concedes that the California legislature is currently contemplating proposed *future* Loot Box regulations (Opp. at 3:3-4), thus underscoring the absence of any *existing* state legislation on point. Section 230 therefore applies.

### B. Video Game Developers' Loot Boxes Do Not Violate Section 330b

Plaintiffs' primary allegation that Loot Boxes violate Section 330b also fails. Section 330b requires that the device at issue provide the opportunity to receive, in relevant part, "any piece of money, credit, allowance, or thing of value, or additional chance or right to use the slot machine or device . . . ." Cal. Pen. Code § 330b(d). Plaintiffs ask the Court to interpret "thing of value" to include any award that provides nothing more than subjective "amusement" value. (Opp. at 14:22-23.) But Plaintiffs offer no legal authority for this proposition, and instead rely on a case involving the distinct scenario of awards that provide "additional chances or rights," or "free plays." (Opp. at 14:23-25 (citing *Merandette v. City & Cty. of S.F.*, 88 Cal. App. 3d 105, 114 (1979).) The Ninth Circuit's analysis in *Kater*, on which Plaintiffs strongly rely, makes clear that it is another easily-distinguishable "free plays" case (arising under a different state's law). *See Kater v. Churchill Downs Inc.*, 886 F.3d 784, 787 (9th Cir. 2018) (finding that virtual currency awards in online casino games "extend[ed] the privilege of playing" the casino). Plaintiffs do not allege that Loot Boxes in

any of the games at issue dispense free plays (the games are free in the first place), but instead yield *game characters* that players can use to enhance their enjoyment of these skill-based games.  (*See* Compl. ¶¶ 67, 73.)

In fact, the one court that *has* actually decided the issue held that Loot Box "amusement" awards do not qualify as "thing[s] of value" under Section 330b.  *Soto v. Sky Union, LLC*, 159 F. Supp. 3d 871, 880 (N.D. Ill. 2016).  The Court should likewise reject this proposed interpretation for at least three reasons.  First, Plaintiffs malign the *Soto* court as generally "ill-informed" (Opp. at 13:13) for inferring some concept of "measurability" in the statutory term "thing of value." (Opp. at 18:8-9.)  But such an interpretation is the natural consequence of applying the interpretive principle of *ejusdem generis*: where "a more general term follows more specific terms in a list, the general term is usually understood to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  *Rizo v. Yovino*, 950 F.3d 1217, 1225 (9th Cir. 2020).  Here, a "thing of value" is defined as "any money, coin, currency, check, chip, allowance, token, credit, merchandise, property, or any representative of value."  Cal. Pen. Code § 330.2.  Each specific term describes items which both have objectively ascertainable value and generally allow for exchange for other items.  Given this specific list, the final general term "any representative of value" is not intended to include Loot Box items that provide only "entertainment, hedonic and social value" (Opp. at 17:7), and that cannot be sold or transferred within the game or by Google, the supposed "casino" in Plaintiffs' now-dismantled analogy.  (*See* Compl. ¶ 6.)

Second, Plaintiffs' proposed interpretation violates the so-called "surplusage canon," which California courts have applied to Section 330b.  *See Merandette*, 88 Cal. App. 3d at 113.  Plaintiffs' interpretation has no limiting principle: if "thing of value" under Section 330b includes an award providing *someone, somewhere*, a feeling of subjective amusement, then literally anything imaginable can satisfy the statutory definition.  The result here would be to read the "awards" requirement in Section 330b out of the statute entirely, violating the rule that "a statute ought . . . to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."  *See Duncan v. Walker*, 533 U.S. 167, 174 (2001).

Third, Plaintiffs' subjective amusement theory inherently contradicts their reference to *current* legislative efforts in California to "prohibit games such as Loot Boxes." (Opp. at 3:4-5.) Under Plaintiffs' theory, every video game containing a Loot Box mechanism *already* violates California law based on facts that are not meaningfully in dispute. But if this were correct, why would the California legislature seek to "prohibit" that which is already proscribed by existing criminal law? Plaintiffs do not attempt to answer this question, nor do they acknowledge that the opposite inference applies. *See, e.g.*, *Blum v. Caldwell*, 446 U.S. 1311, 1317 (1980) (crediting state appellate court's rejection of alleged Medicaid rules interpretation because "Congress is considering legislation [for the rule], which suggests that such a rule is not presently allowed"); *Newmont Mining Corp. v. Pickens*, 831 F.2d 1448, 1453 (9th Cir. 1987) (supporting interpretation of current financial regulations on the basis that "Congress is considering whether to amend the statute to require firm financing before the tender offer may go forward" and noting that "[i]mplicit in the very fact of the Congressional and administrative debate is the assumption that if firm financing is to be a prerequisite to tender offers, either a legislative or administrative policy decision is required[, and t]hus, judicial interpretation alone will not suffice").

### C. Plaintiffs Lack Standing Under the UCL and Their Two Remaining Claims Are Fundamentally Deficient

Plaintiffs do not dispute that in their only transactions involving Google—for virtual currency—they received the amount promised, and thus the "benefit of their bargain." Plaintiffs claim this fact is irrelevant to alleging an economic loss (Opp. at 10:1), but rely on a case that makes clear such logic applies *only to consumer claims asserting material fraud or misrepresentation*. *See Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 731 (2018). Plaintiffs are adamant that their UCL claims are "not grounded in fraud," and so do not allege any misrepresentations or actionable omissions by Google. (Opp. at 12:4.) The "benefit of the bargain" defense therefore *does apply*. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("The 'benefit of the bargain' defense is permissible only if the misrepresentation that the consumer alleges was not 'material.'"). Plaintiffs therefore have no economic loss attributable to any Google conduct, and therefore no UCL standing and no basis for unjust enrichment.

Finally, Plaintiffs' CLRA claim fails outright, because they concede that it is premised on Google failing to disclose that Loot Box mechanisms constitute illegal gambling.  (Opp. at 24:8-10.)  But Plaintiffs simply beg the question: there has never been any U.S. regulatory, judicial, or legislative determination—*ever*—to provide the necessary predicate for Plaintiff's theory of illegality.  Plaintiffs' own cited case law makes clear that that an affirmative "oblig[ation] to disclose" is a prerequisite for omission liability.  (*See* Opp. at 24:10-12 (citing *Daugherty v. Am. Honda Motor Co. Inc.*, 144 Cal. App. 4th 824, 835 (2006)).)  Plaintiffs identify no such duty that would require Google to make such a nonsensical disclosure.

The Opposition also does not distinguish the holding in *I.B. v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012), that virtual currency is neither a good nor a service under the CLRA.  The complaint at issue in *I.B.* alleged liability under both the goods and services prongs of the CLRA.  (ECF No. 18 (Second Amended Complaint), No. 5:12-cv-01894-BLF ¶¶ 76, 77 (May 31, 2012).)  The plaintiff further claimed that Facebook violated the same "prohibited by law" CLRA subsection by failing to disclose certain information.  (*Id.* ¶ 78 (citing section 1770(a)(14)), ¶ 80.)  Facebook asked the Court to conclude that the virtual currency at issue was *neither* a good *nor* a service.  *See I.B.*, 905 F. Supp. 2d 989 at 1007.  The court specifically found that this virtual currency was "not covered by the CLRA" and dismissed this claim without leave to amend.  *Id.* at 1008.  The same result should follow here.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant the Motion without leave to amend.

Dated:  October 7, 2020                                  Respectfully submitted,

                                      **BAKER & McKENZIE LLP**
                                      Teresa H. Michaud
                                      Bradford K. Newman
                                      Alexander G. Davis
                                      Anne K. Assayag
                                      Kirby Hsu

                                      By:  /s/ Teresa H. Michaud
                                      Teresa H. Michaud
                                      Attorneys for Defendant
                                      GOOGLE LLC