1  Bradford K. Newman (State Bar No. 178902)
      bradford.newman@bakermckenzie.com
2  Alexander G. Davis (State Bar No. 287840)
      alexander.davis@bakermckenzie.com
3  Anne Kelts Assayag (State Bar No. 298710)
      anne.assayag@bakermckenzie.com
4  **BAKER & McKENZIE LLP**
   600 Hansen Way
5  Palo Alto, CA 94304
   Telephone: +1 650 856 2400
6  Facsimile:  +1 650 856 9299

7  Teresa H. Michaud (State Bar No. 296329)
      teresa.michaud@bakermckenzie.com
8  **BAKER & McKENZIE LLP**
   10250 Constellation Blvd., Suite 1850
9  Los Angeles, CA 90067
   Telephone: +1 310 201 4728
10 Facsimile:  +1 310 201 4721

11 Attorneys for Defendant
   GOOGLE LLC

12

13                       UNITED STATES DISTRICT COURT

14                      NORTHERN DISTRICT OF CALIFORNIA

15 | JOHN COFFEE, MEI-LING MONTANEZ, | Case No.  5:20-cv-03901-BLF
   | and S.M., a minor by MEI-LING
16 | MONTANEZ, S.M.'s parent and guardian, on | Date Action Filed: June 12, 2020
   | behalf of themselves and all others similarly
17 | situated, | **DEFENDANT GOOGLE LLC'S REPLY
   |  | IN SUPPORT OF MOTION TO
18 |            Plaintiffs, | **DISMISS PLAINTIFFS' FIRST
   |  | AMENDED COMPLAINT**
19 |      v. |
   |  | Date:   **October 19, 2021**
20 | GOOGLE LLC, | Time:   **1:30 p.m.**
   |  | Ctrm.:  **3 - 5th Floor**
21 |            Defendant. | Judge:  **Hon. Beth Labson Freeman**

22                                              **Robert F. Peckham Federal Building &
                                                United States Courthouse**
23                                              **280 South 1st Street**
                                                **San Jose, CA 95113**
24

25

26

27

28

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA  90067
Tel: 310.201.4728

Case No.  5:20-cv-03901-BLF
DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................................. 1

II. OBJECTIONS TO PLAINTIFFS' EXTRINSIC EVIDENCE ................................................ 3

III. ARGUMENT .......................................................................................................................... 3

    A. Plaintiffs Have Alleged No New Facts To Avoid Dismissal Under Section 230 ......... 3

        1. *Processing virtual currency transactions does not waive Section 230 protections* ........................................................................................................ 4

        2. *Plaintiffs concede that Google's conduct is limited to offering content-neutral tools* ................................................................................................................. 6

        3. *Plaintiffs' remaining arguments to avoid Section 230 are without merit* ......... 7

    B. Plaintiffs Offer No Basis for Reconsideration on UCL and CLRA Standing ............. 7

    C. Loot Boxes in Skill-Based Video Games Are Not Illegal Slot Machines ................... 9

    D. Plaintiffs Fail To Allege That Google's Business Practices Are "Unfair" ................ 12

        1. *Plaintiffs fail the Balancing Test* ..................................................................... 12

        2. *Plaintiffs fail the Tethering Test* ..................................................................... 13

        3. *Plaintiffs fail the FTC Act Test* ....................................................................... 14

    E. Plaintiffs Still Cannot Save Their CLRA or Unjust Enrichment Claims ................... 15

IV. CONCLUSION ..................................................................................................................... 15

i    Case No. 5:20-cv-03901-BLF
DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA 90067
Tel: 310.201.4728

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ...............................................................................................................12

*Celebrity Chefs Tour, Ltd. Liab. Co. v. Macy's, Inc.*,
   16 F. Supp. 3d 1141 (S.D. Cal. 2014) .......................................................................................12

*Connor v. Quora, Inc.*,
   No. 18-cv-07597-BLF, 2021 U.S. Dist. LEXIS 6908 (N.D. Cal. Jan. 13, 2021) ........................8

*Doe v. Epic Games, Inc.*,
   435 F. Supp. 3d 1024 (N.D. Cal. 2020) ....................................................................................15

*Drum v. San Fernando Valley Bar Ass'n*,
   182 Cal. App. 4th 247 (2010) ..............................................................................................13, 14

*FTC v. R.F. Keppel & Bros., Inc.*,
   291 U.S. 304 (1934) ..................................................................................................................15

*Gonzalez v. Google LLC*,
   2 F.4th 871 (9th Cir. 2021) ..............................................................................................4, 5, 6, 7

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ...............................................................................12, 14

*HomeAway.com v. City of Santa Monica*,
   918 F.3d 676 (9th Cir. 2018) ......................................................................................................6

*I.B. ex rel. Fife v. Facebook, Inc.*,
   905 F. Supp. 2d 989 (N.D. Cal. 2012) ......................................................................................15

*Jurin v. Google, Inc.*,
   695 F. Supp. 2d 1117 (E.D. Cal. 2010) ......................................................................................5

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ................................................................................................................9

*Mai v. Supercell Oy*,
   No. 5:20-cv-05573-EJD, 2021 U.S. Dist. LEXIS 178949
   (N.D. Cal. Sep. 20, 2021) ............................................................................................2, 3, 9, 12

*Philips v. Double Down Interactive LLC*,
   173 F. Supp. 3d 731 (N.D. Ill. 2016) ........................................................................................14

*Ristic v. Mach. Zone, Inc.*,
   No. 15-cv-8996, 2016 U.S. Dist. LEXIS 127056 (N.D. Ill. Sep. 19, 2016) ................................14

*Streets v. Space Sys./Loral, LLC*,
   No. 20-cv-07901-EJD, 2021 U.S. Dist. LEXIS 173535
   (N.D. Cal. Sep. 13, 2021)..............................................................................................................3

*Turo Inc. v. City of L.A.*,
   No. 2:18-CV-06055-CAS-GJSx, 2020 U.S. Dist. LEXIS 108884
   (C.D. Cal. June 19, 2020) .............................................................................................................6

*U.S. v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ........................................................................................................3

**Statutes**

Cal. Pen. Code § 330a(a) ..................................................................................................................10

Cal. Pen. Code § 330b(d)..................................................................................................................10

Cal. Pen. Code § 330b(f)...................................................................................................................11

Cal. Pen. Code § 330.1(a) .................................................................................................................10

Cal. Pen. Code § 330.2......................................................................................................................11

Cal. Pen. Code § 337j(e)(1) ..............................................................................................................10

Cal. Consumers Legal Remedies Act .................................................................................................2

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................................3

Federal Trade Commission Act ................................................................................................ *passim*

## I. INTRODUCTION

Plaintiffs' Opposition amounts to a request for reconsideration of the Court's prior rulings on Section 230 and statutory standing. But the Opposition fails to identify any new allegations in the First Amended Complaint ("FAC") that would warrant a different conclusion. The Court directed Plaintiffs to allege facts that would supposedly show *Google's* involvement in creating or promoting loot boxes in two skill-based video games. What the Court received were more citations to academic studies about *developers'* choices in creating video game content, more references to entirely content-neutral resources for creating third-party apps, and more legal conclusions about how these circumstances somehow show Google's "central role" in alleged illegal activity. None of those additional allegations changes the core facts alleged and upon which the Court based its February 2021 Dismissal Order (ECF No. 56): (1) Google operates an interactive computer service called the Google Play store; (2) it provides all third parties with the same content-neutral tools to develop and launch content on Google Play; (3) the only alleged transaction with which Google had any involvement was Plaintiffs' purchase of virtual currency; (4) Plaintiffs received exactly as much virtual currency as was promised; (5) Google did not create the video games at issue or the loot box mechanisms in those games; (6) Google had no awareness of or involvement in Plaintiffs' decision to spend virtual currency on loot boxes created and promoted by game developers versus other in-app purchase opportunities; (7) Plaintiffs seek to hold Google liable for allowing third-party apps with loot box elements to be available for download on Google Play. Because nothing has materially changed from Plaintiffs' original complaint, the Court should once again grant the motion to dismiss, and now with prejudice.

Plaintiffs devote only two pages of their Opposition to Section 230 issues. Rather than emphasize any new facts, they misstate the holding of a recent Ninth Circuit case involving the federal Anti-Terrorism Act to argue that any time an interactive computer service "shares revenue," it automatically loses Section 230 protections. Plaintiffs are incorrect. The question is not whether an internet platform shares revenues, but whether the provision of such payments is itself illegal under state or federal law. In this case, Plaintiffs identify no law that proscribes sales of virtual currency, because no such law exists. The result is that the Court may simply reaffirm its prior holding that Section 230 bars all of Plaintiffs' claims and dismiss this case once and for all.

1   Case No. 5:20-cv-03901-BLF
DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA 90067
Tel: 310.201.4728

As for standing under California's Unfair Competition Law and Consumers Legal Remedies Act, Plaintiffs' primary argument is that the Court's Dismissal Order was "incorrectly decided." It is probably no surprise, then, that Plaintiffs still identify no economic loss involving Google. Their demand that the Court consider causation and economic loss elements fulfilled by a purported "predatory monetization scheme" entirely fails because it attempts to implicate Google only through legal conclusions and mere labels, not any new facts. Google does not create loot boxes; Google does not promote loot boxes; Google does not give developers any content-specific tools for creating loot boxes. Moreover, just last week, Judge Davila joined three other courts in finding that consumers lack economic standing to assert loot box-related UCL claims against game *developers*. If the acquisition of a loot box using virtual currency "is not an economic injury within the meaning of the UCL," then *a fortiori* the antecedent purchase of virtual currency does not suffice either. *See Mai v. Supercell Oy*, No. 5:20-cv-05573-EJD, 2021 U.S. Dist. LEXIS 178949, at *7 (N.D. Cal. Sep. 20, 2021).

Plaintiffs' arguments that loot boxes constitute illegal gambling or unfair business practices remain untenable. Plaintiffs' illegal gambling theory necessarily requires interpreting the phrase "thing of value" in multiple California Penal Code provisions to include literally anything at all. The Opposition refuses even to address Google's statutory interpretation arguments demonstrating the folly of this position. Plaintiffs instead rely on a single word -- "otherwise" -- in a law enforcement advisory that expressly states it does not constitute legal advice. All five courts to have considered the issue have rejected Plaintiffs' interpretation. Plaintiffs' persistent references to academic studies, an incipient U.S. legislative debate, and certain legal proceedings in Europe do not provide a persuasive basis for this Court to be the first to declare an entire class of video game activity to be criminally unlawful as a matter of existing California law. Because Plaintiffs' theory of *unfair* business practices entirely overlaps with their defective theory of *unlawful* practices, and because Plaintiffs cannot allege any competent facts that would demonstrate Google's involvement in creating or promoting loot boxes in the first place, the Court may dismiss Plaintiffs' UCL and CLRA claims.

Finally, Plaintiffs have not alleged a plausible claim for unjust enrichment. Google processed Plaintiffs' requests to purchase a set amount of developers' virtual currency for a set amount of money. Google processed the transaction as requested and retained its disclosed commission for such services.

Virtual currency purchases are not illegal or otherwise "unjust." Because Plaintiffs received exactly what they paid for, they have no basis to demand restitution from Google.

The Court should dismiss the First Amended Complaint without leave to amend.

## II. OBJECTIONS TO PLAINTIFFS' EXTRINSIC EVIDENCE

The Court should disregard Exhibit 2 and paragraphs 4 through 7 of the Declaration of Andrew Brown submitted in connection with Plaintiffs' Opposition. (*See* ECF Nos. 71-1, 71-3.) Matters outside the pleadings are improper on a Rule 12(b)(6) motion. *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Plaintiffs did not—and could not—ask the Court to take judicial notice of the declaration because it is being offered for the truth of the matter asserted. *See Streets v. Space Sys./Loral, LLC*, No. 20-cv-07901-EJD, 2021 U.S. Dist. LEXIS 173535, at *8 (N.D. Cal. Sep. 13, 2021) (courts will not "credit the truth of any . . . matter asserted" in a request for judicial notice).

The proffer is also irrelevant on this motion to dismiss. As the Court previously found, the only video games at issue are those allegedly played by the named Plaintiffs: Final Fantasy Brave Exvius and Dragon Ball Z Dokkan Battle. (Dismissal Order at 2:12-16.) The Brown Declaration, on the other hand, describes two different games: Brawl Stars and FIFA Soccer. (*See* ECF No. 71-1 ¶¶ 4-7.) Neither Plaintiff alleges purchasing virtual currency or acquiring loot boxes in Brawl Stars or FIFA Soccer. *Accord Mai*, 2021 U.S. Dist. LEXIS 178949, at *6-7 (disregarding plaintiff's allegations about Brawl Stars because complaint "contain[ed] no allegations about [plaintiff's] experience with Brawl Stars and its loot boxes"). The Court already barred Plaintiffs from adding new plaintiffs to their complaint. (Dismissal Order at 5 n.1.) Plaintiffs' counsel improperly attempts to offer "expert testimony" when he is not qualified to do so and his lay opinion lacks foundation. Even if Plaintiffs *could* amend the complaint again to incorporate counsel's inadmissible opinion testimony, any such amendment would be futile as their claims would still fail as a matter of law because they are barred by Section 230 and fail to allege a violation of the California Penal Code. (*See infra* §§ III.A; III.C.)

## III. ARGUMENT

### A. Plaintiffs Have Alleged No New Facts To Avoid Dismissal Under Section 230

The Court previously held that Section 230 barred all of Plaintiffs' claims. (Dismissal Order at 14:2-3.) Google's opening brief laid out in detail the reasons why Plaintiffs' amended pleading

contains no new allegations that would warrant a different result. (ECF No. 66, at 10:5-17:24.) Plaintiffs ask the Court to reverse its prior ruling not because of any new relevant fact allegations (because there are none), but because matters alleged in their initial pleading should supposedly have new significance based on a recent Ninth Circuit ruling. Plaintiffs' case is readily distinguishable and does not undermine the wealth of authorities the Court relied upon in its Dismissal Order.

        **1.**    *Processing virtual currency transactions does not waive Section 230 protections*

Plaintiffs reiterate their allegation that Google collects a 30% commission on the sale of virtual currency and note that players sometimes choose to spend that virtual currency on loot boxes offered by various third-party game developers. (Opp. at 8:2 (citing FAC ¶ 29).) They then cite the Ninth Circuit's opinion in *Gonzalez v. Google LLC* for the supposed proposition that any time an interactive computer service receives any compensation arising from allegedly unlawful activity, it forfeits any Section 230 protections. *See* 2 F.4th 871 (9th Cir. 2021). This is neither *Gonzalez*'s holding nor the law.

*Gonzalez* addressed claims under the Anti-Terrorism Act ("ATA") that Google, through YouTube, was providing material support to ISIS's terrorist activities by sharing advertising revenue with that organization. The panel agreed with Google that most of the plaintiffs' claims *were* barred by Section 230. *Id.* at 881, 892-93. The court recognized that Google's algorithms, which allegedly recommended ISIS content to users, "do not treat ISIS-created content differently than any other third-party created content, and thus are entitled to § 230 immunity." *Id.* at 894.

The *Gonzalez* court concluded that the plaintiffs' claims for providing material support and substantial assistance to ISIS in violation of the ATA could proceed based on allegations that Google *reviewed and approved* ISIS videos as part of its AdSense program, and then *shared the revenue* from advertisements placed on the videos with ISIS. *Id.* at 881, 898. The *Gonzalez* plaintiffs were able to avoid Section 230 on their ATA claim because they alleged that the revenue sharing payments to ISIS were *expressly unlawful* under that statute. *Id.* at 898-99. The court's decision further hinged on the conclusion that the plaintiffs' revenue-sharing allegations were "not directed to the publication of third-party information" because "Google's alleged violation of the ATA could be remedied without

changing any of the content posted by YouTube's users." *Id.* That is, Google could allow the content to remain on YouTube, but simply not pass on any associated advertising revenues.

These circumstances are in stark contrast to the present case. A conclusory allegation that Google "shares revenue" (FAC ¶ 29) is insufficient to bring this case within *Gonzalez*'s narrow ambit under the ATA or otherwise undermine the Court's prior Section 230 analysis. The Court has already concluded that the only transaction Google is involved in is processing payments for the purchase of virtual currency from third-party game developers. (Dismissal Order at 16:16-18.) Google handles such transactions across all apps (regardless of genre or substance) using a content-neutral payment processing tool, retains a commission, and passes the remaining amounts onto the developer. (*See* FAC ¶ 9.) Plaintiffs' analogy to *Gonzalez* falls apart entirely because Plaintiffs cannot allege that virtual currency sales, or transferring any revenues derived from such sales, are illegal in any way. Instead, their theory is that *loot boxes* are illegal. But critically, when players obtain loot boxes from third-party developers using previously-purchased virtual currency, Google receives no payment or any other benefit, and so does not share any revenues from this purely in-game activity. Instead, players convey virtual currency to the developer and receive a loot box, without any involvement by Google. (*See* Dismissal Order at 18:6-10.) The FAC does not allege otherwise.

Absent any suggestion that Google's processing of virtual currency transactions is *itself* illegal under any state or federal law, the reasoning in *Gonzalez* simply doesn't apply. Instead, the default rule remains that facilitating online transactions and charging for such services does not transform a platform provider into a content developer. *See, e.g.*, *Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1120, 1123 (E.D. Cal. 2010) (finding Google immune under Section 230 notwithstanding allegation that it generated revenue from service provided to facilitate third-party advertisements).

In further contrast to *Gonzalez*, and as Google has previously explained—both on Reply to its first motion to dismiss (ECF No. 42, at 11:3-12:4), and again in the opening brief on this motion (ECF No. 66, at 15:7-16:21)—Google cannot "remedy" the purported illegal conduct alleged by Plaintiffs without altering the content of the third-party games offered on the Google Play store. The FAC still seeks to prohibit Google from facilitating "the sale of in-game currency for loot boxes." (*E.g.*, FAC ¶ 186.) In fact, Plaintiffs take issue with Google accepting commissions on virtual currency sales *only*

*if players then proceed to use that virtual currency—unbeknownst to Google—to acquire a loot box*. Thus, in order to comply with Plaintiffs' demand, Google would have to either (1) monitor every player's in-game activity constantly and continuously to try and prevent players from spending virtual currency on in-game loot box transactions with third-party developers, or (2) review the content of all games offered for download in the Google Play store and remove those that contain anything that could conceivably be considered a "loot box." Option (1) is impossible given that Google simply processes virtual currency payments and has no ability to then monitor what players do with that virtual currency in games exclusively developed by third parties—nor does Google have the ability to actively control third-party game mechanics. Option (2) expressly requires Google to remove content from its platform, thereby distinguishing this case from *Gonzalez* -- and, for that matter, *HomeAway.com v. City of Santa Monica*, 918 F.3d 676, 684 (9th Cir. 2018)) and *Turo Inc. v. City of L.A.*, No. 2:18-CV-06055-CAS-GJSx, 2020 U.S. Dist. LEXIS 108884 (C.D. Cal. June 19, 2020).

As the Court already held, Plaintiffs' claims must still be dismissed under Section 230 because they seek to hold Google liable for the content of third parties. (*See* Dismissal Order at 12:13-15.)

### 2. *Plaintiffs concede that Google's conduct is limited to offering content-neutral tools*

Plaintiffs' only other attempt to avoid dismissal on Section 230 grounds is to ask the Court effectively to repudiate the "neutral tools" doctrine that Ninth Circuit courts have consistently applied for nearly two decades. Plaintiffs suggest that Google "cite[d] no cases" in this regard, but ignore the Court's prior holding that Google's "providing third parties with neutral tools to create web content is considered to be squarely within the protections of § 230," *even if* Google were aware that third parties were "using such tools to create illegal content." (Dismissal Order at 14:8-11 (quoting *Goddard v. Google*, No. C 08-2738 JF (PVT), 2008 WL 5245490, at *3 (N.D. Cal. Dec. 17, 2008)).)

Plaintiffs confirm that they have alleged no *content-specific* tools relating to loot boxes. At best, Plaintiffs plead only that Google provides (1) content-neutral software development kits, (2) a Developer Distribution Agreement, and (3) general advice about monetizing apps, all of which apply *to every third party developer that posts app content to the Google Play store*. (*See* Opp. at 12-13 (citing FAC ¶¶ 32, 213); *see also* FAC ¶ 30 (alleging that Google generally "helps game developers

create loot boxes and *other in-game purchases that maximize revenue*") (emphasis added).) Similarly, Plaintiffs yesterday directed the Court's attention to a footnote in the statement of decision for an antitrust lawsuit involving Apple Inc. that makes no reference at all to loot boxes. (*See* ECF No. 72.) Both references reveal Plaintiffs' attempt to impose liability on Google for *specific* third-party content—loot boxes—developed from *general* tools and concepts for in-app purchases. This is precisely why the Court has already held that Section 230 applies. (Dismissal Order at 14:8-11.)

### 3. *Plaintiffs' remaining arguments to avoid Section 230 are without merit*

Plaintiffs make no meaningful effort to distinguish *Evans v. Hewlett-Packard Co.*, even though the Court relied on *Evans* in its original Dismissal Order and Judge Alsup's reasoning neatly addresses why all of Plaintiffs' new, largely conclusory pleadings do not alter the Court's prior finding on Section 230. *See* 2013 U.S. Dist. LEXIS 146989 (N.D. Cal. Oct. 10, 2013). The Opposition's suggestion that *Evans* was somehow "overturned" by *Gonzalez* is wrong. (Opp. at 9:12-15.) As explained above, the *Gonzalez* court reached no overarching conclusion about internet platforms losing Section 230 protections merely because they generate revenues in connection with third-party content. The Court can and should continue to rely on *Evans* in resolving this motion.

Finally, it bears mention that the Court provided Plaintiffs leave to amend in part because they claimed that the Ninth Circuit's decision in *HomeAway* supported their position on Section 230, but they "devot[ed] only a single sentence" to that opinion in their first opposition brief. (Dismissal Order at 14:20-25.) Despite Google discussing *HomeAway* at length in its first Reply (ECF No. 42, at 10:10-12:15), and again in its Motion here (ECF No. 66, at 15:26-16:21), Plaintiffs now muster only *two* sentences, neither of which addresses the reasons why *HomeAway* is fundamentally distinguishable.

## B.     Plaintiffs Offer No Basis for Reconsideration on UCL and CLRA Standing

Plaintiffs concede that their arguments on UCL and CLRA standing amount to a request for reconsideration of the Court's prior holding, which they contend was "incorrectly decided." (Opp. at 9:23-24.) The Court should decline the invitation. Plaintiffs have not followed the applicable procedures for seeking reconsideration, and allege no new facts to alter the standing analysis anyway.

The Court's Dismissal Order relied on very straightforward reasoning in finding that Plaintiffs lacked statutory standing: (1) the only alleged transaction involving Google was Plaintiffs' purchase

of virtual currency from game developers using Google's payment processing tool; (2) Plaintiffs do not allege that these purchases were unlawful, fraudulent, or incomplete; (3) Plaintiffs therefore received the benefit of their bargain and have no economic loss; and (4) any allegations about subsequent transactions with the developers to trade virtual currency for loot boxes are not attributable to Google and therefore fail for lack of causation. (Dismissal Order at 16:11-18:18.)

N.D. Cal. Civ. L.R. 7-9(a) required Plaintiffs to formally move to reconsider the Dismissal Order based upon a showing of (1) facts or laws that were not known to them despite reasonable diligence and not presented to the Court before it issued the Dismissal Order; (2) new material facts or law arising after the Dismissal Order; or (3) the Court's "manifest failure" to consider Plaintiffs' prior arguments. *See Connor v. Quora, Inc.*, No. 18-cv-07597-BLF, 2021 U.S. Dist. LEXIS 6908, at *3 (N.D. Cal. Jan. 13, 2021). Plaintiffs do not even suggest that any of these circumstances apply.

Furthermore, even if Plaintiffs' request for reconsideration were procedurally proper (it is not), it relies only on legal conclusions, generic legal citations, and reliance on "academic studies." Plaintiffs aver that Google supposedly played such an "integral part" in a "predatory monetization scheme" that all developer conduct should be imputed to Google. (Opp. at 11:26-27.) As Google already established in its opening motion, Plaintiffs offered no actual *facts* to support this claim; they have alleged only that Google operates an app platform and provides content-neutral tools to developers who wish to create and post content on that platform. As a result, Plaintiffs simply recycle the same conclusory accusations and essentially ask the Court to ignore the causation element of standing entirely by making a blanket finding that all third-party developer conduct must be imputed to Google. (*See e.g.*, Opp. at 12:16-21 (citing FAC ¶¶ 1, 9, 27, 88).)

Plaintiffs' allegation that Google suggests developers include *virtual currency* in their games (FAC ¶ 213) does not identify anything illegal, and again fails to plead a causal link to the *loot box* transactions for which Plaintiffs claim economic loss. By Plaintiffs' own admission, the fact remains that Google does not create loot boxes or the video games in which they appear (FAC ¶ 9), nor does Google encourage developers to create loot boxes. Plaintiffs further identify no facts that Google is even aware of what players do in-game with purchased virtual currency, much less that Google takes any action that would cause a player to use virtual currency for a loot box created by third-party

developers, as opposed to any other in-game item on offer. This failure to establish causation is fatal to both the UCL and the CLRA causes of action. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011) (finding that causation under the UCL and CLRA requires a plaintiff to allege that the violation caused or resulted in damages).

Plaintiffs next demand that the Court ignore the economic aspects of the standing requirement. Specifically, Plaintiffs argue they suffered harm in purchasing virtual currency because *academic studies* have suggested that such purchases are "designed to reduce the salience of the fiat currency cost of loot box purchases . . ." (Opp. at 12:4-5.) This is simply a new conclusory gloss on allegations previously considered by the Court in finding that purchasing a set amount of virtual currency for a set amount of money does not result in an economic injury under the UCL.[1] Plaintiffs further assert that the Court erred in finding that they received the benefit of their bargain in purchasing virtual currency, but offer no support for this conclusion in the FAC. (Opp. at 13:1-19.) Plaintiffs claim they "spen[t] money on an illegal activity," but this argument is just another attempt by Plaintiffs to elide two transactions that the Court has already determined are distinct. (*See* Dismissal Order at 16:16-19.) Selling virtual currency—the only transaction alleged to have involved Google—is not illegal, and Plaintiffs do not contend otherwise.

Finally, as much as Plaintiffs charge this Court, Judge Seeborg, and Judge Bredar in Maryland with not understanding standing under the UCL and CLRA, just last week, yet another federal court reasoned that purchasing "in-game currency used for loot boxes is not an economic injury within the meaning of the UCL." *Mai v. Supercell Oy*, No. 5:20-cv-05573-EJD, 2021 U.S. Dist. LEXIS 178949, at *7 (N.D. Cal. Sep. 20, 2021). Judge Davila's ruling dismissing a lawsuit filed by Plaintiffs' same counsel against a video game developer adds to the unanimous consensus that simply purchasing virtual currency is not illegal, nor does its purchase on set terms give rise to an economic injury sufficient to confer standing for Plaintiffs' claims in this case.

### C. Loot Boxes in Skill-Based Video Games Are Not Illegal Slot Machines

The Court once again may dismiss Plaintiffs' pleading without having to confront the question

---

[1] The Court should ignore Plaintiffs' new argument on Opposition that Google "directly sells loot boxes" (Opp. at 12:22-23) for the reasons set forth in Section II, *supra*.

of whether loot boxes in the skill-based video games here violate California criminal laws prohibiting unlicensed slot machines. Nevertheless, Plaintiffs' Opposition confirms why this activity falls outside the applicable statutory definition.

As Google explained in its opening brief, and as every Court to consider the issue has found, items dispensed by the loot boxes at issue are not "things of value" under the California Penal Code. They instead are virtual items that have no real-world economic value, cannot be traded or sold to third parties, and may be used only to enhance a player's enjoyment of skill-based video games.

Plaintiffs steadfastly refuse to confront Google's arguments explaining that the expansion of the definition of "thing of value" to include anything that Plaintiffs claim might confer mere entertainment value (*e.g.*, symbolic, aesthetic, cosmetic, hedonic value) violates basic tenets of statutory interpretation, including the doctrine of *ejusdem generis*, the surplusage canon, and the permissive inference that the existence of a legislative proposal to prohibit or regulate loot boxes demonstrates that they are not currently illegal under existing law. (*See* ECF No. 66, at 21:23-22:23.) Instead, relying on absolutely no legal authority, they suggest that the Court is without the power to decide this basic statutory interpretation question at the motion to dismiss stage because the matter has supposedly become a "question of fact" in light of the social science research papers cited in their amended pleading. (Opp. at 20:14-18.) Plaintiffs are of course mistaken: if the Court so chooses, it may interpret the meaning of "thing of value" under California Penal Code sections 330a(a), 330b(d), 330.1(a), and 337j(e)(1).

Besides relying on the very academic studies that the Court previously cautioned have little bearing on determining the meaning of a criminal law, Plaintiffs ask the Court to ascribe primary significance to the word "otherwise" appearing in a Law Enforcement Advisory from the California Bureau of Gambling Control. (*See* ECF No. 77-2, Brown Decl., Ex. A at p.2 (opining that the phrase "something of value" means "anything else with a value, monetary or otherwise").) This document does not qualify as statutory interpretation of the California Penal Code. To the contrary, the advisory expressly states that it is merely "informational" and cautions that it "does not constitute legal advice." (*Id.*) The document makes no mention of online video games, much less loot box mechanisms, but instead contemplates physical devices like "coin pushers, electronic trivia games . . . , claw machines,

traditional slot machines, and slot machines that purport to have a skill element." (*Id.*) More fundamentally, however, Plaintiffs appear to rely on the word "otherwise" to support a patently unreasonable statutory interpretation: that literally anything can constitute a "thing of value" so long as that thing is alleged to have some sort of personal, subjective symbolic or entertainment value to the recipient. As Google has previously noted, this interpretation has no limiting principle, and so reads a necessary requirement altogether out of a *criminal* statute. (*See* ECF No. 66, at 22:7-14.)

Plaintiffs' references to cases examining federal bribery and embezzlement statutes (Opp. at 20:5-13) are entirely irrelevant: those statutes do not include the particular definition for "thing of value" set forth in the California Penal Code demonstrating that the phrase is limited to items with *real-world transferable value*. *See* Cal. Pen. Code § 330.2 ("A 'thing of value' is defined to be any money, coin, currency, check, chip, allowance, token, credit, merchandise, property, or any representative of value.").

Plaintiffs' persistent reliance on supposed "gray markets" to demonstrate real-world value is misplaced for multiple reasons. First, despite Plaintiffs' attempts to distinguish the Ninth Circuit's holding in *Kater v. Churchill Downs Inc.*, that court found that in considering whether a virtual item has value under a state gambling law, it would not rely on any potential monetary value arising from illegal or prohibited sales channels. *See* 886 F.3d 784, 788 n.2 (9th Cir. 2018). Moreover, Plaintiffs nowhere allege that the *two games actually at issue*—Final Fantasy Brave Exvius and Dragon Ball Z Dokkan Battle—allow any transfer or sales of loot box items. Plaintiffs also never allege that they personally ever sold loot box items and received any money or real world items in exchange. Instead, Plaintiffs make clear that their theory of "value" is one of deriving mere entertainment value from receiving virtual loot box items used in-game. (*See* FAC ¶ 1.)

Finally, Plaintiffs go to lengths to explain why the "games of skill" exception in California Penal Code section 330b(f) does not apply to the two videogames at issue, despite their allegations that both games are inherently skill-based role-playing games and that the loot boxes dispense items solely for use in progressing through that skill-based gameplay. (FAC ¶¶ 70-71, 77.) While Google largely stands on the arguments set forth in its opening motion (ECF No. 66, at 22:26-23:13), it notes that Judge Davila's September 20, 2021 order succinctly explains the flaws in Plaintiffs' legal and

11

Case No. 5:20-cv-03901-BLF
DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

factual arguments in the course of applying the games of skill exception to reject the argument—made by these Plaintiffs' same counsel—that loot boxes violate the California Penal Code. *See*, 2021 U.S. Dist. LEXIS 178949, at *8-12. The same result should apply here.

### D. Plaintiffs Fail To Allege That Google's Business Practices Are "Unfair"

Plaintiffs do not dispute that their unfairness theory is based on the same core factual allegations as their unlawfulness claim. In fact, Plaintiffs emphasize in their unfairness allegations that "Google's unfair conduct is illegal" because "[l]oot boxes . . . are in essence slot machines or, *in the alternative*, from a psychological standpoint, are *similar to slot machines*." (FAC ¶ 192 (emphasis added).) But "courts in this district have held that where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017). Plaintiffs do not even attempt to explain why this rule does not apply here. The Court may therefore dismiss Plaintiffs' Second Cause of Action on this basis alone.

Plaintiffs' unfairness theory is likewise deficient because it relies on vague standards arising from social science research that call for the Court to apply a "purely subjective notion of fairness," which is improper. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 184 (1999); *Celebrity Chefs Tour, Ltd. Liab. Co. v. Macy's, Inc.*, 16 F. Supp. 3d 1141, 1155-56 (S.D. Cal. 2014) (dismissing UCL claim alleging unfair acts "in a more generalized moral sense").

Plaintiffs ultimately fail to allege facts to state a plausible unfairness claim against Google because, again, they rely on legal conclusions to suggest Google's responsibility for the conduct of video game app developers. The result is that Plaintiffs' unfairness allegations are insufficient under all three potentially applicable tests.

#### 1. *Plaintiffs fail the Balancing Test*

Plaintiffs argue that their allegations of Google's purported "scheme to monetize free video games through the development, promotion and sale of 'loot boxes'" satisfies the balancing test because academic research suggests that loot boxes lead to problems such as depression and suicidal thoughts, cross-addiction, and health problems. (Opp. at 22:19-26.) These allegations fail for at least

two reasons. First, Plaintiffs again offer only legal conclusions, not factual allegations, regarding Google's supposed role in an industry-wide "scheme" to monetize free games. Such labels are insufficient to surmount the flaw the Court has already recognized as fatal to its claims—that Google played no role in the creation or sale of loot boxes to consumers. (*See* Dismissal Order at 16-17.)

Plaintiffs' allegations make clear that Google simply provides general advice on adding monetization features *generally*—not loot boxes in particular—in apps made available for download through the Google Play store. (*See, e.g.*, FAC ¶¶ 6 (Google "coaches developers on '[h]ow to build and grow your app's revenue streams' through 'implementing the right monetization strategy'"), ¶ 24 ("Google requires *all developers* who want to sell games through the Google Play Store to enter into a 'Developer Distribution Agreement.'") (emphasis added); ¶¶ 28-35 (describing tools provided to and obligations imposed on all game developers and in-app purchases); ¶ 33 (Google's "Software Development Kit has its own code that is written and developed by Google. Google requires it to be *incorporated into every game*.") (emphasis added).)

By contrast, Plaintiffs' unfairness theory attacks the decision by developers to create loot box mechanisms and insert them into their games. Google plays no role in this process. (FAC ¶ 9.) Without any facts to link Google's general platform management policies to game developers' loot boxes, Plaintiffs again resort to academic research, including suggestions that loot boxes lead to a broad range of psychological problems. This tactic does not aid Plaintiffs because they do not allege experiencing any psychological issues from playing loot boxes. *See Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (balancing test "requires the court to weigh the utility of the defendant's conduct against the gravity of the harm *to the alleged victim*.") (emphasis added). Thus, Plaintiffs have failed to show that any such harm outweighs the utility of Google's conduct.

### 2. *Plaintiffs fail the Tethering Test*

Plaintiffs alternatively claim that Google's conduct is unfair under the UCL "tethering test" because it violates the "policy or spirit" of the same state and federal gambling statutes it is alleged to have violated under the unlawful prong, relying on the underlying assumption that "loot boxes" are "unlicensed or unregulated gambling or gambling activities." (FAC ¶ 200.) In so doing, Plaintiffs admit that the allegations supporting their *unfairness* theory "entirely overlap" with their defective

claims of *unlawful* gambling activity such that both claims must be dismissed. *See Hadley*, 243 F. Supp. 3d at 1104-05.

Moreover, none of these allegations support liability against Google. Plaintiffs admit that Google does not create loot boxes (FAC ¶ 9) and concede, as they must, that Google was not involved in the *sale* of loot boxes for either of the two video games at issue. Plaintiffs do not allege that Google's involvement in the sale of virtual currency or apps that generally include monetization features violates any California public policy.

Second, even accepting Plaintiffs' conclusory allegations that Google encouraged or controlled loot boxes, this argument misses the key point: "loot boxes" are not gambling -- Plaintiffs themselves state they are "gambling-like." (Opp. at 24.) An activity that is not itself unlicensed gambling cannot violate a public policy proscribing unlicensed gambling.

### 3. *Plaintiffs fail the FTC Act Test*

The FTC Act test deems conduct unfair where it (1) causes substantial injury; (2) that is not outweighed by any countervailing benefits to consumers or competition; and (3) that could not have been reasonably avoided by consumers. *See Drum*, 182 Cal. App. 4th at 257. The Court may quickly dispose of this theory of unfairness, as Plaintiffs could easily have avoided the loot boxes with which they now take issue. They could have played the games without making the optional decision to acquire loot boxes with virtual currency. They could have disabled all in-app purchases for these games. They could have played other video games that do not offer the option to acquire loot boxes at all. They could have chosen another form of entertainment altogether, such as watching a movie.

Because Plaintiffs could have easily avoided loot boxes in favor of any number of forms of alternative entertainment, they fail to state a plausible unfairness claim based on the FTC Act test. *See Philips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731, 743 (N.D. Ill. 2016) ("Phillips does not allege that she had no choice but to submit to Double Down's online games, nor could she. Phillips could have picked other forms of entertainment, or even sought to play online games on a different platform or website."); *Ristic v. Mach. Zone, Inc.*, No. 15-cv-8996, 2016 U.S. Dist. LEXIS 127056, at *13 (N.D. Ill. Sep. 19, 2016) ("Ristic could reasonably have avoided 'losing' money in Machine Zone's Casino in a number of ways, including by simply buying the Prizes in Machine Zone's store

(a practice that Ristic does not challenge), or playing the free Game of War game without paying to advance his play more quickly.").

Plaintiffs' reliance on *FTC v. R.F. Keppel & Bros., Inc.*, 291 U.S. 304, 313 (1934) is misplaced, as the case is nearly a century old, does not involve a UCL claim, and does not even consider whether the plaintiffs could reasonably avoid the allegedly harmful conduct.

### E. Plaintiffs Still Cannot Save Their CLRA or Unjust Enrichment Claims

Plaintiffs again ask the Court to reconsider its prior conclusion that "virtual currency is not a good or service for purposes of the CLRA." (Dismissal Order at 20:5-6.) Plaintiffs' new conclusory pleading does not change the underlying nature of virtual currency, nor distinguish this case in any way from the otherwise on-point precedent. *See, e.g.*, *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020) ("Plaintiff's CLRA claim therefore fails because the virtual currency at issue is not a good or service."); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012) (holding that Facebook Credits, a virtual currency, are not covered by the CLRA). Plaintiffs further do not dispute that Google made no representations at all regarding loot boxes. (*See* Dismissal Order at 20:13-14.) Ultimately, Plaintiffs' CLRA claim rises and falls with their theory that loot boxes violate the California Penal Code. As Google has argued and Judge Seeborg and Judge Davila have ruled, Plaintiffs' illegal gambling theory has no merit, and so their CLRA claim must likewise be dismissed on this additional basis. Similarly, Plaintiffs have no basis to maintain a claim for unjust enrichment when they received exactly as much virtual currency as was promised.

### IV. CONCLUSION

Google respectfully requests the Court once again dismiss Plaintiffs' complaint, this time without leave to amend.

Dated: October 1, 2021              Respectfully submitted,

**BAKER & McKENZIE LLP**

By: /s/ Teresa H. Michaud
Teresa H. Michaud
Attorneys for Defendant
GOOGLE LLC