# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

JOHN COFFEE, MEI-LING MONTANEZ, AND S.M., a minor by MEI-LING MONTANEZ, S.M.'S parent and guardian, on behalf of themselves and all others similarly situated,

           Plaintiffs,

    v.

GOOGLE, LLC,

           Defendant.

Case No.  20-cv-03901-BLF

ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND; AND DISMISSING ACTION WITH PREJUDICE

[Re:  ECF 66]

In this putative class action, Plaintiffs allege that Defendant Google, LLC violates state consumer protection laws by distributing game applications ("apps") containing "Loot Boxes" through its Play Store.  A Loot Box, which may be purchased in-app during play of some games, offers the player a randomized chance to receive an item designed to enhance the gaming experience, such as a better weapon, faster car, or more desirable player appearance.  The player does not know what specific item any given Loot Box contains at the time of purchase, so the player runs the risk of being dissatisfied.  Plaintiffs allege that Loot Boxes are illegal slot machines[1] under California law, and that Google is civilly liable to all persons in the United States who purchased a Loot Box in an app downloaded from the Google Play Store.

---

[1] The parties use the terms "slot machine," "gambling device," and "gambling machine" interchangeably.  For ease of reference, the Court uses the term "slot machine."

Google moves to dismiss the first amended complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6).  The Court has considered the parties' written submissions as well as the oral arguments of counsel presented at the hearing on October 19, 2021.  For the reasons discussed below, Google's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND and the action is DISMISSED WITH PREJUDICE.

## I.      BACKGROUND

Google's Play Store features more than 2.9 million apps, most of which are free to download.  FAC ¶ 20.  Plaintiffs claim that Google works "in concert with game developers" to monetize free games through in-app purchases, specifically, Loot Boxes.  *Id*.  Google allegedly prohibits apps containing other forms of gambling, but encourages developers to place Loot Boxes in game apps.  *Id*. ¶¶ 4-6.  According to Plaintiffs, Loot Boxes foster compulsive and addictive gambling behavior and constitute illegal slot machines under California law.  *Id*. ¶¶ 3-5.  In 2018, Loot Boxes generated revenue in excess of $30 billion.  *Id*. ¶ 45.  Although Google itself does not create the game apps available in the Play Store, or the Loot Boxes featured in some games, Google allegedly has taken steps to ensure that it receives a cut of the profits generated by Loot Boxes.  *Id*. ¶ 9.

Plaintiffs allege that such steps include Google's requirement that developers who wish to distribute apps through the Play Store must enter into a "Developer Distribution Agreement" that creates an agency relationship whereby Google acts as each developer's "Merchant of Record" for products sold or made available through the Play Store.  FAC ¶¶ 22-27.  Plaintiffs also point to Google's requirement that developers use Google's Software Development Kit, containing code written and developed by Google.  *Id*. ¶ 33.  The Software Development Kit is the means by which developers access the Google Play payment processor.  *Id*.  Google processes all in-app purchases, taking a 30% cut of every purchase before transferring the remainder of the funds to the developer.  *Id*. ¶ 9.

Plaintiffs also claim that "Google and its game developers have a revenue sharing arrangement where Google receives 30% of all revenue from the sale of loot boxes."  FAC ¶ 29.  Plaintiffs offer two theories as to how this alleged revenue sharing arrangement works.  The first

theory is set forth in the FAC, which alleges that a player uses money in the form of a credit card or gift card to purchase virtual currency such as gems or coins through the Play Store, and then uses the virtual gems or coins to make an in-game purchase of a Loot Box.  *Id.* ¶ 44.  The FAC contains no facts suggesting that Google has any involvement in the second part of this two-step transaction, the purchase of the Loot Box with virtual currency.  Plaintiffs do not allege that Google tracks how players spend their virtual currency or that Google derives greater profit if the virtual currency is used to buy Loot Boxes rather than other in-game items.  Plaintiffs gloss over the difference between real dollars virtual currency, alleging that "[w]ether the purchase is viewed as being made with fiat currency or with property in the form of virtual currency purchased with money, a loot box play costs real money."  *Id.*  Based on the FAC's explanation of how Loot Boxes are purchased, the Court understands the assertion that Google "receives 30% of all revenue from the sale of loot boxes," FAC ¶ 29, to mean that Google receives 30% of all revenue from the sale of *virtual currency*, which players in turn use to purchase Loot Boxes.

A second theory regarding revenue sharing is offered in Plaintiffs' opposition and post-hearing submissions.  In those filings, Plaintiffs assert that Loot Boxes may be purchased directly from the Play Store with money.  To the extent Google processes Loot Box sales made directly through the Play Store and paid for with money, Google presumably retains 30% of the revenue from Loot Box sales.  *See* FAC ¶ 9 (alleging that Google handles "all of the transactions with gamers, including taking a 30% cut of all money spent by players before transferring the remainder to the developer").

Plaintiffs assert that Google's conduct in promoting and selling Loot Boxes renders Google civilly liable to a nationwide class consisting of "[a]ll persons who paid to receive randomized virtual items from a purchase (also known as "loot boxes") within an app downloaded from the Google Play Store."  FAC ¶ 170.  The named Plaintiffs allege that they bought Loot Boxes within apps downloaded from the Play Store in transactions described as follows.

Plaintiff John Coffee ("Coffee") is a citizen and resident of California.  FAC ¶ 11.  Coffee downloaded the game app Final Fantasy Brave Exvius ("Final Fantasy") from the Play Store onto his Android mobile device for free.  *Id.* ¶ 11, 70.  Final Fantasy is a role-playing game in which

players move their characters through a series of stages with the ultimate goal of confronting and defeating the "boss." *Id*. ¶ 70.  Players of Final Fantasy may purchase a Loot Box called a "Summons" using in-game virtual currency called "Lapis Crystals." *Id*. ¶ 71.  Lapis Crystals may be earned through game play or may be purchased through the Play Store for money.  *Id*. ¶¶ 71-72.  Plaintiffs allege that Coffee "purchased virtual coins with money to buy chances on loot boxes and lost property in the form of the virtual coins he used to buy chances on loot boxes." *Id*. ¶ 11.  Coffee allegedly spent more than $500 in the Play Store on virtual currency to purchase Loot Boxes in a dozen game apps, including Final Fantasy.  *Id*.  Plaintiffs do not specify what portion of Coffee's virtual currency was spent on Loot Boxes in Final Fantasy.  *Id*.

Plaintiffs Mei-Ling Montanez ("Montanez"), and Montanez's minor son, S.M., are citizens and residents of New York.  FAC ¶¶ 12-13.  S.M. downloaded the game app Dragon Ball Z Dokkan Battle ("Dragon Ball Z") from the Play Store onto a Samsung smartphone for free.  *Id*. ¶¶ 12-13, 75.  Dragon Ball Z "is made up of levels that play like a board game, with spots dedicated to items, power-ups, traps, and fights." *Id*. ¶ 77.  Players may purchase a Loot Box called a "Summons" using in-game currency called "dragon stones." *Id*. ¶ 76.  Plaintiffs allege that "S.M. purchased virtual coins to buy chances on loot boxes and lost property in the form of the virtual coins when he used them to buy chances on loot boxes." *Id*. ¶ 12.  S.M. allegedly has spent more than $100 in the Play Store, at least some of which was his parents' money, on items that included virtual currency to buy Loot Boxes.  *Id*. ¶ 13.  Plaintiffs do not specify how much virtual currency S.M. spent on Loot Boxes in Dragon Ball Z.

Plaintiffs filed this suit against Google in June 2020, claiming that Google is civilly liable to all persons who have purchased Loot Boxes in game apps downloaded from the Play Store.  Compl., ECF 1.  Plaintiffs asserted claims for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*., violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*., and unjust enrichment.  *See* Compl., ECF 1.  In a written order issued on February 10, 2021 ("Prior Dismissal Order"), the Court granted Google's motion to dismiss the complaint with leave to amend.  *See* Prior Dismissal Order, ECF 56.  The Court observed that the complaint described numerous games, but only two

4

that were downloaded from the Play Store by Plaintiffs. *See id*. at 2. Focusing on those two games, the Court found meritorious Google's arguments that it is immune from suit under Section 230 of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230, and that Plaintiffs had failed to state a claim. *See id*. at 7-21. The Court did not reach Google's argument challenging Plaintiffs' characterization of Loot Boxes as illegal slot machines under California law. *See id*. at 5.

Plaintiffs thereafter filed the operative FAC, reasserting their UCL, CLRA, and unjust enrichment claims. *See* FAC, ECF 59. Plaintiffs again make allegations about numerous game apps, but they allege that they themselves downloaded only two: Final Fantasy and Dragon Ball Z. *See id*. ¶¶ 11-13. The FAC contains four claims against Google under California law: (1) violation of the unlawful prong of California's UCL; (2) violation of the unfair prong of California's UCL; (3) violation of California's CLRA; and (4) unjust enrichment under California law. *See* FAC, ECF 59. Plaintiffs seek to represent a nationwide class of "[a]ll persons who paid to receive randomized virtual items from a purchase (also known as 'loot boxes') within an app downloaded from the Google Play Store." FAC ¶ 170. Plaintiffs seek restitution and disgorgement of the revenues obtained from Google's allegedly wrongful conduct, as well as declaratory and injunctive relief. *See* FAC Prayer.

## II.    LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When evaluating a Rule 12(b)(6) motion, the district court is limited to the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice. *See Louisiana Mun. Police Employees'*

*Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322  (2007)).

## III.   DISCUSSION

Google seeks dismissal of the FAC without leave to amend, arguing that Plaintiffs still have not alleged a viable claim despite the Court's guidance in the Prior Dismissal Order.  First, Google asserts that Plaintiffs have not alleged any facts that would cause the Court to reconsider its conclusion that Google is immune from suit under Section 230 of the CDA.  Second, Google contends that Plaintiffs once again have failed to state a claim.  Third, Google argues that as a matter of law, Loot Boxes are not illegal slot machines under California law.

In opposition, Plaintiffs argue that Section 230 immunity does not apply, their claims are adequately alleged, and Loot Boxes are illegal slot machines.  Plaintiffs also argue that some claims do not depend on the illegality of Loot Boxes, and may proceed even if Loot Boxes are not illegal slot machines.  Google responds to the latter argument in its reply.

The Court begins by addressing Google's assertion of Section 230 immunity.  Next, the Court addresses whether Plaintiffs have stated a claim for relief.  The Court then takes up the question of whether Loot Boxes are illegal slot machines under California law.  Finally, the Court addresses Plaintiffs' argument that some claims do not depend on the illegality of Loot Boxes.

### A.   Section 230 Immunity

Section 230 of the CDA "protects certain internet-based actors from certain kinds of lawsuits." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009).  As relevant here, Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  47 U.S.C. § 203(e)(3).  "The majority of federal circuits have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (quotation marks and citation omitted).

United States District Court
Northern District of California

"This grant of immunity applies only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part, for the creation or development of' the offending content. *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (quoting § 230(f)(3)). A website does not become responsible for development of the offending content merely providing "neutral tools" that a third party utilizes to create illegal content. *Id.* at 1169. A website falls within the exception to Section 230 immunity only "if it contributes materially to the alleged illegality of the conduct." *Id.* at 1168.

In *Barnes*, the Ninth Circuit created a three-prong test for Section 230 immunity. *See Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (discussing *Barnes* test). "Immunity from liability exists for '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'" *Id.* (quoting *Barnes*, 570 F.3d at 1100-01). "When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Id.*

### 1.    Interactive Computer Service Provider

Under the first prong of the *Barnes* test, the Court must determine whether Plaintiffs' allegations establish that Google is an interactive computer service provider. "The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). "Websites are the most common interactive computer services." *Dyroff*, 934 F.3d at 1097; *see also Roommates*, 521 F.3d at 1162 n.6 ("[t]oday, the most common interactive computer services are websites").

Plaintiffs allege that Google maintains the Play Store, which contains more than 2.9 million third-party apps on its virtual shelves. FAC ¶¶ 19-23. The Court previously found that similar allegations in the original complaint were sufficient to satisfy the first prong of the *Barnes* test. *See* Prior Dismissal Order at 9. Plaintiffs did not dispute Google's status as an interactive

United States District Court
Northern District of California

United States District Court
Northern District of California

computer service provider in the first round of motion practice, and they do not dispute it here. The Court once again finds that the first prong of the *Barnes* test is satisfied.

### 2.      Seek to Treat as a Publisher or Speaker

Under the second prong of the test, the Court must determine whether Plaintiffs' allegations show that Plaintiffs seek to treat Google as a publisher or speaker with respect to content on the Google Play store.  A website acts as a publisher when it decides whether or not to post online material submitted for that purpose by a third party.  *See Roommates*, 521 F.3d at 1170.  "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."  *See id.* at 1170-71.

In its Prior Dismissal Order, the Court determined that "all of Plaintiffs' claims are grounded in video game apps intended for public consumption that Google chooses to place 'on the virtual shelves of its Google Play store.'"  Prior Dismissal Order at 10.  The Court found that Plaintiffs were seeking to treat Google as publisher, as Plaintiffs wanted Google to screen all apps submitted for inclusion in the Play Store and exclude those containing Loot Boxes.  *See id.*  The Court rejected Plaintiffs' argument that Section 230 does not apply to publication of apps rather than traditional speech, relying on *Evans v. Hewlett-Packard Co.*, No. C 13-02477 WHA, 2013 WL 4426359, at *2 (N.D. Cal. Aug. 15, 2013), in which the district court applied Section 230 where the published content was an app.  *See* Prior Dismissal Order at 10-11.  The Court also found unpersuasive Plaintiffs' argument that they did not seek to treat Google as a publisher of another's content, but rather sought to hold Google accountable for its own conduct in "permitting and facilitating illegal gambling."  *Id.* at 12.  The Court stated that it was unclear from the complaint what conduct Plaintiffs meant, as neither the word "permitting" nor the word "facilitating" appeared in the complaint.  *Id.*

Plaintiffs tacitly seek reconsideration of the Court's ruling, pointing out that another court in this district declined to apply Section 230 in a similar Loot Box case, *Rebecca Taylor, et al. v. Apple, Inc.*, No. 20-cv-03906-RS.  In an unpublished order, the *Taylor* court reasoned as follows:

> Plaintiffs' theory is that Apple is distributing games that are effectively slot machines – illegal under the California Penal Code.  While the viability of that claim is discussed further below, for purposes of evaluating the applicability of

section 230, it is irrelevant whether or not the games actually violate the law. Plaintiffs are seeking to hold Apple liable for selling allegedly illegal gaming devices, not for publishing or speaking information.

*Taylor* Order at 6, ECF 46 in No. 20-cv-03906-RS.  Plaintiffs in the present case argue that, as in *Taylor*, they are seeking to hold an app store liable for its own conduct in promoting and selling Loot Boxes, not for publishing or speaking information.

Plaintiffs also cite the Ninth Circuit's recent decision in *Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021), for the proposition that Plaintiffs' allegation of revenue sharing between Google and app developers is sufficient to take this case outside of Section 230.  In *Gonzalez*, the families of victims killed by the terrorist group ISIS sued Google, Twitter, and Facebook under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, alleging that the "defendants' social media platforms allowed ISIS to post videos and other content to communicate the terrorist group's message, to radicalize new recruits, and to generally further its mission."  *Gonzalez*, 2 F.4th at 880.  The plaintiffs also claimed "that Google placed paid advertisements in proximity to ISIS-created content and shared the resulting ad revenue with ISIS."  *Id*.  The Ninth Circuit found that "[t]he Gonzalez Plaintiffs' revenue-sharing theory is distinct from the other theories of liability raised in the TAC."  *Id*. at 897.  Specifically, the revenue sharing allegations were "not directed to the publication of third-party information" but were "premised on Google providing ISIS with material support by giving ISIS money."  *Id*. at 898.  The Ninth Circuit explained that, "unlike the Gonzalez Plaintiffs' other allegations, the revenue-sharing theory does not depend on the particular content ISIS places on YouTube; this theory is solely directed to Google's unlawful payments of money to ISIS."  *Id*.  The *Gonzalez* court concluded that Section 230 did "not bar the Gonzalez Plaintiffs' claims premised on sharing revenue with ISIS," but did bar the plaintiffs' non-revenue sharing claims.  *Id*. at 898-99.

To the extent Plaintiffs' theory of liability is based on Google's 30% cut of revenue from the sale of virtual currency, this case is distinguishable from *Taylor* and *Gonzalez*.  In *Taylor*, the district court noted that Apple was alleged to be selling illegal gaming devices, and in *Gonzalez*, Google was alleged to have provided resources to a terrorist organization in violation of an anti-terrorism statute.  In the present case, Google's conduct in processing sales of virtual currency is

not alleged to be illegal. To the contrary, the FAC states that "[v]irtual currency is a type of *unregulated* digital currency that is only available in electronic form." FAC ¶ 11 & n.2 (emphasis added). If indeed the sale of Loot Boxes is illegal, the facts alleged in the FAC indicate that such illegality is committed by the developer who sells the Loot Box for virtual currency, not by Google.

All of Google's conduct identified by Plaintiffs in the FAC is lawful. Google's 30% cut of virtual currency sales is the same 30% cut that Google receives with respect to all transactions processed through the Play Store. The Developer Distribution Agreement and Software Development Kit are used across the Play Store with respect to all developers and contain no provisions specific to Loot Boxes. Plaintiffs assert that because virtual currency is the only means by which a player may purchase Loot Boxes, Google's processing of virtual currency sales facilitates Loot Box sales. FAC ¶¶ 7, 186. However, virtual currency may be used for multiple types of in-app purchases, of which only Loot Boxes are alleged to be illegal. A website does not become responsible for offending content merely by providing "neutral means by which third parties can post information of their own independent choosing online," or by providing "neutral tools" to third party developers. *Gonzalez*, 2 F.4th at 893 (quotation marks and citation omitted); *see also Roommates*, 521 F.3d at 1169.

The present case also is distinguishable from *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 681 (9th Cir. 2019), cited by Plaintiffs. In *HomeAway*, the City of Santa Monica required short-term vacation rentals to be licensed and imposed liability on vacation rental hosting platforms that facilitated unlicensed short-term vacation rentals. *Id*. at 680. The rental hosting platforms filed suit against the city, arguing that they were entitled to immunity under Section 230. *Id*. The plaintiffs argued that the ordinance implicitly required them to monitor the contents of third-party listings and compare them against the City's short-term rental registry. *See id*. at 682. The Ninth Circuit rejected that argument, finding that the ordinance did not impose liability for the content of listings on the plaintiffs' websites, but rather imposed liability only if the plaintiffs processed unlawful transactions for unregistered properties. *See id*. The Ninth Circuit stated that "the Ordinance does not proscribe, mandate, or even discuss the content of the

listings that the Platforms display on their websites." *Id*. at 683.  In contrast, Plaintiffs in the present case seek to impose liability if Google processes *lawful* transactions for virtual currency where such currency could be used to buy Loot Boxes in third-party apps downloaded from the Play Store.  The requested injunctive relief is grounded entirely in the content of the listings Google displays on its website.

In short, when stripped of Plaintiffs' speculation as to Google's motives, the conduct alleged in the FAC amounts to Google's publication of third-party apps in the Play Store and provision of neutral tools and services to all developers across the Google Play platform.  This alleged conduct falls squarely within the protection of § 230 and therefore Plaintiffs' claims are barred to the extent based on Google's revenue sharing with respect to sales of virtual currency.

To the extent Plaintiffs' theory of liability is based on direct sales of Loot Boxes through the Play Store for money, however, *Taylor* and *Gonzalez* may apply to remove this case from the scope of immunity provided by Section 230.  Claims based on Google's processing of Loot Box sales, and retaining a 30% cut of those sales, would not be based solely on publication of third-party apps and provision of neutral tools.  Google objects to the Court's consideration of this theory, however, arguing correctly that the FAC itself does not allege direct sales of Loot Boxes through the Play Store.  Facts regarding such direct sales appear only in documents submitted with Plaintiffs' opposition and post-hearing filings.  Those documents show that Loot Boxes may be purchased directly through the Play Store, with money, for the games Brawl Stars, FIFA Soccer, Puzzles and Dragons, and Clash Royale.  *See* Brown Decl. ¶¶ 3-7, ECF 71-1; Proffer, ECF 77.  The Court cannot consider those facts in evaluating Google's motion to dismiss, because the Court is limited to allegations in the complaint documents incorporated by reference, and matters subject to judicial notice.  *See Wynn*, 829 F.3d at 1063.

The Court nonetheless denies Google's motion to strike Plaintiffs' evidence regarding sales of Loot Boxes through the Play Store.  The Court will treat that evidence as a proffer of additional facts Plaintiffs could allege if granted leave to amend their pleading.  Addition of those factual allegations would not necessarily bring Plaintiffs' claims within the rationales of *Taylor* and *Gonzalez*, however, because Plaintiffs' evidence of Loot Box sales directly through the Play

11

United States District Court
Northern District of California

Store does not relate to Final Fantasy or Dragon Ball Z, the only games downloaded by Plaintiffs in this suit.  In order to take this case outside the protection of Section 230, Plaintiffs would have to add additional allegations that they purchased Loot Boxes directly through the Play Store in Final Fantasy or Dragon Ball Z, or that they downloaded other games from the Play Store and purchased Loot Boxes in those games directly from the Play Store.  It is unclear whether Plaintiffs could add those necessary addition allegations.  Even if Plaintiffs could do so, such amendment would be futile because Plaintiffs' claims are subject to dismissal without leave to amend on other grounds, including the Court's determination that Loot Boxes are not illegal slot machines.  Accordingly, as discussed more fully in section III.D., below, the Court will not grant leave to amend to plead around the immunity afforded by Section 230.

Based on Google's conduct as currently alleged in the operative FAC, the Court finds that Plaintiffs seek to treat Google as a publisher of content on the Google Play store, and thus that the second prong of the *Barnes* test is satisfied.

### 3.       Information Provided by Another Content Provider

Under the third prong of the *Barnes* test, the Court must determine whether Plaintiffs' allegations show that the published material – content on the Play Store – was provided by another content provider.  In its Prior Dismissal Order, the Court found that this prong was satisfied based on Plaintiffs' allegations that the two apps downloaded by Plaintiffs, Final Fantasy and Dragon Ball Z, were created by third party developers and were downloaded by Plaintiffs for free.  *See* Prior Dismissal Order at 12.  The Court determined that Plaintiffs had not alleged facts showing that Google is a co-developer of the game apps.  *See Roommates*, 521 F.3d at 1162 (a website operator is immune only with respect to content created entirely by third parties).

Plaintiffs argue that their new allegations regarding the Developer Distribution Agreement that Google enters into with game developers, and the Software Development Kit that Google requires game developers to use, are sufficient to allege that Google is a co-developer.  Section 230 does not apply if the interactive computer service provider is responsible, in whole or in part, for the creation or development of the offending content.  *See Roommates*, 521 F.3d at 1162.  As noted above, Plaintiffs do not allege that the Developer Distribution Agreement or the

development tools in question relate to Loot Boxes specifically.  In fact, all game developers must use the code in Google's Software Development Kit in every game app distributed through the Play Store.  *Id*. ¶¶ 32-33.  A website falls within the co-developer exception to Section 230 immunity only if it "contributes materially to the alleged illegality of the conduct."  *Roommates*, 521 F.3d at 1168.  Material contribution to the alleged illegality is not established where a website merely provides "neutral tools" that a third party utilizes to create illegal content.  *Id*. at 1169; *see also Gonzalez*, 2 F.4th at 893-94.  Because the facts alleged in the FAC establish that the game apps and Loot Boxes downloaded by Plaintiffs were created by third parties, and that Google did no more than provide neutral tools to all developers across the Play Store, the co-developer exception to § 230 immunity does not apply.

It appears on the face of the FAC that the third prong of the *Barnes* test is satisfied.

### 4.      Conclusion Re Section 230

Based on the facts in the FAC, Google is entitled to Section 230 immunity as to all of Plaintiffs' claims.  The Court's conclusion would be the same whether or not Loot Boxes constitute illegal slot machines, as "even if a service provider knows that third parties are using such tools to create illegal content, the service's provider's failure to intervene is immunized." *Goddard v. Google, Inc.*, No. C 08-2738 JF (PVT), 2008 WL 5245490, at *3 (N.D. Cal. Dec. 17, 2008).

Google's motion to dismiss all claims on the basis of Section 230 immunity is GRANTED.

### B.      Failure to State a Claim

Google argues that Plaintiffs have not alleged facts sufficient to state a claim.  Plaintiffs assert that their claims are adequately alleged.  In its Prior Dismissal Order, the Court found that the complaint did not allege facts showing statutory standing to proceed under the UCL or CLRA, and did not state a claim for unjust enrichment.

### 1.      Standing under the UCL

Claims 1 and 2 assert violations of California's UCL, which in relevant part prohibits an individual or entity from engaging in any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  Claim 1 is for violation of the unlawful prong and Claim 2 is for

violation of the unfair prong.

A private person has statutory standing under the UCL only if he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204; *see also Hawkins v. Kroger Co.*, 906 F.3d 763, 768 (9th Cir. 2018).  "A plaintiff is required to show some form of economic injury as a result of his transactions with the defendant." *Hawkins*, 906 F.3d at 768.  Plaintiffs have alleged that they downloaded free games from the Play Store, Final Fantasy (Coffee) and Dragon Ball Z (S.M.), and thereafter were involved in one or more two-part transactions in which they first purchased virtual currency through the Play Store using money, and then used the virtual currency to make in-game purchases of Loot Boxes.  *See* FAC ¶¶ 11-13.  In the Prior Dismissal Order, the Court held that Plaintiffs had not alleged how their purchase of virtual currency through the Play Store resulted in the loss of money or property.  *See* Prior Dismissal Order at 16-17.  The Court noted that "Plaintiffs do not allege that they received fewer Lapis Crystals (Final Fantasy) or dragon stones (Dragon Ball Z) than the amount for which they paid." *Id.* at 17.  Based on the facts alleged in the FAC, it still appears that Plaintiffs obtained exactly the virtual currency they paid for.  Google asks that the UCL claims once again be dismissed for lack of standing.  The Court agrees that dismissal for lack of standing is appropriate on this basis.

In opposition, Plaintiffs state that they "believe the Order was incorrectly decided in part and respectfully ask that it be reconsidered."  Opp. at 9, ECF 71.  Plaintiffs contend that the Court should not limit its UCL analysis to the purchase of virtual currency through the Play Store, but should consider the entire two-part transaction as a whole.  According to Plaintiffs, Google is engaged in a "predatory" scheme to promote and profit from illegal gambling in the form of Loot Boxes.  Plaintiffs cite academic research regarding the addictive nature of Loot Boxes and the potentially negative effect that Loot Boxes may have on individuals, especially children.  *Id.* ¶¶ 7-8.  Analogizing the Play Store to a physical casino, Plaintiffs allege that "Google permits, promotes, facilitates, and profits off gambling."  FAC ¶ 7.  Plaintiffs allege that, "[j]ust like casinos, while Google may not manufacture the slot machines or design their random-chance algorithms, Google houses the slot machine, and takes a cut off the top from every wager that is

14

placed." *Id*. A key part of this alleged scheme, Plaintiffs contend, is the disassociation of Loot Boxes from their true monetary cost. *Id*. ¶¶ 88-92. Plaintiffs assert that players are more likely to gamble using virtual currency than they would be if actual money were at stake. *Id*. In Plaintiffs' view, all money spent on virtual currency that subsequently is used to purchase Loot Boxes qualifies as economic injury for purposes of UCL standing.

Plaintiffs' casino analogy is unpersuasive. The Play Store contains more than 2.9 million third-party apps. FAC ¶¶ 19-23. That some of those apps are games offering Loot Boxes does not render the Play Store a casino. Plaintiffs have not alleged facts to support their allegation that Google "takes a cut off the top from every wager that is placed." FAC ¶ 7. The facts alleged in the FAC indicate that Google receives a 30% cut of all revenue from sales of *virtual currency*.

Setting aside all of Plaintiffs' general commentary regarding gambling, and conclusory characterizations of Google's conduct, the FAC alleges that: Google distributes third-party apps through its Play Store, Google enforces certain requirements and offers certain development tools across the Play Store platform as a whole, and Google processes legal sales of virtual currency. These allegations do not give rise to a plausible claim that Plaintiffs lost money or property as a result of Google's conduct. This ruling is in accord with the decisions of two other courts in this district, in which UCL claims premised on in-app purchases of Loot Boxes were dismissed for lack of statutory standing. *See Taylor*, 2022 WL 35601, at *2; *Mai v. Supercell Oy*, No. 5:20-CV-05573-EJD, 2021 WL 4267487, at *3 (N.D. Cal. Sept. 20, 2021).

As discussed above, Plaintiffs have proffered facts extrinsic to the pleadings indicating that they might be able to allege they bought Loot Boxes directly through the Play Store in Final Fantasy or Dragon Ball Z, or that they downloaded other games from the Play Store and bought Loot Boxes in those games directly through the Play Store. If made, such allegations could affect the Court's determination that Plaintiffs lack statutory standing under the UCL. However, leave to amend to add such allegations would be futile in light of the Court's conclusion that Loot Boxes are not illegal slot machines, as discussed below.

Based on the allegations currently alleged in the FAC, Google's motion to dismiss Claims 1 and 2 for lack of statutory standing is GRANTED.

### 2.     Standing under the CLRA

Claim 3 asserts violations of the CLRA, which makes unlawful "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a); *see also Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 639 (2009). "Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful" under the CLRA may bring suit. Cal. Civ. Code § 1780(a). Thus, "in order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result." *Meyer*, 45 Cal. 4th at 641.

In the Prior Dismissal Order, this Court held that:

> It appears from the complaint that the only transactions between Plaintiffs and Google were the free downloads of the games Final Fantasy and Dragon Ball Z, and purchases of virtual currency through the Google Play store. Plaintiffs do not allege that the free download of video games qualifies as "the sale or lease of goods or services" under the CLRA. Moreover, courts in this district have held that virtual currency is not a good or service for purposes of the CLRA. *See, e.g, Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020) ("Plaintiff's CLRA claim therefore fails because the virtual currency at issue is not a good or service."); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012) (holding that Facebook Credits, a virtual currency, are not covered by the CLRA).

Prior Dismissal Order at 20.

In the FAC, Plaintiffs allege that they lost money when purchasing virtual currency, and lost property in the form of virtual currency whey they used the virtual currency to buy Loot Boxes. FAC ¶¶ 11-13. To the extent Plaintiffs are asking the Court to reconsider its conclusion that the purchase of virtual currency does not qualify as the purchase of a good or service under the CLRA, the Court declines to do so. Even if the purchase of virtual currency did qualify as the purchase of a good or service, Plaintiffs do not allege facts showing that they suffered damage as a result of buying virtual currency through the Play Store. Plaintiffs received exactly what they paid for. To the extent Plaintiffs complain that they lost property when they used the virtual currency to buy Loot Boxes during game play, it appears that those transactions were between Plaintiffs and the third-party app developers. The Court therefore concludes that Plaintiffs have failed to allege facts establishing statutory standing under the CLRA. The *Taylor* court reached the same

United States District Court
Northern District of California

1    conclusion on similar facts.  *See Taylor*, 2022 WL 35601, at *2 & n.1.

2         This analysis might be affected if Plaintiffs were able to amend to add allegations that they

3    bought Loot Boxes directly through the Play Store in Final Fantasy or Dragon Ball Z, or that they

4    downloaded other games from the Play Store and bought Loot Boxes in those games directly

5    through the Play Store.  However, leave to amend to add such allegations would be futile for the

6    reasons discussed herein.

7         Based on the facts alleged in the FAC, Google's motion to dismiss Claim 3 for lack of

8    statutory standing is GRANTED.

9                    **3.     Unjust Enrichment**

10        Claim 4 is for unjust enrichment.  The Court previously dismissed Plaintiffs' unjust

11   enrichment claim on the basis that Plaintiffs had not specified which state's law they sought to

12   apply.  *See* Prior Dismissal Order at 20-21.  Plaintiffs have cured that defect and now specify that

13   their claim is brought under California law.  FAC ¶ 225.

14        Under California law, "[t]he elements of an unjust enrichment claim are the receipt of a

15   benefit and [the] unjust retention of the benefit at the expense of another."  *Peterson v. Cellco*

16   *P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (internal quotation marks and citation omitted).

17   Plaintiffs allege that "Google was unjustly enriched as a result of the compensation it received

18   from facilitating, marketing, promoting and selling the unlawful and unfair loot boxes to Plaintiffs

19   and the Class and the virtual currency it reasonably and foreseeably knew was being purchased to

20   wager on loot boxes."  FAC ¶ 226.  Plaintiffs also allege that "[b]ecause of Google's conduct, the

21   Google Play Store has become a gateway to problem gambling behavior and its well-established,

22   associated financial, social, and mental harms.  Google has received hundreds of millions of

23   dollars off its conduct which promotes and legitimizes addictive gambling as a form of

24   entertainment for children and families."  *Id*. ¶ 227.  Plaintiffs seek "seek restitution from Google

25   and seek an order of this Court disgorging all profits, benefits, and other compensation obtained

26   by Google from its wrongful conduct."  *Id*. ¶ 228.

27        Google argues that the facts alleged show that Plaintiffs received exactly the amount of

28   virtual currency purchased through the Play Store, and thus there is no "unjust retention."  Google

United States District Court
Northern District of California

1    also argues that Plaintiffs have not alleged facts showing that Google was involved in or profited

2    from subsequent transactions in which players used virtual currency to purchase Loot Boxes.  The

3    Court agrees with both arguments, and therefore it concludes that Plaintiffs have failed to state a

4    claim for unjust enrichment.  Having determined that the unjust enrichment claim is subject to

5    dismissal on this basis, the Court need not and does not reach Google's additional arguments that

6    the unjust enrichment claim is barred by Google's Terms of Service and is duplicative of the UCL

7    and CLRA claims.

8         Google's motion to dismiss Claim 4 for failure to state a claim is GRANTED.

9    **C.      Alleged Illegality of Loot Boxes**

10        Google argues that all of Plaintiffs' claims fail for the additional reason that they depend

11   on Plaintiffs' characterization of Loot Boxes as illegal slot machines under California law when,

12   in fact, Loot Boxes are not illegal slot machines.  Plaintiffs allege that Loot Boxes are illegal under

13   nine statutes:  California's Gambling Control Act, Cal. Bus. & Prof. Code § 19800 *et seq.*;

14   California Penal Code § 330a; California Penal Code § 330b; California Penal Code § 330.1 *et*

15   *seq.*; California Penal Code § 337j(a)(1); California Penal Code § 337j(a)(2); California Penal

16   Code § 337j(a)(3); Illegal Gambling Business Act of 1970, 18 U.S.C. § 1955; and Unlawful

17   Internet Gambling Enforcement Act of 2006, 31 U.S.C. §§ 5361-5367.

18        Seven of these statutes do not themselves define gambling or slot machines, but rather

19   adopt definitions contained in other statutes.  For example, California's Gambling Control Act sets

20   forth licensing requirements for gambling operations as defined in the California Penal Code.  *See*

21   Cal. Bus. & Prof. Code § 19850.  California Penal Code §§ 337j(a)(1)-(3) prohibit certain

22   gambling conduct and gambling-related conduct without a license.  The federal Illegal Gambling

23   Business Act imposes fines and/or imprisonment on persons who conduct a gambling business in

24   violation of the law of the state in which it is conducted.  *See* 18 U.S.C. § 1955.  The federal

25   Unlawful Internet Gambling Enforcement Act prohibits certain conduct related to unlawful

26   Internet gambling as defined by federal law or state law.  *See* 31 U.S.C. §§ 5362-5363.

27        Three of the enumerated statutes do define illegal slot machines, making clear that a slot

28   machine is a device that gives the user a chance to win a "thing of value" based on elements of

United States District Court
Northern District of California

18

"hazard or chance." *See* Cal. Pen. Code §§ 330a(a) (making it unlawful to possess or permit a slot machine or other device in which "money or any other thing of value, is won or lost . . . upon hazard or chance"); 330b(d) (defining a slot machine as a device in which "by reason of any element of hazard or chance . . . the user may receive any piece of money, credit, allowance, or thing of value"); 330.1 (making it unlawful to permit the operation of "any slot machine or device" in which "the user thereof, as a result of any element of hazard or chance, may become entitled to receive anything of value").  In addition, California Penal Code § 337j(e)(1) defines the term "controlled game" as used in enumerated §§ 337j(a)(1)-(3) to mean "any game of chance, including any gambling device, played for currency, check, credit, or any other thing of value."

Google argues that Loot Boxes are not slot machines because they do not dispense a thing of value.  Google also argues that Loot Boxes fall within a statutory exclusion providing that "[p]inball and other amusement machines or devices, which are predominantly games of skill, whether affording the opportunity of additional chances or free plays or not, are not included within the term slot machine or device." Cal. Pen. Code § 330b(f).  In Google's view, this exclusion applies because Loot Boxes are incorporated into games of skill.

In opposition, Plaintiffs concede that Loot Boxes must offer a chance to win a thing of value in order to qualify as slot machines under California law, but they argue that whether Loot Boxes satisfy this requirement is a factual question that cannot be determined on a motion to dismiss.  Alternatively, Plaintiffs argue that Loot Boxes offer a chance to win a thing of value. With respect to Google's argument based on the exclusion set forth in § 330b(f), Plaintiffs assert that the exclusion does not apply to California Penal Code §§ 330a, 330.1, or 337j.  In any event, Plaintiffs contend, Loot Boxes do not fall within the exception.  Finally, Plaintiffs contend that some of their claims may proceed whether or not Loot Boxes are illegal slot machines, specifically their UCL unfair prong claim and their unjust enrichment claim.

The Court first addresses Plaintiffs' claims that are grounded in the theory that Loot Boxes are illegal slot machines, and then it addresses Plaintiffs' contention that they have asserted claims that are not dependent on the illegality of Loot Boxes.

19

United States District Court
Northern District of California

**1.      Claims Grounded in the Alleged Illegality of Loot Boxes**

All of Plaintiffs' claims are grounded in the alleged illegality of Loot Boxes.  Claim 1 asserts that Google violates the unlawful prong of the UCL by distributing and promoting games containing Loot Boxes in violation of various gambling statutes.  FAC ¶¶ 182-85.  Claim 2 asserts that Google violates the unfair prong of the UCL by "by conducting illegal and unlicensed gambling business."  FAC ¶ 193.  Claim 3 asserts that Google "violated the CLRA by representing to or omitting from Plaintiffs and Class members that the transactions involving loot boxes confer or involve rights to potentially valuable prizes, when in fact these transactions constitute unlawful gambling transactions that are prohibited by law."  FAC ¶ 216.  Claim 4 asserts that "Google was unjustly enriched as a result of the compensation it received from facilitating, marketing, promoting and selling the unlawful and unfair loot boxes to Plaintiffs and the Class and the virtual currency it reasonably and foreseeably knew was being purchased to wager on loot boxes."  FAC ¶ 226.

Google contends that all of these claims fail because Loot Boxes do not offer a chance to win a thing of value and thus are not illegal slot machines under California law. Loot Boxes offer a chance to win a virtual "in-game item or feature designed or perceived to enhance gameplay or provide competitive advantage."  FAC ¶ 1.  Google correctly points out that no court has found such in-game items to satisfy the thing of value requirement under California law.  Two courts in this district have recently held that Loot Boxes do not offer a chance to win a thing of value.  In *Taylor*, the district court held as follows:

> Finally, the allegations of the complaint further fail to show that the games violate the Penal Code because the loot boxes do not offer players a chance to win "a thing of value."  Plaintiffs insist that the loot boxes contain items that are of significant subjective value to those who play the games and purchase them. While that undoubtedly is true, the lack of any real-world transferable value to the items takes them outside the meaning of the statute.

*Taylor* Order at 6, 11, ECF 46 in No. 20-cv-03906-RS.  The *Taylor* court ultimately dismissed the plaintiffs' claims without leave to amend on this basis as well as for lack of standing.  *See Taylor*, 2022 WL 35601 at *2.  Similarly, the district court in *Mai* determined that "any items obtained from loot boxes can only be used within the games themselves . . . these items are not prizes that

1    can be cashed out for real-world money to be spent elsewhere – i.e., 'things of value.'"  *Mai*, 2021

2    WL 4267487, at *4.  District courts in other jurisdictions have concluded the same.  *See, e.g., Soto*

3    *v. Sky Union*, LLC, 159 F. Supp. 3d 871, 880 (N.D. Ill. 2016) (finding that Loot Box prizes such

4    as hero characters or talents did not constitute things of value under the California Penal Code).

5    "Added enjoyment simply does not have measurable worth, and it cannot be a 'thing of value'

6    under [California Penal Code] section 330b(d)."  *Id.*

7         Plaintiffs allege that Loot Box prizes have subjective value to gamers that may not be

8    understood by non-gamers, citing academic research.  FAC ¶¶ 146-48.  However, absent any case

9    holding that a player's subjective enjoyment in a virtual game item renders that virtual game item

10   a "thing of value" under California gambling laws, and in the face of several cases holding to the

11   contrary, the Court finds Plaintiffs' theory to be untenable.

12        Plaintiffs allege that Loot Box prizes have monetary value because they can be traded in

13   legitimate digital markets or in "gray markets."  FAC ¶¶ 156-59.  However, Plaintiffs do not allege

14   that either of the two games they downloaded from the Play Store – Final Fantasy and Dragon Ball

15   Z – allow transfer or sale of Loot Box items.  Moreover, the Court takes judicial notice of the

16   Google Play Terms of Service prohibiting the sale or transfer of any in-app content, including

17   Loot Box items.  The Ninth Circuit has held that a virtual item cannot constitute a thing of value

18   where its sale would violate applicable terms of use.  *See Kater v. Churchill Downs Inc.*, 886 F.3d

19   784, 788 n. 2 (9th Cir. 2018) ("[T]he sale of virtual chips for cash on a secondary market violates

20   the Terms of Use.  The virtual chips cannot constitute a 'thing of value' based on this prohibited

21   use.").  Plaintiffs attempt to distinguish *Kater* on the basis that it addressed a Washington statute

22   defining "thing of value" differently that the California statutes at issue here.  However, this Court

23   concludes that differences in the underlying criminal statutes do not preclude application of

24   *Kater*'s holding that a virtual item cannot be considered a thing of value based on its alleged

25   market value where the terms of use preclude transfer of the item.

26        Based on the relevant case law holding that Loot Box prizes are not things of value under

27   California gambling laws, and absent any case law holding to the contrary, the Court concludes

28   that Loot Boxes are not illegal slot machines under California law.  Having reached this

United States District Court
Northern District of California

21

1    conclusion, the Court need not and does not address Google's argument that Loot Boxes are not

2    illegal slot machines because they are incorporated into games of skill.  All of Plaintiffs' claims

3    are subject to dismissal to the extent they are grounded in the alleged illegality of Loot Boxes.

### 2.    Plaintiffs' Theory of Liability Based on Immorality of Loot Boxes

5           Plaintiffs contend that they may proceed on their UCL unfair prong claim (Claim 2) and

6    their unjust enrichment claim (Claim 4) whether or not Loot Boxes are illegal slot machines.  They

7    point to allegations in the UCL unfair prong claim characterizing the sale of Loot Boxes as

8    "illegal," but also, alternatively, "immoral."  FAC ¶ 192.  The unjust enrichment claim alleges that

9    Google promoted "unlawful and unfair" Loot Boxes.  FAC ¶ 226.

10          As Google points out, "courts in this district have held that where the unfair business

11   practices alleged under the unfair prong of the UCL overlap entirely with the business practices

12   addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot

13   survive if the claims under the other two prongs of the UCL do not survive."  *Hadley v. Kellogg*

14   *Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017).  From its inception, this suit has been

15   premised on Plaintiffs' assertions that Loot Boxes are illegal slot machines and the Play Store is

16   analogous to a physical casino.  In the original complaint, Plaintiffs' claims under both the

17   unlawful and unfair prongs of the UCL were expressly premised on Google's alleged promotion

18   of illegal gambling.  Compl. ¶¶ 110-122.  In the FAC, Plaintiffs' claims under both prongs once

19   again expressly rely on Google's alleged promotion of illegal gambling.  FAC ¶¶ 178-206.

20   Perhaps because of recent cases rejecting Plaintiffs' illegal slot machine theory, however,

21   Plaintiffs have added allegations to support an alternative theory that even if Loot Boxes are not

22   illegal slot machines, Google's promotion of them is an unfair business practice because "Loot

23   boxes develop compulsive and addictive behaviors as with gambling" and "are similar to slot

24   machines." FAC ¶ 192.  Plaintiffs contend that Google's conduct is "immoral and unscrupulous,"

25   because "Google has prioritized profit over ethics" and "Google makes loot boxes available to

26   purchase by children and families at all hours, in any place, and without any spending limitation

27   whatsoever."  *Id.*  There is complete overlap between Plaintiffs' unlawful prong claim and their

28   new unfair prong claim; the only difference between the two claims is Plaintiffs' characterization

of Loot Boxes as illegal or merely immoral.

Moreover, "courts may not use the unfair competition law to condemn actions the Legislature permits." *Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 184 (1999). As discussed herein, Loot Boxes are not illegal slot machines under California law. The Court acknowledges that the FAC raises serious concerns regarding the potential effects of Loot Boxes. However, it is not this Court's role to "apply purely subjective notions of fairness" under the UCL. *Cel-Tech*, 20 Cal. 4th at 184. "If plaintiffs' allegations regarding the harmful [e]ffects of loot boxes are accurate, the public interest likely lies in seeking legislative remedies." *Taylor*, 2022 WL 35601, at *3. "Plaintiffs' attempt to stretch the 'unfair' prong of the UCL to reach the alleged conduct is unavailing." *Id.*

Accordingly, Plaintiffs' UCL claim under the unfair prong is subject to dismissal to the extent it is based on Plaintiffs' subjective view that Loot Boxes are harmful. Plaintiffs' unjust enrichment claim likewise is subject to dismissal to the extent it is based on the same alleged wrongful conduct.

The motion to dismiss all claims is GRANTED based on the Court's determinations that Loot Boxes are not illegal slot machines and that Plaintiffs cannot state a claim based on their subjective view that Loot Boxes are harmful and immoral.

### D.     Leave to Amend

Having determined that Plaintiffs' claims are subject to dismissal, the Court must decide whether leave to amend is warranted. Leave ordinarily must be granted unless one or more of the following factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (discussing *Foman* factors).

The Court finds no undue delay (factor 1) or bad faith (factor 2). However, despite the Court's prior order dismissing the original complaint with guidance regarding amendment, Plaintiff still has not alleged a viable claim (factor 3). Granting further opportunity to amend would not impose undue prejudice (factor 4) on Google if it appeared that Plaintiffs might be able

United States District Court
Northern District of California

United States District Court
Northern District of California

to state a viable claim.  However, the Court concludes that further amendment would be futile (factor 5).

Plaintiffs have demonstrated that they could allege facts showing that Loot Boxes may be purchased directly from Google, using money, for the games Brawl Stars, FIFA Soccer, Puzzles and Dragons, and Clash Royale.  Such allegations would not advance Plaintiffs' claims as currently framed, however, because they do not relate to either Final Fantasy or Dragon Ball Z, which are the only games alleged to have been downloaded from the Play Store by Plaintiffs. Plaintiffs would have to add additional allegations that they purchased Loot Boxes directly through the Play Store in Final Fantasy or Dragon Ball Z, or that they downloaded other games from the Play Store and purchased Loot Boxes in those games directly from the Play Store.  It is unclear whether Plaintiffs could add those necessary addition allegations.  Even if Plaintiffs could do so, such amendment would be futile in light of the Court's determinations that Loot Boxes are not illegal slot machines and that Plaintiffs cannot state a claim based on their subjective view that Loot Boxes are harmful and immoral.

Accordingly, leave to amend is not warranted here.

## V.   ORDER

(1)   Google's motion to dismiss the first amended complaint is GRANTED WITHOUT LEAVE TO AMEND.

(2)   The action is DISMISSED WITH PREJUDICE.

(3)   This order terminates ECF 66.


Dated: January 10, 2022

_____
BETH LABSON FREEMAN
United States District Judge

24